IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| IN RE SUBPOENAS SERVED ON ACTIVEPROSPECT, INC. | **KELLY PINN'S MOTION TO COMPEL NON-PARTY ACTICEPROSPECT, INC.** |
| | No. 1:23-mc-0974 |
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONSUMER CREDIT COUNSELING FOUNDATION, INC., NATIONAL BUDGET PLANNERS OF SOUTH FLORIDA, INC., Florida corporations, and ISHWINDER JUDGE, an individual, DIGITAL MEDIA SOLUTIONS, LLC, a Delaware company, and DOES 1-10, inclusive,<br><br>Defendants. | Underlying Case No. 4:22-cv-04048-DMR, pending in the United States Court for the Northern District of California, before Judge Donna M. Ryu |

Pinn's Motion to Compel

Plaintiff Kelly Pinn ("Pinn" or "Plaintiff") hereby moves to compel Non-Party ActiveProspect, Inc. ("ActiveProspect") to comply with her subpoenas and for related relief under Federal Rules of Civil Procedure 26 and 45.

## I.     Pinn's Subpoena and Her Motion

Pinn served her first subpoena on ActiveProspect in December 2022, and ActiveProspect served its responses in January 2023. (Preston Decl. ¶13.) In March 2023, Pinn began to meet and confer with ActiveProspect. (*Id*. ¶¶14-28.) On April 28, 2023, Pinn served a second subpoena, seeking the documents which are at issue in this motion. (*Id*. ¶16.) On June 23, 2023, ActiveProspect represented it made a completion production. (*Id*. ¶17.) In July, Pinn alerted ActiveProspect its production was not complete, and ActiveProspect advised Pinn that it refused to produce certain documents, described below. (*Id*. ¶¶21-23.) This motion seeks an order compelling ActiveProspect to produce responsive documents, and for other related relief. As ActiveProspect's headquarters (and the subpoenas' designated place of production) are within Austin, Texas, this Court is the proper venue to compel Pinn's subpoenas. *Cf*. Fed. R. Civ. P. 45 (d)(2)(B)(i), (c)(2)(A), (g).

### A.     Pinn's Claims and ActiveProspect's TrustedForm Certificates

Pinn filed a class action in the Northern District of California alleging the defendants violated the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA") via calls to Pinn's residential telephone number in April 2022. (Preston Decl. ¶2.)The defendants allege that Pinn consented to these calls when she visited a website called "healthinstantly.org." (*Id*. ¶3.) This consent form linked to a different website (named "marketingpartners.business") listing some 5,000 companies (including defendant Digital Media Solutions, LLC ("DMS")) who were ostensibly included within the terms of the "healthinstantly.org" consent form. (*Id*. ¶4.)

To support these allegations, DMS provided Pinn a link at trustedform.com which purports to be a recording of Pinn visiting healthinstantly.org in February 2022. (*Id.* ¶3.) ActiveProspect operates the trustedform.com website. (*Id.*) When the trustedform.com proprietary computer script is installed on a website (like healthinstantly.org), it ostensibly records a user's interactions with that website. (Excerpt of Wolffe Decl. ¶¶12-14.) ActiveProspect's customers "claim" these recordings, prompting ActiveProspect to preserve such recordings as links on trustedform.com (which ActiveProspect calls a "certificate") that can be replayed on demand. (*Id.*) These TrustedForm certificates supposedly authenticate such recordings, and allow the certificates to be sold as a marketing lead.[1]

Pinn categorically denies Defendants' allegations, and asserts the alleged consent and the TrustedForm certificate are either fraudulent or at least inauthentic—although Pinn is not in a position to identify the ultimate perpetrator of that fraud at this time.

### B.     The Student Loan Robocall Operation and Pinn's Alleged Consent

Chad Smanjak ("Smanjak") both operated the healthinstantly.org website, and "claimed" the trustedform.com certificate associated with Pinn's alleged February 2022 visit to healthinstantly.org. (*See id.* ¶¶3, 7, 9, 15.) Smanjak is a member of the Student Loan Robocall Operation, which the FCC found was "responsible for making millions of student loan-related robocalls." FCC, *In re Urth Access, LLC*, No. EB-TCD-22-00034232 ¶8 (Dec. 8, 2022), https://docs.fcc.gov/public/attachments/DA-22-1271A1.pdf ("*In re Urth Access, LLC*"). The FCC also found members of the Student Loan Robocall Operation produced "'consent logs' that included website addresses that allegedly captured the called party's consent." *Id.* ¶15. These consent logs alleged included

---

[1]   ActiveProspect's business includes operating the trustedform.com website: it receives revenue from its customers based on the number of certificates "claimed" this way. (Preston Decl. ¶5.)

> TCPA consent disclosures whereby the consumer agreed to receive robocalls from "marketing partners." These "marketing partners" would only be visible to the consumer if the consumer clicked on a specific hyperlink to [the marketingpartners.business website] that contained the names of each of 5,329 entities.

*Id*. ¶16. At least in some instances, the Student Loan Robocall Operation's "consent logs" were TrustedForm certificates. (Preston Decl. ¶11.) Pinn has grounds to believe these TrustedForm certificates are fraudulent or inauthentic. (*Id*. ¶¶6, 27.) These certificates are relevant to Pinn's case, and may contain critical evidence in the form of common indicia of fraud. The Student Loan Robocall Operation's are also probative to the authenticity of the TrustedForm certificate on which Defendants' consent defense is based. (*Id*. ¶¶12, 27.)

        **C.**       **Pinn's Subpoena**

Pinn's April 2023 subpoena seeks two categories of documents: (1) customer account information for the ActiveProspect accounts which claimed the TrustedForm certificate that supposedly recorded with Pinn's alleged February 2022 visit to healthinstantly.org, and (2) the TrustedForm certificates "claimed" by certain persons and email accounts associated with the Student Loan Robocall Operation, together with other "documents concerning communications" since October 1, 2021 between Active Prospect and any such accounts. (*Id*. ¶16.)

        **D.**       **ActiveProspect's Response to Pinn's Subpoena**

ActiveProspect never formally objected to Pinn's April 2023 subpoena. (*Id*. ¶17.) Although ActiveProspect claimed it provided all responsive documents in June, its July and August productions were larger than the preceding productions. (*Id*. ¶¶17, 18, 25.) ActiveProspect now claims it has produced "all documents which it believes to be in its possession and control." (Smith Decl. ¶5.) In fact, ActiveProspect knows its production is incomplete: in July, Pinn provided headers for 207 emails between ActiveProspect and various

Student Loan Robocall Operation email addresses (like f.saleem@urthaccess.com, chad@smac-digital.com, angela@smacxinc.com, and admin@digiconnectllc.com). (*Id*. ¶21.) These headers raise some serious questions about ActiveProspect's search for responsive documents. For instance, the headers reflect (1) over 150 emails between angela@smacxinc.com and ActiveProspect, but ActiveProspect's production only includes (at most) 35 such emails and (2) over twenty (20) emails between f.saleem@urthaccess.com and ActiveProspect, but ActiveProspect's production only includes (at most) four such emails. (*Id*. ¶26.) Moreover, these headers only cover emails—not any other sort of documents—and are not even a complete accounting of ActiveProspect's email. (*Id*.) Pinn requested ActiveProspect provide a declaration that describes its document searches, and clearly explains why ActiveProspect did not find or produce these missing emails cited above. (*Id*. ¶23.) ActiveProspect declined to do so. (*Id*.)

Lastly, on July 13, 2023, ActiveProspect advised Pinn that it was "not willing to produce all TrustedFrom Certificates claimed by SMAC, etc. during the period requested." (*Id*.)

## II.   The Court Should Overrule ActiveProspect's Objections

ActiveProspect waived its objections. Even if it did not, ActiveProspect's objections lack merit and do not justify withholding documents.

### A.   ActiveProspect Waived Its Objections

Objections to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). ActiveProspect did not object to the April 2023 subpoena until (at the earliest) July 2023. (*Id*. ¶17.) "In the majority of cases, a person—whether a traditional party (i.e., a plaintiff or defendant) or a non-party—waives objections if he/she/it fails either to serve timely objections on the party seeking discovery or to file a timely motion with the court." *In re Ex Parte Application of Grupo Mexico*

*SAB de CV for an Order to Obtain Discovery for Use in a Foreign Proceeding*, No. 14-0073, 2015 WL 12916415, *3 (N.D. Tex. Mar. 10, 2015) (collecting cases, including *Isenberg v. Chase Bank USA*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009) ("failure to serve written objections to a subpoena within the time specified by [Rule 45(d)(2)(B)] typically constitutes a waiver of such objections," cleaned up)). Certainly Pinn has not had a chance to address any new objections ActiveProspect might advance now.

### B. ActiveProspect's Objections in Its July 2023 Email Lack Merit

Even if the Court accepts ActiveProspect's July 13, 2023 email as a timely objection to the subpoena, it lacks merit. It asserts "the Certificates do not belong to" ActiveProspect. (Preston Decl. ¶23.) But that is legally immaterial, even if ActiveProspect does not own the TrustedForm certificates Pinn seeks. "'Control' does not require that a party have legal ownership [] of the documents at issue; rather, documents are considered to be under a party's control for discovery purposes when that party has the [] practical ability to obtain the documents from a nonparty to the suit." *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, No. 09-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011) (quoting *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y. 1997), other citations omitted, cited by *Perez v. Perry*, No. 11-360, 2014 WL 1796661, *1 (W.D. Tex. May 6, 2014) ("a party can 'control' documents that are within the possession or custody of a non-party," citing *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007)).[2]

The July 13 email further states Pinn "need[s] to send a subpoena directly to the source or alleged source of the Certificates." (Preston Decl. ¶23.) The fact that the TrustedForm certificates might be available from the Student Loan Robocall Operation is not a basis for ActiveProspect to

---

[2] *See In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) ("parties in possession of documents" must produce them in discovery even if they do not own them: "legal ownership of the document is not determinative").

refuse to produce the certificates. An objection that discovery is "equally available" elsewhere lacks merit: "courts have unambiguously stated that this exact objection is insufficient to resist a discovery request." *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000) (collecting cases).

> [I]n appropriate circumstances, production from a third party will be compelled in the face of an argument that the "same" documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions.

*Viacom Int'l, Inc. v. YouTube, Inc.*, No. 08-80129, 2008 WL 3876142, *2-3 (N.D. Cal. Aug. 18, 2008) (citation omitted). (Notably, there is no record that the Student Loan Robocall Operation's TrustedForm certificates or communications are available from the defendants.) Subpoenas are not "unreasonably cumulative and duplicative" where a party needs production on its subpoena "to test the veracity of [other parties'] assertions that they have produced all the documents they are required to produce." *Med. Tech., Inc. v. Breg, Inc.*, No. 10-00100, 2010 WL 3734719, *4 (E.D. Pa. Sept. 21, 2010). "While serving non-parties with identical document requests may result in duplication, such action would ensure discovery of all facts necessary to unearth the truth." *In re PE Corp. Sec. Litig.*, 221 F.R.D. 20, 28 (D. Conn. 2003) (allowing subpoenas which sought "nine copies of the same documents from nine different parties").[3]

---

[3] *See also Drummond Co., Inc. v. Collingsworth*, No. 13-80169, 2013 WL 6074157, *10 (N.D. Cal. Nov. 18, 2013) (rejecting argument that "information sought by the subpoenas is duplicative of discovery already produced," where defendants failed "to provide any evidence showing what discovery they have produced in previous litigation"); *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 287 F.R.D. 377, 383 (S.D. W. Va. 2012) ("possibility of duplication is not a reason for quashing the subpoena . . . plaintiffs should not be limited to production of documents only by [defendant]"); *High Point Sarl v. Sprint Nextel Corp.*, No. 09-2269, 2011 WL 124534 (D. Kan. Jan. 14, 2011); *Ambu, Inc. v. Kohlbrat & Bunz Corp.*, No. 99-20, 2000 WL 17181, *7 (W.D.N.C. Jan. 6, 2000) (subpoena enforced where plaintiffs did "seek [subpoenaed] information from a party before resorting to third parties," but "received . . . incomplete and evasive" responses); *Composition Roofers Union Local 30 Welfare Tr. Fund v. Graveley Roofing Enters., Inc.*, 160 F.R.D. 70, 72 (E.D. Pa.

Finally, ActiveProspect's July email also stated the April subpoena was "overly broad." (Preston Decl. ¶23.) A "non-party's Rule 45(d)(2)(B) objections to [] a subpoena are subject to the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." *American Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015). ActiveProspect does not meet its burden here by simply claiming the subpoena is overbroad. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) ("party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence").

    C.    **ActiveProspect's Objections in the January 2023 Responses Lack Merit**

ActiveProspect's January 2023 response to Pinn's initial, December 2022 subpoena was timely, but those objections were also improper. (*See* Preston Decl. ¶¶13-14; Ex. 17 to Preston Decl.) Pinn incorporates and restates her March 6, 2023 meet and confer letter to ActiveProspect. (*See id*.) The January 2023 response is improper because ActiveProspect did not make specific objections to specific categories in either the first or second subpoena, or disclose when documents had been withheld based on such objections. (*See id*. at 1-2, 8-9.)

> [A] non-party is subject to the requirements that an objection to a document request must, for each item or category, state with specificity the grounds for objecting to the request, including the reasons, and must state whether any responsive materials are being withheld on the basis of that objection; that an objection to part of a request must specify the part and permit inspection of the rest; that "general or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)"; and that the explanations in *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014), of what is required to make proper objections and how to properly respond to discovery requests apply equally to non-parties subject to a Rule 45 subpoena.

---

1995) (rejecting argument that documents could be more easily obtained from party where "Plaintiffs [had] tried repeatedly to obtain the information from Defendant, without success," quoted, followed by, e.g., *Unisource Worldwide, Inc. v. Swope*, No. 13-02822, 2013 WL 12116382, *2 (C.D. Cal. May 14, 2013))).

*Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp. 3d 925, 932 (N.D. Tex. 2017) (citing *American Fed'n of Musicians*, 313 F.R.D. at 46). Instead, ActiveProspect incorporated "general objections as though fully set forth herein" with respect to each category in the first subpoena. (Preston Decl ¶13.) This is improper: parties should not make "free-standing and purportedly universally applicable 'general objections' in responding to discovery requests. Deploying these general objections in this manner is . . . inconsistent with the Federal Rules and is not warranted by existing law." *Heller*, 303 F.R.D. at 483-84 (collecting authorities).[4] In an abundance of caution, Pinn briefly addresses the objections made in ActiveProspect's January 2023 response:

- Pinn explained why the documents she seeks (account information, TrustedForm certificates, and other documents related to communications with the Student Loan Robocall Operation) are relevant above. *Cf. Enron Corp. Savings Plan v. Hewitt Assocs., LLC*, 258 F.R.D. 149, 159 (S.D. Tex. 2009) ("request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party," citation omitted).

- ActiveProspect does not substantiate any of its burden objections. *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("objecting party must make a specific, detailed showing of how a request is burdensome" via "affidavit or other evidentiary proof," collecting cases). Likewise, Rule 26(b)(1) did "not place on the party seeking discovery the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26(b) advisory committee's notes for 2015 amendment.

- ActiveProspect does not support its boilerplate objections to vagueness and ambiguity. See *Lopez*, 327 F.R.D. at 580 (vagueness objections "must explain the specific and particular way in which a request is vague[and] the responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized" in subpoena, quoting *Heller*, 303 F.R.D. at 491-92, cleaned up).

- ActiveProspect's objections that the subpoena seeks "private, privileged, or confidential commercial, financial, or proprietary business information" have "little merit. Confidential information is produced in lawsuits all the time." *Akins v. South Cent. Bell Tel. Co.*, 744 F.2d 1133, 1136 (5th Cir. 1984). The court in the underlying case has already entered a protective order sufficient to protect any such interests. *See United*

---

[4] *See also Gonzalez v. Volkswagen Group of Am., Inc.*, No. 14-574, 2015 WL 5097271, *2 (W.D. Tex. Aug. 28, 2015) (quoting, following *Heller*, 303 F.R.D. at 483; *Sonnino v. Univ. of Kan. Hosp. Auth.*, , 666-67 (D. Kan. 2004)).

> *States v. Chevron U.S.A., Inc.*, 186 F.3d 644, 649 (5th Cir. 1999) (protective order may be "adequate protection" for confidential information). *See also Akins*, 744 F.2d at 1136 ("protective order may be used to safeguard the confidentiality of" discovery).

Even taken on their merits, these objections are not sufficient to justify withholding discovery under either Pinn's first or second subpoena.

**III.    The Court Should Grant Relief to Ensure a Complete Production**

Pinn seeks several different forms of relief on this Motion, all of which are directed at securing complete productions on his subpoenas. First, the Court should compel ActiveProspect to comply with Pinn's April 2023 subpoena and produce all responsive documents which it has failed to produce to date, including the Student Loan Robocall Operation's TrustedForm certificates and communications, specified in the subpoena. ActiveProspect should not only produce all such email, but also all *non-email* communications (including Slack, Skype, and/or SalesForce). (Pinn's subpoenas requested ActiveProspect produce all documents in native format: ActiveProspect has not objected, so all production should be in native format.)

Second, the Court should compel ActiveProspect to provide amended responses to both the first and second subpoenas that "state whether any responsive materials are being withheld on the basis of [ActiveProspect's] objection[s]." *Ford Motor*, 316 F. Supp. 3d at 932. Pinn believes her disputes with ActiveProspect regarding the first subpoena were resolved, but she has no way to be sure unless ActiveProspect discloses whether it withheld responsive documents.

Third, the Court should compel ActiveProspect to provide a declaration that describes its past and subsequent document searches, and clearly explains why it did not find or produce the emails identified by Pinn's email headers. There are enough deficiencies and gaps to create legitimate questions about ActiveProspect's document collection and production that should be answered. "When no responsive documents are found or a dispute arises out of the completeness

of the production that is made, the subpoenaed person must come forward with an explanation of the search conducted 'with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.'" *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366-67 (D. Nev. 2019) (citation omitted)). "Information regarding the search conducted should be provided through a declaration under oath detailing the nature of the efforts to locate responsive documents [] on a request-by-request basis." *Id.* at 367 (same).

Finally, if ActiveProspect fails to address concerns about its document collection and production by complying with the relief above, the Court should appoint an independent officer and order ActiveProspect to permit that officer to collect and produce the remaining documents at its cost. When a party serves discovery responses indicating all accessible documents were produced but later concedes "that not all documents have yet been produced," and does

> not provide an affidavit or other specific evidence regarding the scope of the rest of [its] search for responsive documents, and counsel was not able to articulate what [it] had done in order to search for responsive documents,

it is appropriate to appoint "an independent expert [] to retrieve [] responsive files from" that parties' records. *Bank of Mongolia v. M & P Global Fin. Servs., Inc.*, 258 F.R.D. 514, 520 (S.D. Fla. 2009). The Court has compelled independent inspection of litigants' systems based on three (3) missing emails—here, Pinn has identified over a hundred missing emails. *See American Registry of Radiologic Technologists v. Bennett*, No. 09-767, 2010 WL 11603028, *1-2 (W.D. Tex. Sept. 8, 2010). *See also Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, No. 13-01806, 2014 WL 1338480, *9 (N.D. Cal. Apr. 1, 2014) (independent inspection where party "repeatedly represented . . . that they [had] produced all responsive documents [] only to later reveal that they failed to produce documents of which they were aware or should have been aware")).

Dated: August 21, 2023                By:   s/Ethan Preston
                                                      Ethan Preston (263295)
                                                      ep@eplaw.us
                                                      PRESTON LAW OFFICES
                                                      4054 McKinney Avenue, Suite 310
                                                      Dallas, Texas 75204
                                                      Telephone: (972) 564-8340
                                                      Facsimile: (866) 509-1197

                                                      *Attorneys for Plaintiff Kelly Pinn, on her own behalf, and behalf of all others similarly situated*

**CERTIFICATE OF SERVICE**

Pursuant to 28 U.S.C. § 1746, I hereby certify that a copy of the foregoing document together with attached documents was this date served upon the parties below under Fed. R. Civ. P. 5(b) by causing a copy of the foregoing to be placed in the United States Mail, postage prepaid, (or by email, if consent was provided) and sent to their last known address as follows:

> Jason Smith
> General Counsel
> ActiveProspect, Inc.
> 4009 Marathon Boulevard
> Austin, Texas 78756
>
> *Attorneys for Non-Party ActiveProspect, Inc.*

Dated: August 21, 2023            By:  s/Ethan Preston
                                  Ethan Preston (263295)
                                  ep@eplaw.us
                                  PRESTON LAW OFFICES
                                  4054 McKinney Avenue, Suite 310
                                  Dallas, Texas 75204
                                  Telephone: (972) 564-8340
                                  Facsimile: (866) 509-1197

                                  *Attorneys for Plaintiff Kelly Pinn, on her own behalf, and behalf of all others similarly situated*