## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| IN RE SUBPOENAS SERVED ON ACTIVEPROSPECT, INC. | **DECLARATION OF ETHAN PRESTON SUPPORTING KELLY PINN'S MOTION TO COMPEL NON-PARTY ACTICEPROSPECT, INC.** |
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>CONSUMER CREDIT COUNSELING FOUNDATION, INC., NATIONAL BUDGET PLANNERS OF SOUTH FLORIDA, INC., Florida corporations, and ISHWINDER JUDGE, an individual, DIGITAL MEDIA SOLUTIONS, LLC, a Delaware company, and DOES 1-10, inclusive,<br><br>              Defendants. | Underlying Case No. 4:22-cv-04048-DMR, pending in the United States Court for the Northern District of California, before Judge Donna M. Ryu |

ETHAN PRESTON hereby declares:

1.      My name is Ethan Preston. I am an attorney at law licensed to practice before all of the courts of the State of California. I am counsel of record for Plaintiff Kelly Pinn ("Pinn"), and have personal knowledge of all of the facts set forth in this declaration and could testify thereto if called to do so.

2.      **Pinn's Lawsuit:** This motion concerns subpoena arising from a lawsuit Pinn filed against Defendants Consumer Credit Counseling Foundation, Inc. ("CCCF"), National Budget Planners of South Florida, Inc., Ishwinder Judge, and Digital Media Solutions, LLC ("DMS") (together, "Defendants"). In that lawsuit, Pinn alleges that the Defendants violated the Telephone

Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), and specifically its provisions

prohibiting telemarketing calls to telephone numbers listed on the national Do Not Call registry

by authorizing and/or ratifying calls to her cellular telephone number on April 12, 2022. *See* 47

U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

      3.    **Defendants' "Consent" Defense:** On August 24, 2022, Pinn's counsel first

contacted DMS to, e.g., indicate Pinn anticipated naming DMS as a defendant in her lawsuit.

DMS's counsel responded. An true and correct excerpt of the email chain between Pinn's

counsel and DMS's counsel from August 25 to September 9 is attached as Exhibit 1 to this

Declaration, except that portions of the email chain have been redacted based on confidentiality

designations by DMS under the stipulated protective order in the underlying case. On September

9, 2022, DMS's counsel provided Pinn's counsel a link to a website operated by ActiveProspect,

Inc. (trustedform.com). (*See* Ex. 1 at 1-3.) DMS's trustedform.com link purported to contain a

recording of Pinn allegedly consenting to receive calls from DMS via a form at

https://healthinstantly.org/form.html. This link is set forth below:

https://cert.trustedform.com/0d459d604c22f30574aab2e51c85d376ccbcc518/assets/?shared_token=TlZWWWVVUk9lVWhYT1VFMmRrbDFSbG9yYVhZcldVUlhWMnAzTjBReVlYSm9VWGRwU0ZKcWRYYzVNVmx6WkZCNmJFUnpkVlJxT0hwVmVsVTVUUekJyVEZka1MxcHRaMVZCY3pOaVZZVZZSnFla3d3V0RoYWNGUktibEk0V21ob1EyWlBRVGhzWkU1dFdFqVnRVV2M5TFMxNFJJFdGlhbG81VEZoVoWJubHVWV0pRSzI5aFZFUlJlQVZDA9LS0xMzJlMGVkZTgwMGZhOGFZjk0MDJhMGM0NTZmNTNiMWM1OGNkMWQ2

On or about September 15, 2022, Pinn's counsel took several screenshots of this TrustedForm

certificate, including the recording of Pinn allegedly using https://healthinstantly.org/form.html.

A true and correct copy of those screenshots is attached as Exhibit 2 to this Declaration. The

screenshots identify the "Vendor" associated with the claim is "SMAC – X – DSG Media." (Ex.

2 at 6.) The other Defendants besides DMS have also asserted affirmative defenses against

Pinn's claims based on this form. (*See* Answer, *Pinn. v. Consumer Credit Counseling Foundation, Inc.*, No. 22- 04048 (N.D. Cal. Apr. 28, 2023), ECF No. 52, Tenth Affirmative Defense.)

4.    On December 9, 2022, Pinn's counsel downloaded a copy of https://healthinstantly.org/form.html. A true and correct copy of that download is attached as Exhibit 3 to this Declaration. As depicted in both the trustedform.com link and in Pinn's copy, the healthinstantly.org website contains a form which solicits visitors' name and telephone number, and a checkbox which states:

> I agree by providing a mobile telephone number and selecting "Yes", "Confirm", "Contact Me", or a similar affirmation, you agree to our Terms of Service and Privacy Policy (California Residents see CCPA. You also confirm that you are the current owner/subscriber of the mobile telephone number provided [] even if it is currently listed on any state, federal or corporate Do Not Call list. You understand that by providing this mobile telephone number, the current owner consents to be contacted by us, our vendors and our <u>Marketing Partners</u> with marketing offers and services of any type at the mobile number provided, without limitation, restriction or reservation, notwithstanding the provisions contained in the Telephone Consumer Protection Act (47 U.S. Code § 227) and all amendments and interpretations of the same by any court of competent jurisdiction.

(Ex. 3 at 1-2.) The underlined phrase "Marketing Partners" is a hyperlink to https://marketingpartners.business. In turn, the marketingpartners.business website contains a list of some 5,000 companies, including Defendant DMS. On December 9, 2022, Pinn's counsel downloaded a copy of marketingpartners.business. A true and correct excerpt of that download which shows DMS's name is attached as Exhibit 4 to this Declaration.

5.    **ActiveProspect's Business:** ActiveProspect operates the trustedform.com website. ActiveProspect describes TrustedForm certificates on its website: "What is a TrustedForm Certificate?Our TrustedForm certificates provide independent documentation of lead events. If consent was properly obtained, you can prove it and protect yourself in the event

of litigation while giving you new confidence that your leads have actually asked you to contact them." ActiveProspect, Inc., *How Does TrustedForm Work?*, https://activeprospect.com/ trustedform. Elsewhere, ActiveProspect describes "claiming" TrustedForm certificates: "Claiming a certificate will allow you to verify its legitimacy, view it online, access its data via our API, and refer to the snapshot that was taken of the page as seen by the consumer, for up to 30 days." ActiveProspect, Inc., *Overview*, https://activeprospect.redoc.ly/docs/trustedform/ api/v3.0/overview. ActiveProspect receives revenue based on the number of links (which ActiveProspect calls certificates) "claimed" by its customers.

6.      **Pinn Investigates the Healthinstantly.org Website:** After receiving DMS's September 9 email, Pinn's counsel began to investigate both the ActiveProspect link itself and the circumstances under which Pinn allegedly consented to additional calls from or by DMS. Based on that investigation, Pinn's counsel has cause to believe that the ActiveProspect link identified by DMS is fraudulent or inauthentic and does not in fact record Pinn's consent at all. Some of the details of that part of that investigation are confidential attorney work product, at least until Pinn can notice and complete an appropriate deposition. Due to the nature of her investigation, Pinn is not necessarily in a position to identify the perpetrator of this fraud.

7.      Domain name records indicate that Internet Protocol ("IP") address for the website at healthinstantly.org was 51.81.207.101 in December 2022. OVH US LLC ("OVH") is the owner of the 51.81.207.101 IP address. (*See* Findings, Certification and Order to Show Cause re: Contempt for Amir Dawood, Dawood & Company, Global Lynks LLC, *In re Subpoenas to Amir Dawood, Dawood & Company, Global Lynks LLC*, No. 22-mc-00240 (C.D. Cal. Apr. 20, 2023), ECF No. 19 ¶3.) A true and correct copy of the April 20, 2023 order is attached as Exhibit 5 to this Declaration. In response to a subpoena from Pinn, OVH indicated the subscriber for the

51.81.207.101 IP address is Global Lynks, LLC. (*Id.*)

8.     California Secretary of State records identify Dawood & Company as Global Lynks, LLC's agent for service of process and A Nathan Dawood as Dawood & Company's Chief Executive Officer, Secretary, Chief Financial Officer, and Director. A true and correct copy of the California Secretary of State records for Global Lynks, LLC and Dawood & Company are attached as Exhibits 6 and 7 to this Declaration.

9.     Domain name records indicate that Namecheap, Inc. ("Namecheap") is the registrar for the "healthinstantly.org" domain name. On April 17, 2023, Pinn served a subpoena on Namecheap for information including the Namecheap customer who registered the healthinstantly.org domain name. On May 17, 2023, Namecheap produced responsive documents. A true and correct excerpt of these documents is attached as Exhibit 8 to this Declaration. While Namecheap's account data identified Johannes Grobler ("Grobler") of South Africa as the current owner of the account which registered healthinstantly.org, Namecheap's support chat logs indicate that Chad Smanjak ("Smanjak") used and/or operated that Namecheap account at least through June 17, 2022, and that Grobler acted as Smanjak's information technology consultant.

10.    **The Student Loan Robocall Operation:** The FCC identified Urth Access, LLC, Global Lynks LLC, SMAC Digital Inc., as well as Fawaz Saleem (Chief Executive Officer of Urth Access, LLC), Amir Nathan Dawood (officer, director, and agent of Dawood & Company) and Smanjak (Chief Executive Officer of SMAC Digital Inc.) as members of the Student Loan Robocall Operation, which the FCC found was "responsible for making millions of student loan-related robocalls." FCC, *Order, In re Urth Access, LLC*, No. EB-TCD-22-00034232 ¶8 (Dec. 8, 2022), https://docs.fcc.gov/public/attachments/DA-22-1271A1.pdf. A true and correct copy of

this FCC order is attached as Exhibit 9 to this Declaration. The FCC further found members of

the Student Loan Robocall Operation produced "'consent logs' that included website addresses

that allegedly captured the called party's consent." (Ex. 9 ¶15.) According to the FCC, the

Student Loan Robocall Operation's consent logs included

> TCPA consent disclosures whereby the consumer agreed to receive robocalls
> from "marketing partners." These "marketing partners" would only be visible to
> the consumer if the consumer clicked on a specific hyperlink to [the
> marketingpartners.business website] that contained the names of each of 5,329
> entities.

(*Id.* ¶16.) The FCC's order indicates that the Student Loan Robocall Operation produced these

consent logs in response to inquiries by Industry Traceback Group, LLC ("ITG") who in turn

produced them to the FCC in response to the FCC's subpoena. (*Id.* ¶15 nn. 40, 42.)

      11.     On April 19, 2023, Pinn served a subpoena on Industry Traceback Group LLC for

certain records, including "documents Traceback Group exchanged with the FCC in response to

the FCC's subpoenas concerning (1) Urth Access and/or (2) Global Lynks, including (but not

limited to) documents produced to the FCC in October 2022." On May 19, 2023, ITG responded

to Pinn's subpoena. A true and correct copy of this response is attached as Exhibit 10 to this

Declaration. On June 14, 2023, ITG made a subsequent production of an Excel file named

"Consent Log.xlsx," containing a consent record provided by Urth Access that stated:

> Obtained the opt-in data as follows:
> https://cert.trustedform.com/a94c2fa3027cb2de1136b2c0ac28926b429061a4?shar
> ed_token=ZURkcU5IRjVTbkZKVDI1SE1HZzRPVWxzTVc5dmRuazJWRzVD
> YTBGUU5GaEJLMGgwVlhGdGVVTmpWVVpCV2pZNWRYZENOMEYzV0
> dGMmFuSm9LMWR5UkdsbFRqQlVjamd6TkRnNFUyUnFFXVlUzV1ZWVWJq
> VlBVbUZFVEhSdldFaG1iVnBBPVEV3d05IVlJUbGs5TFMxck9TdHRWVEpVU
> VdNMU5sY3hVSEkyV0RGWlJ5OTNQVDA9LS1kZTVlYjgzNmRhNTA1YjRj
> MmMzMGJmZGIzZGNkYmI4Yzk0NDM1NmM3

On August 7, 2023, Pinn's counsel downloaded part of the TrustedForm certificate above. A true

and correct copy of that download is attached as Exhibit 11 to this Declaration. This

TrustedForm certificate purports to record a consumer visiting https://healthinsnow.org/
form.html and consenting to telemarketing calls in the same manner as Pinn allegedly consented
to telemarketing calls at https://healthinstantly.org/form.html. On August 7, 2023, Pinn's counsel
downloaded a copy of https://healthinsnow.org/form.html. A true and correct copy of that
download is attached as Exhibit 12 to this Declaration. The consent form at
https://healthinsnow.org/form.html appears to be an exact copy of the consent form at
https://healthinstantly.org/form.html, including the link to marketingpartners.business. On
August 7, 2023, Pinn's counsel took a series of screenshots of the TrustedForm certificate's
recording of the consumer allegedly using https://healthinsnow.org/form.html, which very
closely resembles the TrustedForm certificate allegedly recording Pinn consenting to calls via
https://healthinstantly.org/form.html. A true and correct copy of those screenshots is attached as
Exhibit 13 to this Declaration, except that Pinn has partially redacted the name and telephone
number of the consumer.

12.  "The California Attorney General indicted Mr. Smanjak's ex-wife, Angela
Kathryn Mirabella for fraud related to student loan call centers in September 2021." (Ex. 9 at 5 n.
28. *See also People of Cal. v. Angela Kathryn Mirabella et al.*, No. 21ZF0019 (Cal. Sup. Ct.
2021, Orange Cty., https://oag.ca.gov/system/files/attachments/press-docs/Mirabella%20
Indictment%20%5BFILED%5D.pdf.) In 2012, Smanjak pled guilty to a conspiracy to commit
securities fraud in violation of 18 U.S.C. § 371. (Plea Agreement for Smanjak, *United States v.
Smanjak*, No. 8:10-cr-0215 (C.D. Cal. Aug. 1, 2012), ECF No. 9.) A true and correct excerpt of
that plea agreement is attached as Exhibit 14. Smanjak admitted issuing "false press releases [] to
fraudulently increase the value" of securities, "set[ting] up sham corporations in foreign
jurisdictions to serve as a front" and "conceal the proceeds" from the sale of his fraudulently-

inflated securities, and "hid[ing] a laptop computer that contained evidence of the above-described conspiracy." (Ex. 14 at 12:6-8, 21-22, 13:1-2, 14-15.) This record is probative of the authenticity of the Student Loan Robocall Operation's consent logs, specifically including the TrustedForm certificate allegedly recording Pinn consenting to calls via https://healthinstantly.org/form.html.

13.     **Pinn's First Subpoena to ActiveProspect:** Pinn served her first subpoena on ActiveProspect in December 2022. A true and correct copy of the December 2022 subpoena (including proof of service) is attached as Exhibit 15 to this Declaration. ActiveProspect requested and Pinn granted an extension on ActiveProspect's response to the subpoena. ActiveProspect served its responses in January 2023. A true and correct copy of this January 2023 response to the subpoena is attached as Exhibit 16 to this Declaration. The January 2023 response incorporated "general objections as though fully set forth herein" with respect to each category in the January 2023 subpoena. (*See* Ex. 16.) The January 2023 response also did not make specific objections to specific categories in the January 2023 subpoena, or disclose when documents had been withheld based on such objections. (*See id.*)

14.     In March 2023, Pinn sent a meet and confer letter to ActiveProspect with respect to its January 2023 response to Pinn's subpoena. A true and correct copy of this March 2023 letter is attached as Exhibit 17 to this Declaration.

15.     Pinn and ActiveProspect continued to meet and confer through April 28, 2023. A true and correct excerpt of an email chain between Pinn and ActiveProspect ending in April 28, 2023 is attached as Exhibit 18 to this Declaration. On April 17, 2023, ActiveProspect confirmed the ActiveProspect customers which claimed the TrustedForm certificate allegedly recording Pinn included "Jenlin Systems," "SMAC X – Master," and "SMAC X - DSG Media."  are

current customers. (Ex. 18, at 3-4.) On April 18, 2023, Pinn requested ActiveProspect produce

"all the relevant account data for the SMAC entities." (Ex. 18 at 2.) On April 28, 2023,

ActiveProspect asked Pinn to "supplement [the] subpoena requests formally to ask for the

SMAC order forms and other documents." (*Id*. at 1.) Pinn asked if she could "please serve the

supplemental subpoena via email to your email address?" (Id.) ActiveProspect consented to

service of the second subpoena via email. (*Id*.)

16.    **Pinn's Second Subpoena to ActiveProspect:** On April 28, 2023, Pinn served

ActiveProspect with her second subpoena. A true and correct excerpt of the April 28, 2023

subpoena is attached as Exhibit 19 to this Declaration. The April 2023 subpoena specifically

seeks records related to the ActiveProspect customers which claimed the TrustedForm certificate

allegedly recording Pinn, and certain communications between the Student Loan Robocall

Operation and ActiveProspect:

> 1.    All documents containing account information (including any information
>        provided in the course of API registration, and any information used to
>        process payments or other financial transactions) for any Active Prospect
>        customer and/or account which claimed the TrustedForm Link,
>        specifically including Jenlin Systems Inc., SMAC X - Master, SMAC X -
>        DSG Media.

> 2.    All documents concerning communications since October 1, 2021
>        between Active Prospect and any Active Prospect customer and/or
>        account which claimed the TrustedForm Link, specifically including
>        Jenlin Systems Inc., SMAC X - Master, SMAC X - DSG Media, and the
>        email addresses "chad@smac-digital.com" and/or
>        "Angela@smacxinc.com."

> 3.    All documents concerning communications since October 1, 2021
>        between (1) Active Prospect and (2) Fawaz Saleem, Nathan Dawood,
>        Amir Dawood, Rich Ortiz, and/or the email address(es)
>        "f.saleem@urthaccess.com," "admin@digiconnectllc.com," and/or
>        "r.ortiz@digiconnectllc.com."

(Ex. 19 at 7.) The April 2023 subpoena defines the "TrustedForm Link" to mean the same

trustedform.com link that purported to contain a recording of Pinn allegedly consenting to receive calls from DMS via a form at https://healthinstantly.org/form.html. (*See id.* at 3.)

17.   **ActiveProspect's Response to Pinn's Second Subpoena:** ActiveProspect has not served any formal objections or, indeed, any formal response to Pinn's April 28, 2023 subpoena at all. On June 23, 2023, ActiveProspect sent an email with approximately 37 pdf files which appear to depict emails which are responsive to one or more requests in the second subpoena, and which stated "[a]ttached are all documents in ActiveProspect's possession which are responsive to Plaintiff's Supplemental Subpoena to Produce Documents." A true and correct copy of the June 23, 2023 email is attached as Exhibit 20 to this Declaration.

18.   **ActiveProspect Produces Documents in Response to the Second Subpoena:** On June 29, 2023, Pinn requested that ActiveProspect produce documents (including emails) in native format, as the April 2023 subpoena requested. (*See* Ex. 19 at 4:11-13.) On July 7, 2023, ActiveProspect produced approximately 57 emails in .eml format which appear to be responsive to one or more requests in the second subpoena. However, ActiveProspect's July 7 production appears to be incomplete: Pinn's counsel received a notice from his email provider on July 7 indicating it had not delivered 30 other emails sent by ActiveProspect.

19.   **Pinn Obtains Email Headers for the Student Loan Robocall Operation:** Pinn served a subpoena on Namecheap for certain records including non-content email headers for emails "sent to or from any email address using the domain name 'urthaccess.com' [specifically including "f.saleem@urthaccess.com" and "admin@urthaccess.com"] since July 11, 2018." On May 17, 2023, Namecheap responded to that subpoena and produced responsive email headers.

20.   Pinn served a subpoena on Zoho Corporation ("Zoho") for certain records including non-content email headers for emails "every email sent to or from the following email

address: 'angela@smacxinc.com' since July 11, 2018[.]" On June 20, 2023, Zoho responded to

that subpoena and produced responsive email headers.

21.     **Pinn and ActiveProspect Meet and Confer on the Second Subpoena:** On or

about July 11, 2023, Pinn prepared a list of email headers for responsive emails between

ActiveProspect and certain Student Loan Robocall Operation email addresses sought in Pinn's

April 2023 subpoena, including f.saleem@urthaccess.com, chad@smac-digital.com,

angela@smacxinc.com, and admin@digiconnectllc.com, which Pinn's counsel had not found in

any of ActiveProspect's production. (*See* Ex. 19 at 7.) Pinn placed certain of those email headers

into a zip file named "Missing ActiveProspect Emails.zip," which contains 207 email headers for

emails between ActiveProspect and the foregoing Student Loan Robocall Operation email

addresses above. A true and correct copy of an email chain between Pinn and ActiveProspect

counsel from July 11 to July 13, 2023 is attached as Exhibit 21 to this Declaration.

22.     The email headers in the "Missing ActiveProspect Emails.zip" file indicated

serious deficiencies with ActiveProspect's July 2023 collection and production of documents,

discussed in paragraph 27 below. On July 11, 2023, Pinn sent the "Missing ActiveProspect

Emails.zip" file to ActiveProspect, and informed it that "Pinn has obtained email headers from a

variety of sources which include responsive email involving ActiveProspect" and that Pinn's

counsel believed it was "missing at least the emails in the attached zip file." (Ex. 21 at 4.) Pinn's

July 11 email also informed ActiveProspect that at least some of the emails in its July production

may not have been delivered, and requested ActiveProspect produce its documents in a zip file to

eliminate these delivery problems. (*Id.*)

23.     On July 13, Pinn sent a follow-up email that stated in relevant part:

> Given ActiveProspect underproduction referenced in my last email, a declaration
> should also describe ActiveProspect's prior and ongoing document searches, and

clearly explain why ActiveProspect did not find or produce the specific emails I identified.

Pinn's second subpoena seeks "documents concerning communications since October 1, 2021 between Active Prospect and [] Jenlin Systems Inc., SMAC X - Master, SMAC X - DSG Media," and we've previously discussed whether ActiveProspect would produce TrustedForm Certificates claimed by SMAC, etc. during that period. We need to have another call on this point.

(*Id.* at 3.) ActiveProspect responded by email, in relevant part:

If you want a declaration detailing all of the ongoing document searches and procedures you will need to supplement your subpoena request to ask for that. I believe you only identified one specific email, and that was produced (if not in the correct format, that will be rectified). We can chat further on Tuesday about what you mean here, but beyond the emails you just identified in the zip folder I'm not quite sure what you are referencing.

On your last point, ActiveProspect is not willing to produce all TrustedFrom Certificates claimed by SMAC, etc. during the period requested. As we discussed previously, the Certificates do not belong to us. For those, you will need to send a subpoena directly to the source or alleged source of the Certificates. Again, if there are specific Certificates you are looking for, we can assess whether we will produce those.

(*See id.* at 1-2.) Pinn then sent a reply addressing these specific issues identified in this response, which are essentially the same arguments in Pinn's attached motion. (*See id.*)

24.     On July 15 and August 7, 2023, Pinn and ActiveProspect met and conferred via telephone about the various issues raised in their email exchange above (including some issues which appear to be resolved), but did not resolve the specific issues identified above.

25.     On August 8, 2023, ActiveProspect made another supplemental production, which included 307 (non-duplicative) emails and the native format (json) production of a Slack channel regarding SMAC and certain TrustedForm certificates that SMAC had claimed. ActiveProspect also provided a declaration that it "ha[d] identified and produced all documents which it believes to be in its possession and control which are responsive to Plaintiff's First and Supplemental Subpoena to Produce Documents." (Smith Decl. ¶5.)

26.     A true and correct copy of the email headers in Missing ActiveProspect Emails.zip is included as Exhibit 22 to this Declaration. The email headers in the "Missing ActiveProspect Emails.zip" file indicated serious deficiencies with ActiveProspect's August 2023 collection and production of documents. Missing ActiveProspect Emails.zip evidences over one responsive hundred and fifty (150) emails between "Angela@smacxinc.com" (one of the Student Loan Robocall Operation email addresses) and ActiveProspect, but ActiveProspect's production only includes (at most) 35 such emails. Missing ActiveProspect Emails.zip evidences over twenty (20) emails between ActiveProspect and f.saleem@urthaccess.com, but ActiveProspect's production only includes (at most) four such emails. Moreover, Missing ActiveProspect Emails.zip file does not include every header that was produced to Pinn, and therefore does not include every header for every email missing from ActiveProspect's production. Moreover, Missing ActiveProspect Emails.zip file is plainly limited to email.

27.     The json files ActiveProspect produced indicate that between January 11 and 12, 2022, ActiveProspect employees (including its CEO and in-house counsel) sent messages indicating that SMAC had created a false TrustedForm certificate, and that ActiveProspect would send SMAC a warning letter, including:

> So, it seems that at this time PX just wants us to confirm the certificate is legitimate (which we know it is not). [] Since SMAC has not responded to our request for information, do we want to take similar action to Veslita?  I know they are a larger customer for us.  We might want to go back to PX and let them know we are working on this and we believe that there might have been a fabricated certificate.
>
> As for SMAC, I think we should update our terms to specifically call out that this activity is against our terms.  We don't have the extensive context of the situation that we had in the Apollo case (I'm not clear what all happened and who is the harmed party) Without that, I recommend we give them a warning and let them know that we will terminate their account if we see this activity in the future. We can also inform them we just terminated someone else's account for this this week.

> Do you want me to draft a warning letter to SMAC or would you prefer it to be a phone conversation? We will definitely be calling this behavior out in the TOS revisions
>
> I vote for letter given some of our historical issues with this account
>
> I will get the letter drafted this week.

The json files ActiveProspect produced also indicate that ActiveProspect prepared a draft warning letter to SMAC on January 20, 2022, and provided participants an online link to that warning letter. However, that link is not accessible to Pinn. Pinn's counsel has searched ActiveProspect's production, and it does not appear to include any warning letter sent to SMAC.

28.     ActiveProspect's August production includes a March 2021 email from SalesForce to ActiveProspect which summarizes activity in ActiveProspect's SalesForce instance. A true and correct excerpt of this email is attached as Exhibit 23 to this Declaration. The email indicates that ActiveProspect's SalesForce instance includes records related to a "SMAC X – Master" account. (*See* Ex. 23 at 3.) ActiveProspect's production does not include any records from SalesForce.

29.     **Certification:** Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 21, 2023           By:   s/Ethan Preston
                                           Ethan Preston

Exhibit 1

Exhibits to Preston Declaration

RE: Pinn v. CCCF

**Subject:** RE: Pinn v. CCCF
**From:** "Neil Asnen" <nasnen@kleinmoynihan.com>
**Date:** 9/9/22, 1:55 PM
**To:** "Ethan Preston" <ep@eplaw.us>
**CC:** "Sean A. Moynihan" <smoynihan@kleinmoynihan.com>, "Daniel Chin"
<dchin@kleinmoynihan.com>, "Wallis Granat" <wgranat@kleinmoynihan.com>

 Ethan,

Thank you for your pragmatism.

Attached is the ███████████████████████ and I am providing a link to the TrustedForm
certificate (which includes the video playback) evidencing Ms. Pinn's February 2, 2022 opt-in.

Sincerely,

Neil E. Asnen



450 Seventh Avenue, 40th Floor
New York, NY 10123
(212) 246-0900

*\*\*\*This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Secs 2510-2521 and is legally privileged. This e-mail, and any documents attached, may contain confidential information belonging to the sender which is protected by the work product and/or other privileges.*

*This email is intended only for the use of the individual(s) named, and may contain confidential and/or legally privileged information. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email is strictly prohibited. If you have received this email in error, please delete the email and notify the sender if we are sending you materials in error.  Any unintended transmission shall not constitute a waiver of the attorney-client or any other privilege.*

*Circular 230 Disclosure Notice. To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of voiding penalties under the Internal Revenue Code or any state or local tax law to which a governmental requirement similar to Circular 230 applies.\*\*\**

**From:** Ethan Preston <ep@eplaw.us>
**Sent:** Friday, September 9, 2022 2:04 PM
**To:** Neil Asnen <nasnen@kleinmoynihan.com>
**Cc:** Sean A. Moynihan <smoynihan@kleinmoynihan.com>; Daniel Chin
<dchin@kleinmoynihan.com>; Wallis Granat <wgranat@kleinmoynihan.com>
**Subject:** Re: Pinn v. CCCF

Neil,

So I did touch base with my client, and I now believe there's some confusion. Can you provide me with
████████████████████████████████ the records and logs for the February 2
opt-out?

████████████████████████████████████████████████████████
███████████ certainly neither my client nor I want to file a lawsuit where there was lawful prior

RE: Pinn v. CCCF

express written consent.

Thanks,

Ethan


On 9/9/22 11:56 AM, Neil Asnen wrote:

Thanks, Ethan.

You are correct to read my email as indicating that as a matter of fact, DMS did not initiate the CCCF call(s).

I am not in a position to make a representation of whether or not the February 2, 2022 opt in that your client provided on healthinstantly.org serves as the basis of TCPA consent for either CCCF or the initiator of the calls that ended with CCCF, though I would certainly suggest that it represents prior express written consent to receipt of calls from DMS in the event that she brings an otherwise factually unsupported claim that DMS called her, and reserve the right to pursue that defense if necessary.

My point was more fundamental than that. ████████████████████
███████████████████████████████████████████ ██████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████

Sincerely,


Neil E. Asnen

450 Seventh Avenue, 40th Floor
New York, NY 10123
(212) 246-0900

***This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Secs 2510-2521 and is legally privileged. This e-mail, and any documents attached, may contain confidential information belonging to the sender which is protected by the work product and/or other privileges.

This email is intended only for the use of the individual(s) named, and may contain confidential and/or legally privileged information. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email is strictly prohibited. If you have received this email in error, please delete the email and notify the sender if we are sending you materials in error.  Any unintended transmission shall not constitute a waiver of the attorney-client or any other privilege.

Circular 230 Disclosure Notice. To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any tax advice that may be

11/15/22, 2:02 PM

Re: Pinn v. CCCF

contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of voiding penalties under the Internal Revenue Code or any state or local tax law to which a governmental requirement similar to Circular 230 applies.***

---

**From:** Ethan Preston <ep@eplaw.us>
**Sent:** Friday, September 9, 2022 11:40 AM
**To:** Neil Asnen <nasnen@kleinmoynihan.com>
**Cc:** Sean A. Moynihan <smoynihan@kleinmoynihan.com>; Daniel Chin <dchin@kleinmoynihan.com>; Wallis Granat <wgranat@kleinmoynihan.com>
**Subject:** Re: Pinn v. CCCF

Neil,

Before I follow up with my client, I want to clarify my understanding of DMS's allegations. Does DMS allege that Ms. Pinn's alleged visit to healthinstantly.org led to the calls to Ms. Pinn which are at issue in the CCCF suit?

You indicate that DMS did not initiate the calls which are the basis of Ms. Pinn's claims, so it is unclear to me whether or how the alleged healthinstantly.org visit would have played a role in the CCCF calls. Obviously, I need to fully explain DMS's position to my client to adequately advise her on her potential exposure, so your clarification is greatly appreciated.

Sincerely,

Ethan

On 9/9/22 9:40 AM, Neil Asnen wrote:

> Ethan,
>
> We have looked into this a bit further and, as it turns out, 
>
> on February 2, 2022 in connection with a visit to https://healthinstantly.org/, Ms. Pinn opted into the receipt of commercial calls and/or text messages from DMS, ▮
> In the event that Ms. Pinn follows through with her threat to implead into the CCCF suit either DMS, or any

RE: Pinn v. CCCF

DMS subsidiary or parent, we will be left with no choice but to hold Ms. Pinn responsible ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

It is also worth noting that as a matter of fact, DMS neither initiated the calls for which your client complains nor were its services advertised therein (a fact of which your client has actual knowledge).  As a result, not only is DMS outside the zone of interest for a TCPA claim, and therefore not susceptible to TCPA liability for the calls at issue, but the California courts would not have even have jurisdiction over DMS to adjudicate the claim.

Please review the foregoing in consultation with your client.  Our client expressly reserves all rights and remedies available to it in the event of Ms. Pinn's continued pursuit of her threatened claims against DMS.

Sincerely,


Neil E. Asnen

450 Seventh Avenue, 40th Floor
New York, NY 10123
(212) 246-0900

***This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Secs 2510-2521 and is legally privileged. This e-mail, and any documents attached, may contain confidential information belonging to the sender which is protected by the work product and/or other privileges.

This email is intended only for the use of the individual(s) named, and may contain confidential and/or legally privileged information. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email is strictly prohibited. If you have received this email in error, please delete the email and notify the sender if we are sending you materials in error.  Any unintended transmission shall not constitute a waiver of the attorney-client or any other privilege.

Circular 230 Disclosure Notice. To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of voiding penalties under the Internal Revenue Code or any state or local tax law to which a governmental requirement similar to Circular 230 applies.***

11/15/22, 2:02 PM

RE: Pinn v. CCCF

**From:** Ethan Preston <ep@eplaw.us>
**Sent:** Thursday, August 25, 2022 8:02 PM
**To:** Neil Asnen <nasnen@kleinmoynihan.com>
**Cc:** Sean A. Moynihan <smoynihan@kleinmoynihan.com>; Daniel Chin <dchin@kleinmoynihan.com>; Wallis Granat <wgranat@kleinmoynihan.com>
**Subject:** Re: Pinn v. CCCF

Neil,

My client's telephone number is ▆▆▆▆▆▆▆▆▆ I have a different understanding of Rule 15. In any event, will DMS accept service of Ms. Pinn's complaint if and when she amends that complaint?

Sincerely,

Ethan


On 8/25/22 4:40 PM, Neil Asnen wrote:

> Mr. Preston:
>
> This Office serves as counsel to Digital Media Solutions, LLC. We have been advised that you recently reached out to a former DMS employee requesting that DMS accept service of an amended complaint of a matter involving Consumer Credit Counseling Foundation, Inc. or, alternatively, propose a resolution to the dispute.  That request was forwarded to our attention for response.
>
> As a procedural matter, it is unclear to us whether amending the complaint at this point in time would be proper given that the named defendants have not yet answered/moved but 21-days has otherwise passed since they waived service.  FRCP 15 would thus require either leave of Court or a stipulation between the parties for any amendment, and DMS is not a party.  Because of this, DMS is not in a position where it can accept service.
>
> In light of that, we would propose that you provide us with information related to your client's claim, specifically and most importantly her telephone number, so that DMS can conduct an appropriate investigation into the facts and circumstances to determine DMS's involvement in the matter, if any, including any records of consent that it may be in possession with as it relates to your client, to the extent DMS had any involvement.  We will advise you of the results of that investigation as appropriate as soon as we are able to and have a better understanding of the facts, after which the path for resolution will become clearer for everybody.
>
> Thank you.

11/15/22, 2:02 PM

Exhibit 2



activeprospect | TrustedForm

Back to your account

...following information about this lead:

## When did they visit?

Visit date:                          February 2, 2022

Visit time:                          1:19:45 PM CST

Time on page:                        12 seconds

## Where did they visit?

Page URL:                            https://healthinstantly.org/form.html

## Who visited?

Remote IP Address:                   76.233.5.193

Geographic Location (Approximate):   Pompano Beach, Florida, United States

Browser:                             Chrome 97.0.4692.99

Operating System:                    Windows 10

## What did they see?

TrustedForm captures a copy of the web page viewed by the visitor and the user events that took place on the page including form inputs, mouse movements and clicks. It plays these events back as a screen capture of how the user interacted with the page.

[View Screen Capture]

activeprospect | TrustedForm

Certificate of Authenticity for Web Leads

Back to your account

Certified

Claim History

Event Log

Screen Capture

Certificate

Health Instantly Plans
WHEN STANDARD
MEDICARE JUST ISN'T
ENOUGH COVERAGE!

Compare Quotes Today!

First Name

0:00 / 0:12

activeprospect | TrustedForm

Certificate of Authenticity for Web Leads

Certificate | Screen Capture | Event Log | Claim History

Back to your account   ◉ Closed

▮▮ ▶▶ 0:08 / 0:12

Kelly

Plan

81790

☐   I agree by providing a mobile telephone number and selecting "Yes",
"Confirm", "Contact Me", or a similar affirmation, you agree to our Terms of
Service and Privacy Policy (California Residents see CCPA). You also confirm
that you are the current owner/subscriber of the mobile telephone number
provided or that the current owner/subscriber of this mobile telephone
number authorized you to provide this number (collectively, "current
owner") to us, even if it is currently listed on any state, federal or corporate
Do Not Call list. You understand that by providing this mobile telephone
number, the current owner consents to be contacted by us, our vendors and



Exhibit 3

# Health Instantly Plans
## WHEN STANDARD MEDICARE JUST ISN'T ENOUGH COVERAGE!

### Compare Quotes Today!

First Name

Last Name

Phone Number

☐ I agree by providing a mobile telephone number and selecting "Yes", "Confirm", "Contact Me", or a similar affirmation, you agree to our Terms of Service and Privacy Policy. (California Residents see CCPA.You also confirm that you are the current owner/subscriber of the mobile telephone number provided or that the current owner/subscriber of this mobile telephone number authorized you to provide this number (collectively, "current owner") to us, even if it is currently listed on any state, federal or corporate

Health Insurance Reports USA

Do Not Call list. You understand that by providing this mobile telephone number, the current owner consents to be contacted by us, our vendors and our Marketing Partners with marketing offers and services of any type at the mobile number provided, without limitation, restriction or reservation, notwithstanding the provisions contained in the Telephone Consumer Protection Act (47 U.S. Code § 227) and all amendments and interpretations of the same by any court of competent jurisdiction. Although we try to limit offers from categories you have shown an interest, you hereby authorize us to contact you with offers based on information we continue to gather from you from all available sources irrespective of the subject matter. In this regard, you agree that we may contact you using auto dialer technology for the purpose of calling, sending text alerts, artificial voice and/or pre-recorded voice messages. Text messages may be sent 24/7, but auto dialer calls will be made between the hours of 8 a.m. and 9 p.m. local time. The current owner understands that consent to receive these communications is not a condition of any purchase. Wireless and text message fees may apply wherever applicable. You can opt out of these communications at any time by emailing us. Any attempt by the current owner to claim that this consent should be unenforceable or is otherwise ambiguous shall be deemed made in bad faith because it can be cancelled at any time (although I understand that the indemnification provisions contained below shall survive cancellation). The current owner hereby indemnifies and holds us and our Marketing Partners, harmless from any and all liability that we and/or our Marketing Partners sustain as a result of our reliance upon your consent, including but not limited to attorney's fees and costs for defending claims and/or controversies regarding the same, as all such parties shall be deemed third-party beneficiaries to the this consent agreement.

**COMPARE QUOTES**

Exhibit 4

# Marketing Partners

# Partners

| | |
|---|---|
| ADT | ADT Solar |
| 0Titan Solar & Remodeling | 1 Solar Solutions |
| 100 Insure | 1800 Remodel |
| 1MinuteQuotes.com | 1st US Energy LLC |
| 2020 Insurance Group LLC | 21st Century |
| 21st Century Insurance | 21st Century Power Solutions |
| 2Four6 Solar | 2insure4less |
| 2K Solar | 2nd Acudial |
| 310 Solar LLC | 31Solar LLC |
| 360 Solar Energy | 360 Solar Group |
| 360Quote | 365 Marketing Group LLC |
| 4th Dimensional Leads | 5 Mile Media |
| 5 Star Auto Protection | 701 Insurance |
| 76 Solar | 9317-7525 Quebec Inc |
| A & E Vehicle Services | A & M Energy Solutions |
| A & R Solar | A Division of Mechanical Energy Systems |
| A National Electric Service Inc. | A&B Insurance and Financial |
| A&M Energy Solutions | A&R Solar |
| A.D.D. Solar Connect | A.I. Solar |
| A.M. Solar | A-1 Electric |
| A1 Energy LLC | A1 Solar LLC |

| | |
|---|---|
| Delta Dental | Dentalinsurance.com |
| Department of Service Contracts | Dependable Solar Products Inc. |
| Depositors Emcasc | Desert Solar Designs |
| Design Benefit Plans | Design Technics |
| Designers Insurance Agency | Detroit Trading |
| Develop Medical | DFW Solar Electric |
| Dia Group | Diablo Media |
| Differential Consulting, LLC | Digiline Media |
| Digital Agents United | Digital BGA |
| Digital DBA | Digital Market Media |
| Digital Market Media, Inc | Digital Marketing Connection |
| Digital Marketing Group | Digital Media Solutions |
| Digital Thrive | Digital Thrive, LLC |
| Digitalbga | Direct Auto |
| Direct Choice | Direct Connect Solar &amp; Electric LLC |
| Direct General | Direct Health |
| Direct Health LLC | Direct Impact Leads |
| Direct Marketing Group | Direct Media Partners |
| Direct Property & Casualty | Direct Protect Security |
| Direct Ring Media | Direct Sales Solutions |
| Direct Solar Inc. | Direct STM |
| Direct Web Advertising | DirectMail.com |
| Directsun Solar Energy &amp; Technology | DIRECTV |

Exhibit 5

1
2
3
4
5
6
7                    **UNITED STATES DISTRICT COURT**
8                    **CENTRAL DISTRICT OF CALIFORNIA**
9                         **WESTERN DIVISION**
10
11
12  IN RE SUBPOENAS TO          )
    AMIR DAWOOD,                )
13  DAWOOD & COMPANY,           )
    AND GLOBAL LYNKS LLC        )
14  _____ )
    KELLY PINN,                 )   Case No. 22-mc-00240-DSF (AGRx)
15                              )
                Plaintiff,      )   FINDINGS, CERTIFICATION AND
16                              )   ORDER TO SHOW CAUSE
    v.                          )   RE: CONTEMPT
17                              )   FOR AMIR DAWOOD, DAWOOD &
    CONSUMER CREDIT             )   COMPANY, GLOBAL LYNKS LLC
18  COUNSELING FOUNDATION, et al.,)
                                )   Hearing:    June 12, 2023
19              Defendants.     )   Time:       1:30 p.m.
    _____ )   Ctrm:       7D
20                                              First Street Courthouse

21          This Court, being familiar with the record of this action, having presided over

22  the calling this matter for hearing on April 18, 2023, and having found good cause

23  why these Findings, Certification and Order should issue:

24          THE COURT FINDS THAT:

25          1.      Plaintiff filed this miscellaneous action on December 9, 2022.

26          2.      In the underlying action in the Northern District of California, Plaintiff

27  alleges that Defendants Consumer Credit Counseling Foundation, Inc., National

28  Budget Planners of South Florida, Inc., and Ishwinder Judge violated the Telephone

    Consumer Protection Act ("TCPA") via phone calls to Plaintiff's residential phone

number in April 2022.  In discovery, Defendants indicated that they contracted with third party Digital Media Solutions, LLC ("DMS").  (Preston Decl. ¶ 3.)  According to Plaintiff's counsel, DMS explained that Plaintiff consented to the April 2022 calls at issue by visiting a website called healthinstantly.org on February 2, 2022.  DMS provided a link from ActiveProspect, Inc., that purported to be a record of Plaintiff consenting to the calls, including by "marketing partners" listed on a website known as marketingpartners.business.  (Preston Decl. ¶¶ 5-6 & Exh. 3.)

3.      The IP address for the website healthinstantly.org is 51.81.207.101, which is owned by OVH US LLC ("OVH").  In response to a subpoena, OVH indicated the subscriber for the 51.81.207.101 IP address is Global Lynks, LLC, at 500 N State College Suite 1100, Orange, CA 92868-1100.  (*Id.* ¶ 7.)

4.      The agent for service of process for Global Lynks is Dawood & Company.  (*Id.* ¶ 10 & Exh. 5.)

5.      The agent for service of process for Dawood & Co. is A. Nathan Dawood, the company's CEO, CFO, Secretary and Director.  (*Id.* ¶ 10 & Exhs. 6-7.)

6.      According to proofs of service dated October 31, 2022, Plaintiff served subpoenas for production of documents upon Global Lynks LLC, Dawood & Company, and Amir Dawood (hereinafter "Third Parties").  (*Id.* ¶ 14 & Exhs. 10-11, Dkt. No. 1-2 at 6, 37-48, 50-59; Dkt. No. 11 at 4, 6.)

7.      A proof of service was filed on December 15, 2022 indicating that Plaintiff served the motion to compel and all related papers on the Third Parties.  No opposition was received from Third Parties or their counsel.

8.      On January 19, 2023, Plaintiff's motion to compel came on for hearing before this Court.  No appearance was made by the Third Parties or their counsel.

9.      On January 19, 2023, this Court issued an order that granted in part and denied in part Plaintiff's motion to compel.  Specifically, Plaintiff was ordered to serve the order upon Global Lynks LLC, Dawood & Company, and Mr. Dawood.  Within 30 days after service, (a) Global Lynks was ordered to produce documents responsive

to Document Request Nos. 1, 2, 3, 5-8 (as narrowed by the Court), 10 (as narrowed by the Court), and 11-12 if applicable as explained in the order; and (b) Dawood & Company was ordered to produce documents responsive to Request Nos. 6-7 (as narrowed by the Court).

10.     On February 2, 2023, Plaintiff filed proofs of service indicating that the Third Parties were served with the January 19, 2023 court order on January 24-25, 2023.  (Dkt. No. 11 at 8-9, 11-12,)

11.     On March 21, 2023, Plaintiff filed a motion for contempt against the Third Parties for failure to comply with the January 19, 2023 Court Order.  (Dkt. No. 14.) Plaintiff's motion sought a finding of contempt as well as an order for the Third Parties to pay Plaintiff's attorneys fees and costs associated with the Third Parties' failure to comply with the January 19, 2023 Court Order and Plaintiff's motions and hearings before this court.  (Dkt. Nos. 14, 14-3.)

12.     The proofs of service indicate Plaintiff served the motion for contempt upon the Third Parties.  (Dkt. No. 18.)

13.     On April 18, 2023, this matter came on for hearing at 10:00 a.m.  The case was called.  Counsel for the Plaintiff appeared.  As of 10:05 a.m., the Third Parties had not appeared and had not otherwise contacted the court.  The court adjourned the hearing and has not been contacted by the Third Parties since that date and time.

14.     The failure of each Third Party to comply with the January 19, 2023 Court Order constitute acts in contempt of court.

NOW, THEREFORE, on the basis of the foregoing findings, and the record of this action,

PURSUANT TO 28 U.S.C. § 636(e)(6)(B)(iii), THE WITHIN MATTER IS HEREBY CERTIFIED to the Hon. Dale S. Fischer, United States District Judge, for a hearing upon the order to show cause re: contempt set forth herein due to the failure to comply with the Order dated January 19, 2023, and for Judge Fischer to hear the

evidence as to the acts or conduct complained of and, if it is such as to warrant punishment, to punish such person or entity in the same manner and to the same extent as for a contempt committed before a district judge; and

IT IS HEREBY ORDERED that Global Lynks LLC, Dawood & Company, and Amir Dawood appear personally before Hon. Dale S. Fischer, United States District Judge, on **June 12, 2023, at 1:30 p.m., in Courtroom 7D** of the United States District Court located at 350 West 1st Street, Los Angeles, California 90012, and that he/she/it show cause, then and there, why he/she/it should not be adjudged in contempt of the Court, due to the failure to comply with the January 19, 2023 Court Order.

PLAINTIFF MUST CAUSE THIS ORDER TO BE PERSONALLY SERVED ON GLOBAL LYNKS LLC, DAWOOD & COMPANY AND AMIR DAWOOD NOT LESS THAN TEN (10) DAYS BEFORE THE DATE SET FOR THE ORDER TO SHOW CAUSE HEARING.

DATED: April 20, 2023

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

Exhibit 6

**Secretary of State
Statement of Information**
(Limited Liability Company)

LLC-12

21-D55174

# FILED

In the office of the Secretary of State
of the State of California

JUL 14, 2021

**This Space For Office Use Only**

**IMPORTANT** — Read instructions before completing this form.

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**1. Limited Liability Company Name** (Enter the exact name of the LLC.  If you registered in California using an alternate name, see instructions.)

GLOBAL LYNKS LLC

| 2.  12-Digit Secretary of State File Number | 3.   State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 202111610213 | CALIFORNIA |

**4.  Business Addresses**

| | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| a. Street Address of Principal Office - Do not list a P.O. Box<br>500 N. State College Blvd., Suite 1100 | Orange | CA | 92868 |
| b. Mailing Address of LLC, **if different than item 4a**<br>500 N. State College Blvd., Suite 1100 | Orange | CA | 92868 |
| c. Street Address of **California** Office, if Item 4a is not in California - Do not list a P.O. Box<br>500 N. State College Blvd., Suite 1100 | Orange | CA | 92868 |

**5.  Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank).  If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank).  Note:  The LLC cannot serve as its own manager or member.  If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|

| b. Entity Name - Do not complete Item 5a | | | | |
|---|---|---|---|---|
| TERRA LUNA, LLC | | | | |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 500 N. State College Blvd., Suite 1100 | Orange | CA | 92868 |

**6.  Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only.  Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|

| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | State<br>CA | Zip Code |
|---|---|---|---|

**CORPORATION** – Complete Item 6c only.  Only include the name of the registered agent Corporation.

c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b

DAWOOD & COMPANY (C3857097)

**7.  Type of Business**

a. Describe the type of business or services of the Limited Liability Company
Telecommunication Services

**8.  Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|

**9.  The Information contained herein, including any attachments, is true and correct.**

| 07/14/2021 | J Ajaltouni | Authorized Representative | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed.  SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip:

Exhibit 7

**California Secretary of State**
Electronic Filing



# Corporation - Statement of Information

| | |
|---|---|
| Entity Name: | DAWOOD & COMPANY |

| | |
|---|---|
| Entity (File) Number: | C4784107 |
| File Date: | 10/26/2021 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GX79443 |

**Detailed Filing Information**

1. Entity Name:

   DAWOOD & COMPANY

2. Business Addresses:
   a. Street Address of Principal
      Office in California:

      2901 W. Coast Highway, Suite 200
      Newport Beach, California 92663
      United States of America

   b. Mailing Address:

      2901 W. Coast Highway, Suite 200
      Newport Beach, California 92663
      United States of America

   c. Street Address of Principal
      Executive Office:

      2901 W. Coast Highway, Suite 200
      Newport Beach, California 92663
      United States of America

3. Officers:
   a. Chief Executive Officer:

      A NATHAN  DAWOOD
      2901 W. Coast Highway, Suite 200
      Newport Beach, California 92663
      United States of America

   b. Secretary:

      A NATHAN  DAWOOD
      2901 W. Coast Highway, Suite 200
      Newport Beach, California 92663
      United States of America

Document ID:GX79443

**California Secretary of State**
Electronic Filing

Officers (cont'd):

    c.   Chief Financial Officer:

            A NATHAN  DAWOOD

            2901 W. Coast Highway, Suite 200

            Newport Beach, California 92663

            United States of America

4.   Director:

            A NATHAN  DAWOOD

            2901 W. Coast Highway, Suite 200

            Newport Beach, California 92663

Number of Vacancies on the Board of Directors:    United States of America

            0

5.   Agent for Service of Process:

            A NATHAN  DAWOOD

            2901 W. COAST HIGHWAY, SUITE 200

            NEWPORT BEACH, California 92663

            United States of America

6.   Type of Business:           REAL ESTATE INVESTMENTS

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:   A Nathan Dawood

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Document ID: GX79443

Exhibit 8

namecheap

## User Info

| Username<br>User ID<br>Account Locked | First Name<br>Last Name<br>Email | Support Pin<br>Pin Expiry | Signup Date<br>Signup IP | Account Balance<br>Available Balance<br>Earned Amount | Organization<br>Street Address<br>City, State | Phone<br>Fax<br>Country, Zip | Latest Transaction<br>Latest Login<br>Login IP |
|---|---|---|---|---|---|---|---|
| 5284847<br>No | Johannes<br>Grobler<br>likable_09castors@icloud.com | Reset | 4/3/2019 1:10:35 PM<br>108.184.87.79 | 0.0000<br>0.0000<br>0.0000 | Universal Marketing<br>23 Lebombo Street<br>Mondeor, Gauteng | +1.7144010669<br>NA<br>ZA, 2091 | 1/5/2023 2:19:17 AM<br>5/15/2023 9:07:21 AM<br>173.175.111.93 |

Exported on May/16/2023



## Whois details for healthinstantly.org

**Registrant Contact**

| | | |
|---|---|---|
| First Name: Johannes | Last Name: Grobler | Organization: Universal Marketing |
| Street Address: 23 Lebombo Street | Address 2: | Job Title: Marketing Director |
| City: Mondeor | State/Province, Zip/Postal Code: Gauteng, 2091 | Country: South Africa |
| Email Address: stacey@golivewebdesign.com | Phone Number: +1 7144010669 | Fax Number: |

**Administrative Contact**

| | | |
|---|---|---|
| First Name: Johannes | Last Name: Grobler | Organization: Universal Marketing |
| Street Address: 23 Lebombo Street | Address 2: | Job Title: Marketing Director |
| City: Mondeor | State/Province, Zip/Postal Code: Gauteng, 2091 | Country: South Africa |
| Email Address: stacey@golivewebdesign.com | Phone Number: +1 7144010669 | Fax Number: |

**Technical Contact**

| | | |
|---|---|---|
| First Name: Johannes | Last Name: Grobler | Organization: Universal Marketing |
| Street Address: 23 Lebombo Street | Address 2: | Job Title: Marketing Director |
| City: Mondeor | State/Province, Zip/Postal Code: Gauteng, 2091 | Country: South Africa |
| Email Address: stacey@golivewebdesign.com | Phone Number: +1 7144010669 | Fax Number: |

**Billing Contact**

| | | |
|---|---|---|
| First Name: Johannes | Last Name: Grobler | Organization: Universal Marketing |
| Street Address: 23 Lebombo Street | Address 2: | Job Title: Marketing Director |
| City: Mondeor | State/Province, Zip/Postal Code: Gauteng, 2091 | Country: South Africa |
| Email Address: stacey@golivewebdesign.com | Phone Number: +1 7144010669 | Fax Number: |

Exported on May/16/2023

# Profile Change Log

| Date | Type | Username | New Value | Old Value | Changed by | IP Address | Profile Type | Admin Comment |
|---|---|---|---|---|---|---|---|---|
| 1/23/2022 3:29:54 PM | | wic7 | chad@smac-digital.com | subscriptions777@icloud.com | Admin | 95.132.128.78 | Email | NC-NL-8720 |
| 6/30/2022 4:23:21 PM | CHANGE | wic7 | paidsubs@icloud.com | chad@smac-digital.com | Client | 136.52.63.246 | Email | |
| 8/19/2022 10:04:36 AM | CHANGE | wic7 | chad@smac-digital.com | paidsubs@icloud.com | Client | 136.52.63.246 | Email | |
| 12/13/2022 8:05:49 PM | CHANGE | wic7 | stacey@golivewebdesign.com | chad@smac-digital.com | Client | 24.192.61.196 | Email | |
| 2/15/2023 10:34:12 PM | CHANGE | wic7 | likable_09castors@icloud.com | stacey@golivewebdesign.com | Client | 136.52.63.246 | Email | |

Exported on May/16/2023

WNK-606-76565, 02/01/2021 18:33:12
DNS load times
subscriptions777@icloud.com 72.211.210.228

18:33:14 Your Question: DNS load times
18:33:14 Please wait and one of our operators will be with you shortly.
18:34:14 Your request is important to us. Please wait and one of our operators will be with you shortly.
18:35:41 You are now chatting with Olga Lazorik (Domain CS) - Domains Support
18:35:53 Olga Lazorik: Hello, you've contacted Live Support! How may I help you today?
18:35:55 Chad Smanjak: Hello
18:36:16 Chad Smanjak: I just bought my domain smacexchnage again
18:36:22 Chad Smanjak: its till showing the parked url
18:36:23 Chad Smanjak: 3637
18:36:25 Chad Smanjak: wic7
18:38:59 Olga Lazorik: As I can understand the domain name in question is smacexchange.com. Please keep in mind, it might take 24-48 hours for the website to go back online due to DNS propagation. When the domain name expires, it is switched to our parking nameservers. If this domain is reactivated or re-instated, the nameservers are changed automatically to the ones that have been used before the expiration.
18:39:05 Chad Smanjak: ok
18:39:07 Chad Smanjak: Thanks
18:40:17 Olga Lazorik: In case you have any further questions, just let me know. If you have ideas or feedback to share or simply want to rate the assistance provided, you can follow this link https://nps.namecheap.com/u/B1dF6b or send an email at feedback@namecheap.com any time. Your opinion is important to us!

UXG-250-12284, 02/01/2021 15:23:18
I need help buying my domains
subscriptions777@icloud.com 72.211.210.228

15:23:20 Your Question: I need help buying my domains
15:23:20 Please wait and one of our operators will be with you shortly.
15:23:35 You are now chatting with Olena Tiulkina (Domain CS) - Domains Support
15:23:44 Olena Tiulkina: Hello, you've contacted Live Support! How may I help you today?
15:24:08 Chad Smanjak: Hello i would like to buy all my domains in grace
15:24:09 Chad Smanjak: please
15:24:11 Chad Smanjak: asap
15:24:54 Olena Tiulkina: Would you please provide me with: 1) your Namecheap username and 2) your Support PIN? You can find your Support PIN at  https://ap.www.namecheap.com/settings/security
15:25:10 Chad Smanjak: 3637]
15:25:12 Chad Smanjak: wix7
15:25:14 Chad Smanjak: wic7
15:25:28 Olena Tiulkina: Thank you, one moment, please.
15:27:39 Olena Tiulkina: You may renew all your domains in grace from this tab in your account: https://ap.www.namecheap.com/expiringsoon/domains

Just add the required domains  to your Shopping Cart using the corresponding icon on the right. Click on "View Cart" to review the order. Press then the "Confirm Order" button to proceed with the checkout.

You can also reactivate the domain name in the following way: sign into Namecheap.com, select "Domain List" from the left sidebar. Click on the "Renew" button next to the domains to have it reactivated.

15:28:36 Chad Smanjak: no i cant
15:28:44 Chad Smanjak: it just keeps spinning
15:28:48 Olena Tiulkina: Per my check, there are several failed order to renew these domains.
15:28:54 Olena Tiulkina: Unfortunately, your card has been rejected. Since most declines are generic, we don't have much information as to why a charge was specifically declined.


Declines can happen for a variety of reasons. Most of them come from the issuing bank. The correctness of the card number, the expiration date, and the CVC are the primary factors used by the banks when deciding whether or not to accept a transaction.

In such a case, there are several ways to resolve the issue:

1) Try to make a deposit to your Namecheap funds with your card and use this money to pay.

2) Try to use another browser, clear the cache and disable the addons/extensions/plugins that may affect the payment.

3) Make sure there are no limits on internet payments set on your card.

4) Try to remove your card and then add it again to your account.

DXR-733-19597, 08/05/2020 14:34:23
Password fix?
chad@smac-digital.com 70.187.160.89

14:34:27 Your Question: Password fix?
14:34:27 Please wait and one of our operators will be with you shortly.
14:34:42 You are now chatting with Alexandra Podzolkina (Domain CS) - Domains Support
14:34:49 Chad: Your account has been locked for 24 hours for three consecutive failed password or username entry attempts. Please use Password Reset option. Once the password is reset your account will be unlocked automatically.
14:34:53 Alexandra Podzolkina: Hello Chad, you've contacted Live Support! How may I help you today?
14:34:57 Chad: I just had my password reset
14:35:10 Chad: but im still locked
14:35:11 Alexandra Podzolkina: Please provide me with your Username
14:35:23 Chad: wic7
14:35:53 Alexandra Podzolkina: Thank you
14:35:59 Alexandra Podzolkina: Please allow me a few minutes
14:37:08 Alexandra Podzolkina: Am I correct that you tried to use our Reset Password, but you are still locked?
14:37:58 Chad: NO i was just on with chat. and i had them reset my password back to the old passowrd

14:38:47 Chad: but when i try to login in it
14:38:51 Chad: doesnt work
14:40:10 Chad: Maybe could i reset it useing my phone number on file
14:40:50 Alexandra Podzolkina: Please try to use our Password Reset option , following this link:https://ap.www.namecheap.com/ResetPassword?
14:41:16 Chad: I dont have access to my email
14:41:58 Chad: i have phone number
14:43:04 Chad: 6056759091
14:43:46 Alexandra Podzolkina: In this case, you can wait for 24 hours to your account will unlocked.
14:43:58 Alexandra Podzolkina: The another way is change your Primary email address
14:44:12 Chad: can i have you do that
14:44:17 Chad: again i cant login
14:44:27 Chad: i think my password was changed...
14:45:59 Alexandra Podzolkina: You think that someone hacked your Namcheap account, correct?
14:46:18 Chad: I think my password was changed with out my permission
14:50:33 Alexandra Podzolkina: Can we try to change your Primary address, after this you will use our Password reset option and you will have access to your account. Then, you can change your password.

14:50:58 Chad: ok can you change it to cyappleseed@gmail.com?
14:53:09 Alexandra Podzolkina: Please provide me with a current email address
14:55:44 Chad:  cyappleseed@gmail.com
14:57:32 Alexandra Podzolkina: I mean the email address that assigned to your Namcheap account at the moment. The email cyappleseed@gmail.com to which you want to change
14:57:59 Chad: yes the current email?
14:58:17 Chad: subscriptions777@icloud.com
14:58:43 Alexandra Podzolkina: Yes, thank you
15:00:14 Alexandra Podzolkina: Please provide me with a Full name, assigned to your account

ZRT-300-16742, 08/05/2020 14:24:51

I would like to reset my password i believe my password was changed with out my permission. Could we use the phone number to verifiy

chad@smac-digital.com 70.187.160.89

14:24:52 Your Question: I would like to reset my password i believe my password was changed with out my permission. Could we use the phone number to verifiy
14:24:52 Please wait and one of our operators will be with you shortly.
14:25:07 You are now chatting with Narendran Chinnaswamy (Domain CS) - Domains Support
14:25:18 Narendran Chinnaswamy: Hello, you've contacted Live Support!
14:25:33 Narendran Chinnaswamy: Please provide me with the Username.
14:25:45 Chad: wic7
14:25:53 Chad: number is 6056759091
14:26:01 Chad: should be attached to the account
14:27:21 Narendran Chinnaswamy: Please allow me 5 minutes.
14:31:30 Narendran Chinnaswamy: Please clarify if you have tried to login using old password.
14:31:32 Chad: ok
14:31:49 Chad: 7YzB3G8!eCnxBnC4pR8+
14:32:09 Narendran Chinnaswamy: Please do not provide passwords in chat.
14:32:19 Chad: ok
14:32:26 Chad: what did you mean then?
14:32:45 Narendran Chinnaswamy: Please try login again now.

AZV-236-53269, 08/05/2020 03:48:21
I fat fingered my password can i get one more chance... please i need
to make some dns updates tonight

My username is wic7
I know the last 4 of my card
I can also use my phone number to prove its me
chad@smac-digital.com 70.187.160.89

03:48:22 Your Question: I fat fingered my password can i get one more chance... please i need to make
some dns updates tonight

My username is wic7
I know the last 4 of my card
I can also use my phone number to prove its me
03:48:22 Please wait and one of our operators will be with you shortly.
03:49:22 Your request is important to us. Please wait and one of our operators will be with you shortly.
03:50:22 Your request is important to us. Please wait and one of our operators will be with you shortly.
03:51:22 Your request is important to us. Please wait and one of our operators will be with you shortly.
03:52:03 You are now chatting with Gennadiy Kovrizhenko (Domain CS) - Domains Support
03:52:03 You are now chatting with Gennadiy Kovrizhenko (Domain CS) - Domains Support
03:52:05 You are now chatting with Gennadiy Kovrizhenko (Domain CS) - Domains Support
03:52:06 Gennadiy Kovrizhenko: Hello, you've contacted Live Support! Please give me a minute to look
at the question.
03:52:11 You are now chatting with Gennadiy Kovrizhenko (Domain CS) - Domains Support
03:52:12 You are now chatting with Gennadiy Kovrizhenko (Domain CS) - Domains Support
03:52:15 You are now chatting with Gennadiy Kovrizhenko (Domain CS) - Domains Support
03:52:21 You are now chatting with Gennadiy Kovrizhenko (Domain CS) - Domains Support
03:52:21 You are now chatting with Gennadiy Kovrizhenko (Domain CS) - Domains Support
03:52:22 You are now chatting with Gennadiy Kovrizhenko (Domain CS) - Domains Support
03:52:25 You are now chatting with Gennadiy Kovrizhenko (Domain CS) - Domains Support
03:52:46 Chad: Thanks
03:53:11 Gennadiy Kovrizhenko: Could you please specify a domain name from your account as well
as the full name  associated with the account?
03:53:25 Chad: smac-digital.com
03:53:35 Chad: affordableinsurancetoday.com/
03:53:50 Chad: Chad Smanjak
03:54:48 Gennadiy Kovrizhenko: Thank you. I have unlocked the account. Please let me know if you
are able to log in.
03:54:53 Chad: Thanks
03:55:30 Chad: thakns

BAI-453-49382, 01/29/2020 17:40:03
I need an adult I locked myself out i guess...
chad@smac-digital.com 98.153.170.250

17:40:15 Your Question: I need an adult I locked myself out i guess...
17:40:15 Please wait and one of our operators will be with you shortly.
17:40:24 You are now chatting with Ivan Loban (Domain CS) - Domains Support
17:40:30 Ivan Loban: Hello! Thank you for contacting our Live Chat Support!
17:40:39 Ivan Loban: May I know your username, please?
17:41:03 wic7: wic7
17:41:21 Ivan Loban: Thank you, please allow me a few minutest to check the details.
17:41:54 Ivan Loban: Unfortunately, your account is locked because of three consecutive failed transactions.

Please provide me with the last 4 digits of your credit card, so I can unlock it.
17:43:47 wic7: ummmmm one sec
17:44:00 Ivan Loban: Sure, take your time.
17:45:04 wic7: 9317
17:45:39 Ivan Loban: Thank you, I have unlocked your account, please try to log in again.
17:47:01 wic7: thankns
17:47:15 Ivan Loban: You are welcome.
17:52:51 Ivan Loban: Apparently, our chat session has expired. Feel free to get back to us at any moment.

Thank you for contacting Namecheap Live Support!

If you have a spare minute, please leave feedback about your experience in this chat or Namecheap services.

To leave your feedback, please use the "Close" button and choose "Stay on page" in the pop-up dialogue window. Also, you can send an email to feedback@namecheap.com. We would greatly appreciate any feedback or suggestions from you.

## NC-HA-4880, 06/17/2022 07:54:46
## i need to transfer a domain im not getting the email please send the code to throwawayTP8@protonmail.com

chad@smac-digital.com 23.105.140.105

07:54:46 Chad Smanjak: i need to transfer a domain im not getting the email please send the code to throwawayTP8@protonmail.com
07:54:47 System: One of our Customer Support agents will be with you soon. Stay tuned!
07:54:48 System: Routing to Domains
07:54:48 Anastasiia Turchak: Assigned to Anastasiia Turchak
07:55:48 Anastasiia Turchak: ?hat timed out on Anastasiia Turchak
07:55:49 Nataliia Shevchun: Assigned to Nataliia Shevchun
07:55:56 Nataliia Shevchun: Nataliia Shevchun joined the chat.
07:55:59 Nataliia Shevchun: Hello! Thank you for contacting our Live Chat Support!
07:56:08 Nataliia Shevchun: Please provide me with the domain name.
07:56:23 Chad Smanjak: https://proinsuranceplans.com
07:56:44 Nataliia Shevchun: This case falls into the area of responsibility of the Domain transfers department. Please let me transfer this chat to the representative who will assist you better with your particular request.
07:56:49 Chad Smanjak: thanks
07:59:21 System: Group transfer to Concierge Domains: "i need to transfer a domain im not getting the email please send the code to throwawayTP8@protonmail.com

Domain: proinsuranceplans.com
07:59:21 Oleg N.: Transfer to Oleg Neklyudov
07:59:40 Oleg N.: Oleg Neklyudov accepted the transfer
07:59:40 Oleg N.: Oleg Neklyudov joined the chat.
07:59:40 Nataliia Shevchun: Nataliia Shevchun left the chat
07:59:55 Oleg N.: Hello, I will assist you further
08:02:20 Oleg N.: Please let me know if you checked Spam/Junk folders. Also, make sure you check the correct Registrant contact email address assigned to the domain - subscriptions777@icloud.com
08:03:11 Chad Smanjak: Thanks
08:03:17 Chad Smanjak: can i chnage the domian
08:03:26 Chad Smanjak: i dont have access to this email anymore
08:03:49 Oleg N.: I see. In this case, please change the contact email address in this way: https://www.namecheap.com/support/knowledgebase/article.aspx/305/46/how-do-i-change-the-contact-information-for-my-domain/
08:04:16 Oleg N.: Once done, you will most likely need  to confirm the change via whois validation email - it will be sent to the new email address
08:04:28 Oleg N.: And then you can request the Auth code to the new email address
08:04:44 Oleg N.: If you don't receive the code within 1 hour, I recommend disabling Domain privacy and request the Auth codes directly to your email address https://www.namecheap.com/support/knowledgebase/article.aspx/484/37/how-do-i-disable-domain-privacy-service-for-my-domain/
08:04:52 Chad Smanjak: Ok how do we do this
08:05:10 Oleg N.: Please check this tutorial: https://www.namecheap.com/support/knowledgebase/article.aspx/305/46/how-do-i-change-the-contact-information-for-my-domain/
08:06:23 Chad Smanjak: I did this
08:07:22 Oleg N.: Please request the Auth code again

# NC-EB-3699, 06/17/2022 08:59:24
## I have not got the auth key to tranfer my domian\

chad@smac-digital.com 23.105.140.105

08:59:24 Chad Smanjak: I have not got the auth key to tranfer my domian\
08:59:25 System: One of our Customer Support agents will be with you soon. Stay tuned!
08:59:26 System: Routing to Domains
08:59:27 Christina Dorothy: Assigned to Christina Dorothy Titus Mathias David
09:00:27 Christina Dorothy: ?hat timed out on Christina Dorothy Titus Mathias David
09:00:28 Anastasiia Turchak: Assigned to Anastasiia Turchak
09:00:29 Anastasiia Turchak: Anastasiia Turchak declined the chat
09:00:30 Jennifer Raja: Assigned to Jennifer R
09:01:28 Jennifer Raja: Jennifer R declined the chat
09:01:30 Arun KR: Assigned to Arun Kr
09:01:32 Arun KR: Arun Kr joined the chat.
09:01:49 Arun KR: Hello, thank you for contacting Namecheap Live Support!
09:02:07 Arun KR: Please provide me with the domain name associated.
09:08:27 Chad Smanjak: hello
09:08:55 Chad Smanjak: https://proinsuranceplans.com
09:10:12 Arun KR: Thank you for specifying.
09:11:42 Arun KR: As I understand, you want the domain proinsuranceplans.com to be transferred from Namecheap to a different Registrar. Is that correct?
09:15:19 Chad Smanjak: i updated  the  email and have recived the transfer code
09:17:48 Arun KR: Please let me know if you need any additional assistance.
09:18:06 Chad Smanjak: i need the auth code
09:18:09 Chad Smanjak: send to the email
09:18:31 Arun KR: Let me transfer the chat session to our Domain Transfers department to help you with that.
09:18:35 Chad Smanjak: ok
09:19:51 System: Group transfer to Concierge Domains: Need auth code
Domain: proinsuranceplans.com
09:19:51 Oleksandr Rakov: Transfer to Oleksandr Rakov
09:19:55 Oleksandr Rakov: Oleksandr Rakov accepted the transfer
09:19:55 Oleksandr Rakov: Oleksandr Rakov joined the chat.
09:19:55 Arun KR: Arun Kr left the chat
09:20:03 Chad Smanjak: hello
09:20:14 Oleksandr Rakov: Hello, my name is Oleksandr, and I will assist you further. Please give me 5 minutes to look through the question you've asked.
09:20:23 Chad Smanjak: ok
09:23:45 Chad Smanjak: ?
09:24:12 Oleksandr Rakov: I have renewed and resent the Auth code to the registrant email address, which is throwawayTP8@protonmail.com. Please make sure to check the Spam/Junk and other folders as the email can be forwarded there automatically.
09:24:30 Chad Smanjak: i will check now but please send agaun
09:24:53 Oleksandr Rakov: It was sent a few minutes ago. Please, check it on your side
09:24:53 Chad Smanjak: nothing
09:25:19 Oleksandr Rakov: Please, allow me 5 more minutes to investigate the matter
09:27:00 Chad Smanjak: ok
09:27:38 Oleksandr Rakov: I have resent it again, Please, check inbox and spam/junk folders again

Exhibit 9

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | **)** | |
| | **)** | |
| Urth Access, LLC | **)** | File No. EB-TCD-22-00034232 |
| | **)** | |

**ORDER**

**Adopted:  December 8, 2022**                    **Released:  December 8, 2022**

By the Chief, Enforcement Bureau:

1.       The Enforcement Bureau (Bureau) of the Federal Communications Commission (FCC or Commission) issues this *Order* pursuant to section 64.1200(n)(2) of the Commission's rules[1] to provide actual written notice to all voice service providers about suspected illegal robocalls that have been made in violation of one or more provisions of the Telephone Consumer Protection Act of 1991, the Truth In Caller ID Act of 2009, and/or the Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act (TRACED Act) of 2019, collectively codified in section 227 of the Communications Act.[2] Specifically, the Bureau notifies and directs all U.S.-based voice service providers to take immediate steps to effectively mitigate suspected illegal robocall traffic made by or on behalf of the following: (1) Urth Access, LLC (Urth Access); (2) Fire Data LLC; (3) US Acquisitions LLC; (4) Dawood & Dawood; (5) Dawood and Company; (6) their individual associates; and (7) associated entities (collectively, the Student Loan Robocall Operation).  A voice service provider may satisfy this obligation if it terminates a customer relationship with the Student Loan Robocall Operation or blocks all traffic from the Student Loan Robocall Operation and from Urth Access.[3]  If any voice service provider, after investigation of the suspected illegal robocall traffic identified in this *Order,* thereafter does NOT terminate a customer relationship or block the traffic, it will be required to provide a written report to the Bureau with the results of its investigation, as required by section 64.1200(n)(2) of the rules. The provider should also continue to demonstrate its ongoing efforts to mitigate the traffic associated with the Student Loan Robocall Operation.  **Should any voice service provider fail to comply with these obligations and fail to take all necessary steps to avoid carrying suspected illegal robocall traffic made by/on behalf of these individuals and entities, that voice service provider may be deemed to have knowingly and willfully engaged in transmitting unlawful robocalls.[4]**

---

[1] 47 CFR § 64.1200(n)(2).

[2] 47 U.S.C. § 227.

[3] Because Urth Access, LLC failed to effectively mitigate the illegal traffic within 48 hours and inform the Commission and the USTelecom's Industry Traceback Group (Traceback Consortium) within fourteen days of the steps that Urth Access, LLC has taken to implement effective measures to prevent customers from using its network to make illegal calls, downstream providers may block all of Urth Access's traffic without liability under the Communications Act or the Commission's rules.  47 CFR § 64.1200(k)(4).

[4] If the Commission finds that a voice service provider is knowingly or willfully engaged in transmitting illegal robocalls, it may take action that could result in downstream providers blocking that voice service provider's calls. *See* 47 CFR § 64.1200(k)(4) (allowing downstream providers to block traffic from an originating or intermediate provider that fails to effectively mitigate illegal traffic when notified by the Commission); 47 CFR § 64.6305(e) (requiring downstream providers to cease carrying traffic from domestic voice service providers that do not have a certification in the Robocall Mitigation Database); *Call Authentication Trust Anchor*, WC Docket No. 17-97,

(continued….)

## I.    BACKGROUND

2.    On November 10, 2022, the Bureau issued a cease-and-desist letter to Urth Access, LLC.[5] Pursuant to this letter, Urth Access was required to investigate and mitigate the traffic identified in the letter, notify the Bureau and the USTelecom's Industry Traceback Group (Traceback Consortium)[6] within 48 hours of the steps taken to effectively mitigate the identified traffic, and inform the Bureau and the Traceback Consortium, within 14 days, of the steps taken to prevent customers from using the voice service provider's network to transmit illegal robocalls.[7]  The letter warned that failure to comply with the requirements set forth in the letter could result in Urth Access's removal from the Robocall Mitigation Database, which would in turn obligate all other providers to cease carrying any traffic from Urth Access.[8]

3.    Also on November 10, 2022, the Bureau issued a *Public Notice*[9] pursuant to section 64.1200(k)(4) of the Commission's rules to notify all U.S.-based voice service providers that they may block voice calls or cease to accept traffic from Urth Access without liability under the Communications Act or the Commission's rules.[10]  The *Notice* stated that in the event that Urth Access fails to comply with the requirements laid out in the cease-and-desist letter, the Bureau would issue a follow-up *Order* notifying all U.S.-based voice service providers of this fact.  The *Notice* also stated that "[i]n the event that a follow-up *Order* is issued by the Bureau in this matter, pursuant to section 64.1200(n)(2) of the Commission's Rules, all U.S.-based voice service providers shall be required to '[t]ake steps to

(Continued from previous page) ————————————————
Second Report and Order, 36 FCC Rcd 1859, 1902-03, paras. 81-83 (2020) (noting that the Bureau may remove a provider's certification from the Robocall Mitigation Database if that certification is defective, including if the provider knowingly or negligently originates illegal robocall campaigns).

[5] *See* Letter from Loyaan A. Egal, Chief, FCC Enforcement Bureau, to Fawaz Saleem, CEO, Urth Access, LLC (Nov. 10, 2022).  This letter is available on the Commission's website at https://www.fcc.gov/robocall-facilitators-must-cease-and-desist.

[6] The Traceback Consortium is the registered industry consortium selected pursuant to the TRACED Act, to conduct tracebacks to identify suspected bad actors.  *Implementing Section 13(d) of the Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act (TRACED Act)*, EB Docket No. 20-22, Report and Order, DA 22-870 (EB 2022) (*2022 Consortium Selection Order*).  *See also* TRACED Act § 13(d).

[7] *See, e.g.*, Letter from Rosemary Harold, Chief, FCC Enforcement Bureau, to Omar Luna, CEO, R Squared Telecom LLC (Apr. 13, 2021); Letter from Rosemary Harold, Chief, FCC Enforcement Bureau, to Vitaly Potapov, CEO, RSCom LTD (Mar. 17, 2021); *see also* 47 CFR § 64.1200(k)(4).  In the circumstances set forth in these cease-and-desist letters, we construe "effective mitigation measures" to mean taking all action necessary to cease carrying any such illegal traffic.  *See Robocall Enforcement Notice to All U.S.-Based Voice Service Providers*, Public Notice, DA 22-1182 (Nov. 10, 2022) (*Notice*).

[8] *See* 47 CFR § 64.6305(e) (stating that intermediate providers and terminating voice service providers may only accept calls from an originating voice service provider whose filing appears in the Robocall Mitigation Database); *Call Authentication Trust Anchor*, WC Docket No. 17-97, Second Report and Order, 36 FCC Rcd 1859, 1902-03, paras. 82-83 (2020) (allowing the Enforcement Bureau to remove deficient originating or terminating voice service provider certifications from the Robocall Mitigation Database).  *See also Advanced Methods to Target and Eliminate Unlawful Robocalls, Call Authentication Trust Anchor*, CG Docket No. 17-59, WC Docket No. 17-97, Sixth Report and Order in CG Docket No. 17-59, Fifth Report and Order in WC Docket No. 17-97, Order on Reconsideration in WC Docket No. 17-97, Order, Seventh Further Notice of Proposed Rulemaking in CG Docket No. 17-59, and Fifth Further Notice of Proposed Rulemaking in WC Docket No. 17-97, FCC 22-37, paras. 35 & 40 (2022) (*Gateway Provider Order*) (extending the requirement to submit certifications to the Robocall Mitigation Database to gateway providers).  The Further Notice of Proposed Rulemaking adopted with the *Gateway Provider Order* contemplates further extending the Robocall Mitigation Database requirements to all domestic providers.  *Gateway Provider Order* at para. 188.

[9] *See Notice* at 1.

[10] *See id.*; 47 CFR § 64.1200(k)(4).

2

effectively mitigate illegal traffic,' including investigating and taking steps—up to and including blocking, if necessary—to prevent the source of the illegal traffic from continuing to originate such traffic."[11]

4.       Urth Access failed to respond to the cease-and-desist letter.  Accordingly, the Bureau issues this *Order* to provide all U.S.-based voice service providers with actual written notice of suspected illegal robocall traffic and directs them to comply with section 64.1200(n)(2) of the Commission's rules.[12]

## II.       NOTIFICATION AND ORDER

5.       As required by section 64.1200(n)(2) of the Commission's rules, the Bureau is providing certain notice and identifying information to voice service providers so that they may locate any of the suspected illegal traffic in their records or on their networks, and take effective steps to mitigate it. Specifically, the Bureau must:  (1) identify with as much particularity as possible the suspected traffic; (2) provide the basis for the Enforcement Bureau's reasonable belief that the identified traffic is unlawful; (3) cite the statutory or regulatory provisions the suspected traffic appears to violate; and (4) direct the voice service providers that they must comply with the requirements of that rule section.[13]

6.       After notification, the voice service provider is required to do all of the following:

(1) promptly investigate the identified traffic;

(2) promptly report the results of its investigation to the Enforcement Bureau, including:

(a) any steps the provider has taken to effectively mitigate the identified traffic; or

(b) an explanation as to why the provider has reasonably concluded that the identified calls were not illegal, and what steps it took to reach that conclusion.[14]

Moreover, the rule requires that "should the notified provider find that the traffic comes from an upstream provider with direct access to the U.S. Public Switched Telephone Network, that provider must promptly inform the Enforcement Bureau of the source of the traffic and, if possible, take steps to mitigate this traffic."[15]

### A.       Notification of Suspected Illegal Robocall Traffic

#### 1.       Persons and Entities Originating the Suspected Illegal Robocall Traffic

7.       For the purposes of assisting voice service providers with identifying suspected illegal robocall traffic, and avoiding carrying suspected illegal robocall traffic in the future, the Bureau provides the following information about individuals and entities associated with the Student Loan Robocall Operation below.  The individuals listed include officers, principals, and other key players in Student Loan Robocall Operation and the entities involved with that operation.[16]

---

[11] *See Notice* at 4 (citing 47 CFR § 64.1200(n)(2)).

[12] 47 CFR § 64.1200(n)(2).

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] We encourage voice service providers to perform due diligence when evaluating mitigation options.

| Individuals: | Companies: |
|---|---|
| **Fawaz Saleem**, resident of Loma Linda, California | **Urth Access, LLC** (CEO) |
| **Catherine McCormick** | **Urth Access, LLC** (Employee or Agent)**; Global Lynks LLC** (CEO)**; Fire Data LLC** (Incorporator and Administrator)**; US Acquisitions, LLC** (Agent) |
| **Amir Nathan Dawood**, resident of Irvine, California | **US Acquisitions, LLC** (Manager and Member)**; Dawood & Dawood** (Member)**; Dawood and Company** (Officer, Director and Agent) |
| **Chad Smanjak**, resident of Newport Beach, California | **SMAC Digital Inc** |

8.      It appears that the Student Loan Robocall Operation is responsible for making millions of student loan-related robocalls.[17]  The Student Loan Robocall Operation used Urth Access to originate these calls.  Individuals associated with the Student Loan Robocall Operation are closely intertwined with the operation of Urth Access.  In particular, the same people who purport to be customers of Urth Access are also affiliated with Urth Access.  These individuals registered Urth Access "customer" websites with the same domain registrar and are associated with Urth Access.[18]

9.      Catherine McCormick is the incorporator and administrator for Fire Data LLC, formerly Sales Data Pro LLC, which registered at least one of Urth Access's customer websites.[19]  She also paid for several other domains linked to Urth Access customers.[20]  Additionally, Catherine McCormick is the chief executive officer and incorporator of Global Lynks LLC.[21]  The Bureau sent a cease-and-desist letter to Global Lynks LLC on July 7, 2022, for its role in originating auto warranty robocalls.[22]  We also ordered all U.S.-based voice service providers to mitigate (including by blocking, if necessary) traffic from Global Lynks LLC for its failure to respond to that letter.[23]  Subsequent to that *Order*, Catherine McCormick (via Global Lynks LLC) continued to receive number resources from an intermediate provider to use for Urth Access's calls.

10.      Furthermore, Catherine McCormick appears to be an employee or agent of Amir Nathan Dawood (Nathan Dawood) and his companies:  (1) Dawood & Dawood; (2) Dawood and Company; and (3) US Acquisitions, LLC.  Nathan Dawood previously held a 51 percent interest in a telecom company,

---

[17] It appears that many of the individuals and entities also are responsible for making auto warranty and health insurance telemarketing calls.

[18] Namecheap Subpoena Response on file at EB-TCD-22-00034232 (Oct. 19, 2022).

[19] Articles of Incorporation, Sales Data Pro LLC, Cal. Sec'y of State (Apr. 28, 2021); Amendment to Articles of Organization of a Limited Liability Company, Sales Data Pro LLC, Cal. Sec'y of State (Nov. 22, 2021).

[20] Namecheap Subpoena Response on file at EB-TCD-22-00034232 (Oct. 19, 2022).

[21] Global Lynks LLC Form 499, FCC (Apr. 1, 2022); Articles of Incorporation, Global Lynks LLC, Cal. Sec'y of State (Apr. 22, 2021).

[22] Letter from Loyaan A. Egal, Chief, FCC Enforcement Bureau, to Catherine McCormick, CEO, Global Lynks LLC (July 7, 2022).

[23] *FCC Enforcement Bureau Warns All U.S.-Based Voice Service Providers to Avoid or Cease Carriage of Auto Warranty Robocall Traffic from Cox/Jones/Sumco Panama Operation*, Order, DA 22-784 at 6 (EB 2022).

Whisl Telecom LLC, which he sold on May 9, 2022.[24]  Whisl Telecom LLC is also the immediate downstream provider for Urth Access.[25]  Catherine McCormick registered Urth Access's customer websites with physical addresses and phone numbers associated with Nathan Dawood or his companies.[26]  Catherine McCormick's companies, Global Lynks LLC and Fire Data LLC, share the same address as Nathan Dawood.  Moreover, these companies and individuals share the same postal addresses as Urth Access.[27]  The addresses are the following:

- 500 N. State College Blvd., Suite 1100, Orange, CA 92868;

- 2901 W. Coast Highway Suite 200, Newport Beach, CA 92663; and

- P.O. Box 393 Irvine, CA 92650.

11.    Lastly, the Bureau identified SMAC Digital Inc and its chief executive officer, Chad Smanjak,[28] as part of the Student Loan Robocall Operation.  SMAC Digital Inc is a lead generation and marketing company that provides call center outsourcing solutions incorporated in California.[29]  It has registered hundreds of domains related to health insurance, auto warranty, and debt reduction telemarketing calls similar to ones Urth Access serviced.[30]  Urth Access listed one of these domains as a customer.

## 2.    Characteristics of the Suspected Illegal Robocall Traffic

12.    The Student Loan Robocall Operation appears to be responsible for making approximately 40 percent of all student loan robocalls reaching consumers in October 2022.[31]  On August 24, 2022, President Biden announced student loan forgiveness for millions of Americans and an extension of the loan forbearance period through December 31, 2022.[32]  News reports and consumer complaints

---

[24] *See* iQSTEL Inc., Securities & Exchange Comm'n Current Report (SEC Form 8-K) (May 9, 2022), *available at* https://sec.report/Document/0001663577-22-000279/ (reporting that iQSTEL Inc. bought Nathan Dawood's interest in Whisl Telecom LLC).

[25] Traceback Consortium Subpoena Response on file at EB-TCD-22-00034232 (Oct. 25, 2022); Traceback Consortium Subpoena Response on file at EB-TCD-22-00034232 (Oct. 3, 2022).

[26] Namecheap Subpoena Response on file at EB-TCD-22-00034232 (Oct. 19, 2022).

[27] *See* Statement of Information, Global Lynks LLC, Cal. Sec'y of State (June 13, 2022); Articles of Incorporation, Urth Access, Wyo. Sec'y of State (Jan. 13, 2022); Statement of Information, Fire Data LLC, Cal. Sec'y of State (Dec. 29, 2021); Statement of Information, Dawood & Company, Cal. Sec'y of State (Oct. 26, 2021); Statement of Information, US Acquisitions LLC, Cal. Sec'y of State (Sept. 8, 2021); Contact Us, Dawood & Dawood, http://dawoodanddawood.com/contact/ (last visited Nov. 2, 2022).

[28] The California Attorney General indicted Mr. Smanjak's ex-wife, Angela Kathryn Mirabella for fraud related to student loan call centers in September 2021.  *See* Indictment, California v. Angela Kathryn Mirabella et al., Case No. 21ZF0019 (Cal. Sup. Ct. 2021); *see also* Leila Miller, *State announces charges in alleged student loan debt relief scam with more than 19,000 victim*, L.A. Times (Sept. 21, 2021), https://www.latimes.com/california/story/2021-09-21/la-me-attorney-general-student-debt-relief-fraud.

[29] Articles of Incorporation, SMAC Digital Inc, Cal. Sec'y of State (Apr. 17, 2019); *Services*, SMAC Digital, https://www.smacdigital.com/service (last visited Oct. 27, 2022); *Call Center Outsourcing*, SMAC Digital, https://smac-digital.com/smac-digital-call-center-solutions/ (last visited Oct. 28, 2022).

[30] Namecheap Subpoena Response on file at EB-TCD-22-00034232 (Oct. 19, 2022).

[31] *See* YouMail Student Loan Update on file at EB-TCD-22-00034232 (Nov. 1, 2022).

[32] *See* Fact Sheet, The White House, President Biden Announces Student Loan Relief for Borrowers Who Need it Most (Aug. 24, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/08/24/fact-sheet-president-biden-announces-student-loan-relief-for-borrowers-who-need-it-most/; *see also* Press Release, U.S. Dep't of Education, Biden-Harris Administration Announces Final Student Loan Pause Extension Through December 31 and Targeted Debt Cancellation to Smooth Transition to Repayment (Aug. 24, 2022),

(continued....)

show that there has been an increase in scams regarding student loans since that announcement.[33]  Using data from YouMail, a call blocking application available to wireless subscribers, the Bureau identified two robocall campaigns and requested the Traceback Consortium to trace the origination of calls identified by YouMail.[34]  The Traceback Consortium identified Urth Access as the originator for nearly all of the identified calls.

13.     The Student Loan Robocall Operation apparently made these prerecorded voice message calls without consent of the called parties and absent an emergency purpose, in violation of section 227(b) of the Telephone Consumer Protection Act (TCPA) and section 64.1200 of the Commission's rules.[35]  The robocalls include prerecorded messages informing consumers that they need to verify their income by "press[ing] 5" in order to receive loan dismissal.  For example, some of the robocalls contained the following message:

> Hello this is to inform you that the Student Loan payment suspension has been extended to December 31 of this year. Also, everyone is now going to get $10,000 dismissed upon income verification. If you do not verify your income, on January 1, your payments will start back up automatically. To receive the full dismissal, not just the $10,000 dismissal, a petition will be filed in your behalf so that your loan payments do not begin on January 1. If you're being serviced by Nelnet, Navient, Fed loans or Great Lakes, please press 5 on your phone now. If your servicer was not listed, you can also receive a dismissal by pressing 5. If you have verified your income and received your partial or full dismissal already, please press 9 to stop your notifications. Thank you.[36]

14.     The calls involved student loan services.  Although Urth Access told the Traceback Consortium that the calling parties were "GoHealth" or "Get Your Health Now," which sound as if they provide health care services,[37] every recording that the Bureau reviewed involved student loan services, and did not discuss health care.[38]  The Bureau sent a subpoena on October 13, 2022, to Urth Access for additional information about its customers and the calls, but Urth Access did not respond to our

---

(Continued from previous page) ⸻
https://www.ed.gov/news/press-releases/biden-harris-administration-announces-final-student-loan-pause-extension-through-december-31-and-targeted-debt-cancellation-smooth-transition-repayment.

[33] *See* Sequoia Carrillo, *Waiting for Student Loan Forgiveness, Borrowers Are Targets For Scammers*, NPR (Sept. 19, 2022), https://www.npr.org/2022/09/19/1123488226/waiting-for-loan-forgiveness-borrowers-are-targets-for-scammers.

[34] The evidence thus suggests that a large portion, if not all, of the calls went to mobile telephones. The November 10, 2022 cease-and-desist letter to Urth Access, LLC listed these calls.  *See* Letter from Loyaan A. Egal, Chief, FCC Enforcement Bureau, to Fawaz Saleem, CEO, Urth Access, LLC (Nov. 10, 2022).  The Bureau also identified two other student loan campaigns active in August 2022 that originated from Urth Access, LLC.  Traceback Consortium Subpoena Response on file at EB-TCD-22-00034232 (Oct. 1, 2022).

[35] Telephone Consumer Protection Act of 1991, 1991 Enacted S. 1462, 102 Enacted S. 1462, 105 Stat. 2394; 47 U.S.C. § 227(b); 47 CFR § 64.1200(a)(2)-(3).

[36] *See* Petition Will be Filed Recording on file at EB-TCD-22-00034232.

[37] The websites for these companies all involve health insurance marketing.  *See generally Home*, Go Health, http://www.gohealth/healthcare (last visited Nov. 15, 2022); *Welcome to GetYourHealth Now*, GetYourHealth Now, http://www.getyourhealth-now.healthcare (last visited Nov. 15, 2022).

[38] These services often involve assistance with filing paperwork for a fee.  *Avoiding Student Loan Scams*, U.S. Dep't of Education, Federal Student Aid, https://studentaid.gov/resources/scams (last visited Nov. 15, 2022).  Some of these services are fraudulent schemes to steal personal information or money.  Ann Carrns, *Beware of Scammers Trying to Capitalize on Student Loan Forgiveness* (Sept. 2, 2022), https://www.nytimes.com/2022/09/02/your-money/spam-calls-student-loans.html.

subpoena.[39]  The cease-and-desist letter afforded Urth Access another opportunity to clarify its customers' behavior; yet Urth Access also failed to respond to that letter.  In light of the evidence in the record, we conclude that the Student Loan Robocall Operation apparently originated student loan robocalls, and that the calls were unlawful.

15.     The Student Loan Robocall Operation did not receive adequate consent of the called parties for its robocalls.  Urth Access claimed, in a response to the Traceback Consortium, that its customers had properly obtained the called parties' consent for the robocalls.[40]  Urth Access provided the Traceback Consortium "consent logs" that included website addresses that allegedly captured the called party's consent.[41]  But none of these websites through which the Student Loan Robocall Operation allegedly captured "consent" appear to have any connection with student loan assistance.  At best, they arguably represent consent to receive robocalls about health insurance products/services.  Moreover, the Student Loan Robocall Operation was advised that these student loan robocalls were not related to health insurance.[42]

16.     In addition, the consent logs apparently fail to provide adequate disclosure that would constitute effective consent as required by the FCC's rules.  For example, for telemarketing calls, the Commission requires the caller to provide a "clear and conspicuous disclosure" when obtaining prior express written consent.[43]  The websites included TCPA consent disclosures whereby the consumer agreed to receive robocalls from "marketing partners."  These "marketing partners" would only be visible to the consumer if the consumer clicked on a specific hyperlink to a second website that contained the names of each of 5,329 entities.[44]  We find that listing more than 5,000 "marketing partners" on a secondary website is not sufficient to demonstrate that the called parties consented to the calls from any one of these "marketing partners."  Consequently, because:  (1) the websites that Urth Access has thus far referenced do not seek or obtain consent to receive robocalls about student loans; (2) the consent was accessible only if the consumer clicked on a hyperlink and reviewed a second webpage; and (3) the second webpage listed 5,329 ostensible "marketing partners," we conclude that the Student Loan Robocall Operation apparently lacked consent for the robocalls it made to consumers.[45]  We direct voice service providers to Attachment A of this *Order*, which contains examples of traceback data (from October 2022 to the present) of suspected illegal robocalls made by the Student Loan Robocall Operation, for further and more detailed specifics of the suspected illegal traffic.[46]

     **B.     Order to Investigate, Mitigate, and Report**

17.     *Investigate and Mitigate.*  By this *Order,* the Bureau directs all U.S.-based voice service providers to investigate promptly the apparently illegal robocall traffic.  We further direct all voice

---

[39] Commission rules require all originating providers to respond fully and in a timely manner to traceback requests.  47 CFR § 64.1200(n)(1)(i).

[40] Traceback Consortium Subpoena Response on file at EB-TCD-22-00034232 (Oct. 25, 2022).

[41] A consent log includes identifying information about a consumer such as name, telephone number, and address that the consumer allegedly entered into an online form consenting to receive robocalls.

[42] The Traceback Consortium notices informed Urth Access that the calls involved student loans.  Traceback Consortium Subpoena Response on file at EB-TCD-22-00034232 (Oct. 25, 2022).

[43] 47 CFR § 64.1200(f)(9)*; Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830, 1844, para. 33 (2012).

[44] Marketing Partners, http://marketingpartners.business (last visited Oct. 27, 2022).

[45] The Commission's rules provide that, to be "clear and conspicuous," the disclosure must inform consumers that they will "receive future calls that deliver prerecorded messages by or on behalf of a specific seller."  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd at 1844, para. 33.

[46] *See* Attachment A.

service providers that locate any of the apparently illegal robocall traffic described in this *Order* to take immediate steps to effectively mitigate and prevent further transmission of the apparently unlawful calls.[47]

18.     *Partial Waiver of Reporting Obligation.*  Pursuant to section 1.3 of the Commission's rules,[48] the Bureau finds that good cause exists in this instance to waive in part the reporting obligations otherwise required by section 64.1200(n)(2) of the rules.  In particular, the Bureau concludes that obligating all U.S.-based voice service providers to generate a written report documenting their investigation of the suspected illegal robocall traffic identified in this *Order* would result in an excessively voluminous record, given the millions of calls at issue.  Accordingly, a voice service provider shall not be required to file a report with the Commission if it terminates a customer relationship with the Student Loan Robocall Operation or blocks all traffic from Urth Access.[49]  **However, if any voice service provider, after investigation of the suspected illegal robocall traffic identified in this *Order,* thereafter does NOT terminate a customer relationship or block the traffic, it will be required to provide a written report to the Bureau with the results of its investigation, as required by section 64.1200(n)(2) of the rules.**  If the voice service provider concludes that the identified traffic was not illegal, the report must include an explanation as to why the provider has reasonably concluded that the identified calls were not illegal and what steps the voice service provider took to reach that conclusion.  If the voice service provider concludes that the traffic is illegal but is unable to effectively mitigate the traffic by terminating the customer relationship or blocking traffic from the Student Loan Robocall Operation identified above, the report must include any alternative steps the voice service provider has taken to effectively mitigate that traffic, and identify the source of the traffic should the notified provider find that the traffic comes from an upstream provider with direct access to the U.S. Public Switched Telephone Network.

19.     Any provider filing such a report must do so within two weeks of this *Order* and shall demonstrate its ongoing efforts to mitigate the traffic associated with the Student Loan Robocall Operation.  Reports must be filed electronically by email sent to Kristi Thompson, Division Chief, Enforcement Bureau, Telecommunications Consumers Division, at Kristi.Thompson@fcc.gov; with copies sent to Lisa Zaina, Asst. Chief, Enforcement Bureau, Telecommunications Consumers Division, at Lisa.Zaina@fcc.gov; and Daniel Stepanicich, Enforcement Bureau, Telecommunications Consumers Division, at Daniel.Stepanicich@fcc.gov.  Reports and/or supporting documentation that exceed 5MB must be transmitted by an alternative mechanism; providers must contact Daniel Stepanicich for alternative filing instructions.

---

[47] Our rules define "effectively mitigate" as "identifying the source of the traffic and preventing that source from continuing to originate traffic of the same or similar nature." 47 CFR § 64.1200(f)(18).  As we noted in the *Notice* and in the cease-and-desist letters, we construe this to include taking all actions necessary to cease carrying such illegal traffic.  *See Notice* at p. 4.  For the purposes of effective mitigation when notified by the Bureau of suspected illegal traffic under section 64.1200(n)(2) of the rules, the Commission has advised that such actions may include "ending a customer relationship, limiting access to high-volume origination services, or any other steps that have the effect of stopping this traffic and preventing future, similar traffic."  *See Advanced Methods to Target and Eliminate Unlawful Robocalls*, Fourth Report and Order, 35 FCC Rcd 15221 15231, para. 26 (2020).  The Commission also encouraged downstream voice service providers without a direct relationship with the makers of such calls to block calls from bad-actor providers to the extent permissible under section 64.1200(k)(4) of the rules.  *See id.* at 15230-31, paras. 24, 27.

[48] 47 CFR § 1.3 ("The provisions of this chapter may be suspended, revoked, amended, or waived for good cause shown, in whole or in part, at any time by the Commission, subject to the provisions of the Administrative Procedure Act and the provisions of this chapter.  Any provision of the rules may be waived by the Commission on its own motion or on petition if good cause therefor is shown.").

[49] Because Urth Access has failed to effectively mitigate the illegal traffic within 48 hours, downstream providers may block all of their traffic without liability under the Communications Act or the Commission's rules.  47 CFR § 64.1200(k)(4).

20.    Any questions may be directed to Kristi Thompson, Division Chief, Enforcement Bureau, Telecommunications Consumers Division, at 202-418-1318 or by email at Kristi.Thompson@fcc.gov; Lisa Zaina, Asst. Chief, Enforcement Bureau, Telecommunications Consumers Division, at 202-418-2803 or by email at Lisa.Zaina@fcc.gov; or Daniel Stepanicich, Enforcement Bureau, Telecommunications Consumers Division, at 202-418-7451 or by email at Daniel.Stepanicich@fcc.gov.

FEDERAL COMMUNICATIONS COMMISSION

Loyaan A. Egal
Chief
Enforcement Bureau

Exhibit 10



**ZG¹ ZwillGen** PLLC    1900 M Street, NW • Suite 250 • Washington, D.C. 20036
*(202) 296-3585*

Jacob A. Sommer
(202) 706-5205
jake@zwillgen.com

May 19, 2023

Ethan Preston (263295)
Preston Law Offices
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197
ep@eplaw.us

Re: Subpoena to Industry Traceback Group dated April 19, 2023.

Mr. Preston,

Thank you for the extension of time to May 19, 2023 to provide ITG's responses and objections to your subpoena. The document production is available at this link: https://zwillgen.sharefile.com/d-s4ee419bdb35f48fe9907f63206a4d40b.

ITG is designating all documents produced as confidential under the Protective Order dated December 19, 2022. If you would like to meet and confer about any of these documents, please let me know.

ITG is producing the documents in the format they are maintained in the ordinary course of ITG's business.

ITG's responses are subject to the following objections, and it reserves the right to object to the production of any additional documents in response to this subpoena. Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Industry Traceback Group ("ITG") hereby provides the following responses and objections to the Subpoena Duces Tecum issued by Plaintiff Kelly Pinn, Inc. dated April 19, 2023 ("Subpoena") the document requests included therein ("Request").

<u>Preliminary Statement / General Objections</u>

ITG responds to the Subpoena while reserving the following rights: (i) the right to further object, on the grounds of admissibility, authenticity, competency, confidentiality, materiality, privilege, relevancy, or any other proper grounds, to the use of any documents or information for any purpose in whole or in part, in any subsequent proceeding in this or any other action; (ii) the right to object on any and



1900 M Street, NW • Suite 250 • Washington, D.C. 20036
(202) 296-3585

all grounds, at any time, to other requests or discovery procedures involving or relating to the subject matter of the Subpoena; and (iii) the right at any time to revise, correct, supplement, or clarify any of the responses made herein as required by the Federal Rules of Civil Procedure. Nothing contained in these responses is intended as, or shall in any way be deemed, a waiver of any privilege, protection, or immunity, including without limitation, the attorney-client privilege, the attorney-work product doctrine, the joint defense privilege, and the common interest privilege or any other applicable privilege, protection or immunity afforded by law. ITG's responses and objections are conditioned specifically on the understanding that inadvertent disclosure of privileged or otherwise protected information is not intended to be, and may not be construed as, a waiver of any privilege, protection, immunity or any other ground for objecting to discovery with respect to such request, or the subject matter thereof, or the response thereto. ITG reserves the right to supplement its responses to the Subpoena.

ITG reasonably interprets the Request as not seeking the production of privileged internal communications involving ITG's internal or outside legal counsel or work product privileged documents prepared by or under the supervision of such counsel.  ITG also objects to the Subpoena and the Request contained therein to the extent that they (i) impose upon ITG obligations different from or in excess of those required of third parties by Rule 45 of the Federal Rules of Civil Procedure or other applicable rules or laws; (ii) seek information that constitutes or contains trade secrets or other confidential, research, development, proprietary, or sensitive commercial or private information the disclosure of which would frustrate the expectation of privacy held by ITG or any other person; (iii) call for disclosure of information protected from disclosure by federal and/or state law; (iv) assume the existence of facts that do not exist or the occurrence of events that did not take place; and (v) seek the production of documents that are more appropriately obtained from a party to the litigation.

<u>Specific Responses and Objections</u>

Response to Request No. 1:  Subject to the foregoing objections, ITG is producing documents at the link identified above responsive to Request 1.

Response to Request No. 2:  Subject to the foregoing objections, ITG is producing documents at the link identified above responsive to Request 2.

Response to Request No. 3:  Subject to the foregoing objections, ITG is producing documents at the link identified above responsive to Request 3.

 **ZwillGen** PLLC    1900 M Street, NW • Suite 250 • Washington, D.C. 20036
*(202) 296-3585*

Response to Request No. 4:  Subject to the foregoing objections, ITG represents that other than communications with Plaintiffs' Counsel in this case, it has no documents responsive to this request.

Response to Request No. 5:  Subject to the foregoing objections, ITG has no reason to believe that any documents that might have been responsive to these requests would have been destroyed subject to a document retention policy.

Response to Request No. 6:  Subject to the foregoing objections, ITG is not seeking reimbursement at this time, but reserves the right to seek costs and update this response should it be required to produce additional documents.

Response to Request No. 7:  Apart from the documents produced in response to this request, ITG has no additional documents on which it relies to support the objections set forth above.

ITG reserves all objections to this Subpoena, and by this letter does not waive any objections to the production of data other than the data produced with this letter.

Please let me know if you have any additional questions.

Very truly yours,

Jacob Sommer

Exhibit 11

**TrustedForm**

Back to your account

Certificate of Authenticity for Web Leads

✔ Claimed

| Certificate | Session Replay | Event Log | Claim History |

# Certificate of Authenticity
# for Web Leads

Certificate ID: a94c2fa3027cb2de1136b2c0ac28926b429061a4

This certificate was issued by TrustedForm.com from ActiveProspect, the independent Internet lead certification authority. It certifies the following information about this lead:

## When did they visit?

Visit date:        June 19, 2022

Visit time:        4:19:27 PM CDT

Time on page:      14 seconds

TrustedForm Certificate a94c2fa3027cb2de1136b2c0ac28926b429061a4

https://cert.trustedform.com/a94c2fa3027cb2de1136b2c0ac28926b4290...

8/6/23, 23:44

**TrustedForm**

Back to your account

## Where did they visit?

Page URL:
https://healthinsnow.org/form.html

## Who visited?

Remote IP Address:
69.229.254.230

Geographic Location (Approximate):
Tomball, Texas, United States

Browser:
Chrome 102.0.5005.115

Operating System:
Windows 10

## What did they see?

Trustedform captures a copy of the web page viewed by the visitor and the user events that took place on the page including form inputs, mouse movements and clicks. It plays these events back as a session replay of how the user interacted with the page.

**View Session Replay**

**TrustedForm**

Back to your account

## Consent Language Detected

I agree by providing a mobile telephone number and selecting "Yes", "Confirm", "Contact Me", or a similar affirmation, you agree to our Terms of Service and Privacy Policy (California Residents see CCPA.You also confirm that you are the current owner/subscriber of the mobile telephone number provided or that the current owner/subscriber of this mobile telephone number authorized you to provide this number (collectively, "current owner") to us, even if it is currently listed on any state, federal or corporate Do Not Call list. You understand that by providing this mobile telephone number, the current owner consents to be contacted by us, our vendors and our Marketing Partners with marketing offers and services of any type at the mobile number provided, without limitation, restriction or reservation, notwithstanding the provisions contained in the Telephone Consumer Protection Act (47 U.S. Code § 227) and all amendments and interpretations of the same by any court of competent jurisdiction. Although we try to limit offers from categories you have shown an interest, you hereby authorize us to contact you with offers based on information we continue to gather from you from all available sources irrespective of the subject matter. In this regard, you agree that we may contact you using auto dialer technology for the purpose of calling, sending text alerts, artificial voice and/or pre-recorded voice messages. Text messages may be sent 24/7, but auto dialer calls will be made between the hours of 8 a.m. and 9 p.m. local time. The current owner understands that consent to receive these communications is not a condition of any purchase. Wireless and text message fees may apply wherever applicable. You can opt out of these communications at any time by emailing us. Any attempt by the current owner to claim that this consent should be unenforceable or is otherwise ambiguous shall be deemed made in bad faith because it can be cancelled at any time (although I understand that the indemnification provisions contained below shall survive cancellation). The current owner hereby indemnifies and holds us and our Marketing Partners , harmless from any and all liability that we and/or our Marketing Partners sustain as a result of our reliance upon your consent, including but not limited to attorney's fees and costs for defending claims and/or controversies regarding the same, as all such parties shall be deemed third-party beneficiaries to the this consent agreement.

Show Less

© Copyright 2010-2022 ActiveProspect, Inc. All rights reserved.

Exhibit 12

# HealthInsNow Plans
# WHEN STANDARD MEDICARE JUST ISN'T ENOUGH COVERAGE!
## Compare Quotes Today!

First Name

Last Name

Phone Number

☐   I agree by providing a mobile telephone number and selecting "Yes", "Confirm", "Contact Me", or a similar affirmation, you agree to our Terms of Service and Privacy Policy (California Residents see CCPA. You also confirm that you are the current owner/subscriber of the mobile telephone number provided or that the current owner/subscriber of this mobile telephone number authorized you to provide this number (collectively, "current owner") to us, even if it is currently listed on any state, federal or corporate Do Not Call list. You understand that by providing this mobile telephone number, the current owner consents to be contacted by us, our vendors and our Marketing Partners with marketing offers and services of any type at the mobile number provided, without limitation, restriction or reservation, notwithstanding the provisions contained in the Telephone Consumer Protection Act (47 U.S. Code § 227) and all amendments and interpretations of the same by any court of competent jurisdiction. Although we try to limit offers from categories you have shown an interest, you hereby authorize us to contact you with offers based on information we continue to gather from you from all available sources irrespective of the subject matter. In this regard, you agree that we may contact you using auto dialer technology for the purpose of calling, sending text alerts, artificial voice and/or pre-recorded voice messages. Text messages may be sent 24/7, but auto dialer

calls will be made between the hours of 8 a.m. and 9 p.m. local time. The current owner understands that consent to receive these communications is not a condition of any purchase. Wireless and text message fees may apply wherever applicable. You can opt out of these communications at any time by emailing us. Any attempt by the current owner to claim that this consent should be unenforceable or is otherwise ambiguous shall be deemed made in bad faith because it can be cancelled at any time (although I understand that the indemnification provisions contained below shall survive cancellation). The current owner hereby indemnifies and holds us and our Marketing Partners , harmless from any and all liability that we and/or our Marketing Partners sustain as a result of our reliance upon your consent, including but not limited to attorney's fees and costs for defending claims and/or controversies regarding the same, as all such parties shall be deemed third-party beneficiaries to the this consent agreement.

## **COMPARE QUOTES**

Home | Terms of  Service | Privacy Policy | Marketing Partners

Exhibit 13

activeprospect | TrustedForm

Certificate  Session Replay  Event Log  Claim History

Back to your acc...

0:00 / 0:14

SKIP INACTIVITY

# HealthInsNow Plans
# WHEN STANDARD
# MEDICARE JUST ISN'T
# ENOUGH COVERAGE!

## Compare Quotes Today!

First Name

Last Name

Phone Number

☐  I agree by providing a mobile telephone number and selecting "Yes",
"Confirm", "Contact Me", or a similar affirmation, you agree to our Terms of
Service and Privacy Policy (California Residents see CCPA).You also confirm
that you are the current owner/subscriber of the mobile telephone number



☐ I agree by providing a mobile telephone number and selecting "Yes", "Confirm", "Contact Me", or a similar affirmation, you agree to our Terms of Service and Privacy Policy (California Residents see CCPA.You also confirm that you are the current owner/subscriber of the mobile telephone number provided or that the current owner/subscriber of this mobile telephone number authorized you to provide this number (collectively, "current owner") to us, even if it is currently listed on any state, federal or corporate Do Not Call list. You understand that by providing this mobile telephone number, the current owner consents to be contacted by us, our vendors and our Marketing Partners with marketing offers and services of any type at the mobile number provided, without limitation, restriction or reservation notwithstanding the provisions contained in the Telephone Consumer Protection Act (47 U.S. Code § 227) and all amendments and interpretations of the same by any court of competent jurisdiction. Although we try to limit offers from categories you have shown an interest, you hereby authorize us to contact you with offers based on information we continue to gather from you from all available sources irrespective of the subject matter. In this regard, you agree that we may contact you using auto dialer technology for the purpose of calling, sending text alerts, artificial voice and/or pre-recorded voice messages. Text messages may be sent 24/7, but auto dialer calls will be made between the hours of 8 a.m. and 9 p.m. local time. The current owner understands that consent to receive these communications is not a condition of any purchase. Wireless and text message fees may apply wherever applicable. You can opt out of these communications at any time by emailing us. Any attempt by the current owner to claim that this consent should be unenforceable or is otherwise ambiguous shall be deemed made in bad faith because it can be cancelled at any time (although I understand that the indemnification provisions contained below shall survive cancellation). The current owner hereby indemnifies and holds us and our Marketing Partners , harmless from any and all liability that we and/or our Marketing Partners sustain as a result of our reliance upon your consent, including but not limited to attorney's fees and costs for defending claims and/or controversies regarding the same, as all such parties shall be deemed third-party beneficiaries to the this consent agreement.

SKIP INACTIVITY

Exhibit 14

ANDRÉ BIROTTE JR.
United States Attorney
ROBERT DUGDALE
Assistant United States Attorney
Chief, Criminal Division
ANDREW STOLPER (Cal. Bar No. 205462)
Assistant United States Attorneys
    411 West Fourth Street
    Santa Ana, California 92701
    Telephone: (714) 338-3536
    Facsimile: (714) 338-3708
    E-mail:   andrew.stolper@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          ) SA CR No. 10-215
                                   )
                Plaintiff,         ) PLEA AGREEMENT FOR DEFENDANT
                                   ) CHAD SMANJAK
            v.                     )
                                   )
CHAD SMANJAK,                      )
                                   )
                Defendant.         )
                                   )
_____)

    1.   This constitutes the plea agreement between Chad Smanjak

("defendant") and the United States Attorney's Office for the

Central District of California ("the USAO") in the above-

captioned case as well as the investigation of defendant for

securities fraud.  This agreement is limited to the USAO and

cannot bind any other federal, state, local, or foreign

prosecuting, enforcement, administrative, or regulatory

authorities.

                    DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:



1 release in another case and suspension or revocation of a
2 professional license. Defendant understands that unanticipated
3 collateral consequences will not serve as grounds to withdraw
4 defendant's guilty plea.

5     13. Defendant understands that, if defendant is not a
6 United States citizen, the felony conviction in this case may
7 subject defendant to: removal, also known as deportation, which
8 may, under some circumstances, be mandatory; denial of
9 citizenship; and denial of admission to the United States in the
10 future. The court cannot, and defendant's attorney also may not
11 be able to, advise defendant fully regarding the immigration
12 consequences of the felony conviction in this case. Defendant
13 understands that unexpected immigration consequences will not
14 serve as grounds to withdraw defendant's guilty plea.

15 FACTUAL BASIS

16     14. Defendant admits that defendant is, in fact, guilty of
17 the offense to which defendant is agreeing to plead guilty.
18 Defendant and the USAO agree to the statement of facts provided
19 below and agree that this statement of facts is sufficient to
20 support a plea of guilty to the charge described in this
21 agreement and to establish the Sentencing Guidelines factors set
22 forth in paragraph 16 below but is not meant to be, and is not, a
23 complete recitation of all facts relevant to the underlying
24 criminal conduct or all facts known to either party that relate
25 to that conduct.

26     Beginning in approximately 2007 and continuing until at
27 least 2010, defendant and his co-conspirators knowingly engaged
28 in a number of "pump and dump" securities fraud schemes.

11

1  Defendant and his co-conspirators obtained shares in companies
2  that were thinly traded on the "pink sheets."  Then, they
3  knowingly engaged in a variety of fraudulent devices to
4  artificially increase the volume and price of these shares (the
5  "pump") so that they could later "dump" those shares in the
6  market.  These fraudulent devices included false press releases
7  and matched trading — both intended to fraudulently increase the
8  value of the shares they were "pumping."  Defendant and his co-
9  conspirators later "dumped" these shares by selling through
10 various national stock exchanges utilizing the instrumentalities
11 of interstate commerce, include the telephone and the internet to
12 over 250 victims.
13      Beginning not later than 2008, defendant formed a criminal
14 partnership with A.B.  A.B. was more experienced at securities
15 fraud than defendant.  Defendant and A.B. agreed to share in the
16 proceeds of the various stock frauds in which they were
17 participating.  Certain deals were managed by defendant; others
18 by A.B.  Regardless of who was managing the deals, defendant and
19 A.B. agreed to share in the proceeds equally on the deals.  In
20 2008, A.B. introduced defendant to J.S.  J.S. served as A.B.'s
21 money launderer.  A.B. and J.S. explained that J.S. would set up
22 sham corporations in foreign jurisdictions to serve as a front
23 for defendant.  These corporations would engage in all the
24 fraudulent securities transactions on behalf of defendant and
25 receive the proceeds from those activities.  A.B. explained that
26 because J.S. was an attorney the arrangement was totally
27 confidential and assured defendant and A.B. that they would not
28 be linked to the fraud in which they were engaging.  Defendant

12

agreed to follow A.B.'s lead and engaged J.S. to set up sham
foreign corporations to conceal the proceeds of his fraudulent
activities.

Defendant, working with his co-conspirators, including A.B.,
engaged in pump and dumps for at least the following companies:
Hemis Corporation (ticker: HMSO); Shot Pak (ticker: SHTP); Tecton
Corporation (ticker: TTNC); Wave Uranium (ticker: WAVE); Mass
Petroleum (ticker: MASP); Dana Resources (ticker: DANR); Rudy
Nutrition (ticker: RUNU); One World Ventures (ticker: OWVI); and
Bonanza Oil and Gas (ticker: BGOI).

On March 29, 2010, defendant was telephoned at his office by
an IRS-CID agent and informed that there was a search warrant
being executed at his residence. In furtherance of the above-
described conspiracy, defendant hid a laptop computer that
contained evidence of the above-described conspiracy.

As a result of defendant's and his co-conspirators
securities fraud, investors incurred a loss of more than $5
million.

SENTENCING FACTORS

15. Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable
Sentencing Guidelines range and to consider that range, possible
departures under the Sentencing Guidelines, and the other
sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant
understands that the Sentencing Guidelines are advisory only,
that defendant cannot have any expectation of receiving a
sentence within the calculated Sentencing Guidelines range, and
that after considering the Sentencing Guidelines and the other

13

1  into unless in a writing signed by all parties or on the record

2  in court.

3             PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4      31.  The parties agree that this agreement will be

5  considered part of the record of defendant's guilty plea hearing

6  as if the entire agreement had been read into the record of the

7  proceeding.

8  AGREED AND ACCEPTED

9  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

   ANDRÉ BIROTTE JR.
11 United States Attorney

12

13                                          8-1-12

14 ANDREW STOLPER                  Date
   Assistant United States Attorney

15

16                                          12 JUNE 2012.
                                     Date
17 CHAD SMANJAK
   Defendant

18

19
                                     Date
20 LAWRENCE FELD
   Attorney for Defendant
   CHAD SMANJAK

21

22

23

24

25

26

27

28

                          21

1  into unless in a writing signed by all parties or on the record
2  in court.

3       PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4       31.  The parties agree that this agreement will be
5  considered part of the record of defendant's guilty plea hearing
6  as if the entire agreement had been read into the record of the
7  proceeding.

8  AGREED AND ACCEPTED

9  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA
10
   ANDRÉ BIROTTE JR.
11 United States Attorney

12

13 _____        _____
   ANDREW STOLPER                          Date
14 Assistant United States Attorney

15

16 _____        _____
   CHAD SMANJAK                            Date
17 Defendant

18

19 _____        June 29, 2012
   LAWRENCE FELD                           _____
20 Attorney for Defendant                  Date
   CHAD SMANJAK
21

22

23

24

25

26

27

28

                           21

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

CHAD SMANJAK
Defendant

12 June 2012
Date

22



1              <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2       I am the attorney for Chad Smanjak in the United States. Mr.

3  Smanjak has resided in the Republic of South Africa for

4  approximately two years where he has been represented by Marius

5  DuToit, Esq., an attorney in South Africa.  Mr. DuToit and I have

6  thoroughly reviewed and discussed the provisions of this plea

7  agreement, Mr. Smanjak's rights under United States law, possible

8  defenses to the charges against Mr. Smanjak contained in the

9  pending indictment against him in this Court, the applicable

10  provisions of the United States Sentencing Guidelines and the

11  consequences of entering into this plea agreement.  Mr. DuToit

12  has informed Mr. Smanjak of our discussions and communications

13  regarding these matters, and I believe, based on my discussions

14  with Mr. DuToit, that Mr. Smanjak fully understands them.  To my

15  knowledge: no promises, inducements, or representations of any

16  kind have been made to my client other than those contained in

17  this agreement; no one has threatened or forced my client in any

18  way to enter into this agreement; my client's decision to enter

19  into this agreement is an informed and voluntary one; and the

20  factual basis set forth in this agreement is sufficient to

21  support my client's entry of a guilty plea pursuant to this

22  agreement.

23

24  _____      June 29, 2012

25  LAWRENCE FELD                      Date
       Attorney for Defendant
       CHAD SMANJAK

26

27

28

Exhibit 15

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California ▾

| | |
|---|---|
| KELLY PINN, | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 4:22-cv-04048-DMR |
| CONSUMER CREDIT COUNSELING | ) |
| FOUNDATION, INC., at al | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:         Active Prospect Inc., 4009 Marathon Boulevard, Austin, Texas 78756
              c/o Steven M. Rafferty, 3612 Bonnie Road, Austin, Texas 78703

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached production schedule

| Place: Sparre Process Serving, LLC | Date and Time: |
|---|---|
| 500 East 4th Street, Suite 143 | |
| Austin, Texas 78701 | 01/02/2023 3:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    12/12/2022

| CLERK OF COURT | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiff Kelly Pinn
_____ , who issues or requests this subpoena, are:

Ethan Preston, Preston Law Offices, 4054 McKinney Avenue, Ste 310, Dallas, TX 75204, (972) 564-8340, ep@eplaw.us

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:22-cv-04048-DMR

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)*                       .

☐ I served the subpoena by delivering a copy to the named person as follows:

_____                  on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
   **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
   **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify a subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
   **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
   **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Kelly Pinn, on her own behalf,
and on behalf of all others similarly situated*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONSUMER CREDIT COUNSELING FOUNDATION, INC., NATIONAL BUDGET PLANNERS OF SOUTH FLORIDA, INC., Florida corporations, and ISHWINDER JUDGE, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | **PRESERVATION INSTRUCTIONS AND PRODUCTION SCHEDULE FOR SUBPOENA TO ACTIVE PROSPECT INC.**<br><br>No. 4:22-cv-04048-DMR |

**PRESERVATION AND PRODUCTION INSTRUCTIONS**

The attached subpoena places Active Prospect Inc. ("Active Prospect") on notice that it has a duty to preserve evidence relevant to the above-captioned case, including in particular all verification records, reference keys, and other documents related to https://healthinstantly.org/ and the entity responsible for the content at https://healthinstantly.org, the entity associated with the TrustedForm Link (defined below), Digital Media Solutions, LLC, and their agents, partners, attorneys, servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of them. Contact the counsel identified above if there are any questions about the subpoena or your obligations thereto. Failure to obey a subpoena could render Active Prospect liable to sanctions for contempt of court. *See* Fed. R. Civ. P. 45(e). Federal law provides criminal penalties for any person who "corruptly ... obstructs, or impedes, or endeavors to influence, obstruct, or impede,

the due administration of justice[.]" 18 U.S.C. § 1503(a). See also 18 U.S.C. § 401(3) (court may punish "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command" by "fine or imprisonment, or both, at its discretion"). Contact the counsel identified above if there are any questions about the subpoena or your obligations thereto.

The duty to preserve created by a subpoena extends to documents and other evidence within Active Prospect's "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(iii). Active Prospect has "control" over evidence or documents where it has the right to obtain the documents upon demand.

It is likely that most of the documents requested in this subpoena are electronic. Effective preservation of documents requires you to identify and inventory the physical media where requested electronic documents may be found. Such physical media can take any number of forms, and the following list is provided for illustrative purposes: (1) hard drives attached to personal computers, laptops, and servers; (2) external, networked or detached drives; (3) archive or backup tapes; (4) portable drives (Flash USB drives and external hard drives connected via USB or FireWire); (5) optical media (i.e., CDs and DVDs); (6) floppy discs; (7) portable devices including wireless devices and other PDAs; and (8) volatile memory (i.e., RAM) of the foregoing devices. Document custodians should be alerted that relevant documents may be found in any of the foregoing media, and that a single item of computer media may contain multiple file systems.

## PRODUCTION SCHEDULE

**Instructions:**

Active Prospect is required to respond to the attached subpoena in a manner that is consistent with Federal Rule 45. The following instructions do not limit the scope of Active Prospect's obligations under the Rule 45, but are merely meant to remind or inform it of these duties and to provide examples of compliance those duties.

### A.    Definitions

With respect to this Subpoena,

1.    The term "TrustedForm Link" means the TrustedForm certificate found at the following link:

> https://cert.trustedform.com/0d459d604c22f30574aab2e51c85d376
> ccbcc518/assets/?shared_token=TlZWWWVVUk9lVWhYT1VFM
> mRrbDFSbG9yYVhZcldVUlhWMnAzTjBReVlYSm9VWGRwU
> 0ZKcWRYYzVNVmx6WkZCNmJFUnpkVlJxT0hwVmVsVTVU
> ekJyVEZka1MxcHRaMVZCY3pOaVZZSnFla3g2V0RoYWNGU
> ktibEk0V21ob1EyWlBRVGhzWkU1dWFqVnRVV2M5TFMxNF
> JFdGlhbG81VEZoVWJubHVWV0pRSzI5aFZEUlJJQVDA9LS0x
> MzJlMGVkZTgwMGZhOGFhZjk0MDJhMGM0NTZmNTNiMW
> M1OGNkMWQ2.

2.    The term "Active Prospect" means Active Prospect, Inc., as well as its principals, agents, partners, attorneys, servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of it, and/or any predecessor, successor, affiliate, subsidiary, parent or related corporation, partnership or entity, and/or anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

3.    The term "Global Lynks" means Global Lynks LLC, the person(s) who operates the https://healthinstantly.org, and/or the person(s) whose website is associated with the TrustedForm Link, as well as their principals, agents, partners, attorneys, servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of it, and/or any predecessor, successor, affiliate, subsidiary, parent or related corporation, partnership or entity, and/or anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

4.    The term "DMS" means Digital Media Solutions, LLC, as well as its principals, agents, partners, attorneys (including partners and employees of Klein Moynihan Turco LLP), servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of it, and/or any predecessor, successor, affiliate, subsidiary, parent or related corporation, partnership or entity, and/or anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

5.    The term "document" means any information that is fixed in a tangible form and stored in a medium from which it can be retrieved and examined. This definition includes, but is not limited to, emails, computer files in every kind and format, as well as writings of every kind, any correspondence, books, records, logs, reports, memoranda, abstracts, advertisements, agreements, appointment records, audio recordings (whether transcribed or not), balance sheets, bills, books of account, certificates, communications, checks, compilations, papers, transcriptions or summaries of conversations, diaries, drafts, disks, notes, notations, plans and specifications, graphs, tapes, slides, computer programs, computer print-outs, entries, estimates, expense records, financial analyses, financial statements, forms, handbooks, telegrams, income statements, indices, intra-office and inter-office communications, invoices, itemizations, journals, letters, meeting reports, minutes, notes, payroll records, photocopies, photographs, press releases, prospectuses, publications, receipts, records of account, reports, resolutions, statements, statistical records, studies, summaries, system analyses, and time records.

6.    The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make requests inclusive rather than exclusive.

7.     The term "concerning" means referring to, describing, evidencing, or constituting.

**B.     Scope**

In Active Prospect's response to the Subpoena, it shall produce (in addition to all documents in its possession or custody) all documents which it has a right to demand. By way of example, but without limitation, it shall produce all responsive documents found in the possession or custody of its agents, partners, attorneys, servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of it, and/or any predecessor, successor, affiliate, subsidiary, parent or related corporation, partnership or entity, and/or anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

**C.     Production of Electronic Documents**

Active Prospect shall produce any electronic documents requested herein in "native format," meaning the format in which they are ordinarily used or accessed by it outside of litigation. Native format explicitly includes application-specific metadata (like File Properties for Active Prospect Word .doc files) and file system metadata (like the date of creation and modification and file permissions stored in an NTFS-formatted file system). In particular, Active Prospect shall produce electronic documents with their original filepath.

File system metadata can be preserved by archiving responsive electronic documents in a .tar or .zip file. These archival formats simplify preservation of time-related metadata. These archival formats can also be used to simplify preservation of file systems' overall directory structure (and thereby responsive documents' filepath) by initially including the file systems' root directory in the archive, and then manually excluding all non-responsive directories and files. If it prefers, Active Prospect may use a .tar or .zip or similar archival file format to produce all responsive documents on a particular file system. (The documents contained within the archive file should still be produced in their native format.)

However, if responsive electronic documents are in a file format that is not accessible by mass-market software, Active Prospect shall translate the file to a format accessible by mass-market software. If possible, the documents should be translated in manner that preserves the

1 original documents' metadata. Typically, data in databases should be produced in plain text (i.e.,

2 ASCII or Unicode) format, with appropriate delimiters to preserve differentiation between

3 different data fields (which may include tabs or commas), and clear identification of such data

4 fields. Please coordinate with Plaintiffs' counsel early on so that the logistics of translating such

5 electronic documents can be worked out in advance of the production deadline. If possible, the

6 documents should be translated in manner that preserves the original documents' metadata.

7 Conversion of documents from other formats to a .tiff or .pdf format is not acceptable for a

8 number of reasons. **DO NOT CONVERT DATA STORED IN A DATABASE TO PDF**

9 **FORMAT OR WE WILL REQUIRE YOU TO REPRODUCE THAT DATA.**

10       There are a variety of ways to authenticate electronic documents. For instance, Active

11 Prospect may wish to assign a Bates number or calculate a hash value for each electronic

12 document produced, or each archival file, or even each CD or hard drive. A hash is a

13 mathematical or cryptographic "signature" of a file, and can be used to authenticate documents

14 with only minimal time and resources. In either event, Active Prospect can ensure the integrity of

15 the electronic documents you produce by including a cryptographic hash value for each

16 document (or each archive). These hash values can be used to label particular productions, and to

17 ensure that the productions are not altered. To the extent Active Prospect requires Bates

18 designations on its production, it should provide an index with the file name, hash value, and

19 Bates designation of each document produced.

20      **D.**    **Manner of Production**

21       Active Prospect shall organize the requested documents either "as they are kept in the

22 ordinary course of business or must organize and label them to correspond to the categories in

23 the demand." Fed. R. Civ. P. 45(d)(1)(A). If Active Prospect does not organize and label

24 produced documents, it must demonstrate that it produced the documents as they are kept in the

25 usual course of business. Active Prospect may be obliged to substantiate that the documents it

26 produces are produced as they are kept in the ordinary course of business.

27       Active Prospect should produce documents on optical media (CDs or DVDs) or on a

28

portable hard drive. Ideally, it should produce documents on read-only optical media (such as CDs or DVDs). Active Prospect should produce documents on properly-formatted hard drive only if production on optical media is impractical (because of storage limitations) or the translation to an optical media file system materially alters documents.

If Active Prospect has paper documents without any electronic originals, those documents should be scanned into a .pdf format in a manner that ensures that they are legible and searchable. Please coordinate with Plaintiff's counsel early on, so that the logistics of scanning such paper documents in can be worked out in advance of the production deadline. For environmental and logistical reasons, documents that cannot be scanned should be produced on paper only as a last resort.

### E.    Objections

Any objections to the Subpoena must conform to Rule 45(c)(2)(B). Any grounds for objection that is not stated in a timely objection are waived. If documents are withheld under a claim of privilege or protection as trial-preparation material, Active Prospect shall make the claim expressly and shall describe the nature of the withheld documents (and, if applicable, the external circumstances which it claims support the application of such privilege) in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the applicability of the privilege or protection. *Cf.* Fed. R. Civ. P. 45(e)(2). A privilege log or equivalent should be prepared with your response to the Subpoena, or an extension should negotiated beforehand.

Defendants or other third parties may serve you with objections to your production in response to this subpoena. These objections do not require or permit Active Prospect to delay your production in response to this subpoena. Defendants and other third parties must file a motion for protective order or a motion to quash the subpoena if they wish to prevent your production, and they have limited standing to do so. *Cf.* Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(d)(3).

This subpoena seeks metadata and other information which do not constitute "contents"

1  of any communication, as that term is used in 18 U.S.C. § 2702.

2  **Schedule of Documents to be Produced by Active Prospect, Inc.**

3   1.   All documents concerning Kelly Pinn and/or her telephone number including any
4        document containing any information associated with the TrustedForm Link, and
         any communication concerning the TrustedForm Link.

5   2.   All documents which may used to authenticate the TrustedForm Link as evidence
6        that Kelly Pinn consented to receive telemarketing calls.

7   3.   All documents necessary and sufficient to identify any Active Prospect employee,
        agent, servant, attorney, officer, or other natural person with personal knowledge
8        that the TrustedForm Link is evidence that Kelly Pinn consented to receive
         telemarketing calls.

9   4.   All documents concerning communications between Active Prospect and Global
10       Lynks since January 1, 2021, including any registration keys and information
         associated with any reference keys.

11  5.   All documents concerning suspicions Active Prospect with respect to Global
        Lynks, including documents concerning Active Prospect's level of confidence
12       that the information collected and associated with Global Lynks was legitimately
13       generated.

14  6.   Any document concerning payment between Active Prospect and Global Lynks
        since January 1, 2021 (including by way of example, but without limitation,
15       invoices, bills, ledgers, credit card receipts, cancelled checks, and/or bank transfer
        records), or documents concerning any financial account used or held by Global
16       Lynks.

17  7.   All documents concerning communications between Active Prospect and DMS
        since January 1, 2021, including all documents concerning reference keys, and
18       information associated with any reference keys.

19  8.   Any document concerning payment between Active Prospect and DMS since
        January 1, 2021 (including by way of example, but without limitation, invoices,
20       bills, ledgers, credit card receipts, cancelled checks, and/or bank transfer records),
        or documents concerning any financial account used or held by DMS.

21  9.   All documents concerning any communication between Active Prospect and any
        other person (besides Plaintiff and her counsel) regarding the case captioned
22       above, *Pinn v. Consumer Credit Counseling Foundation, Inc.*, No. 4:22-cv-
        04048-DMR, pending in the United States District Court for the Northern District
23       of California (including, by way of example but without limitation,
        communications concerning this subpoena, Dawood's response thereto, and the
24       retention and/or production of documents relevant to the case captioned above, as
        well as documents evidencing such communications).

25  10.  All documents concerning any document retention policy under which any
26       document which would be responsive to this subpoena was lost, destroyed,
         delinked, dereferenced, deleted, and/or access to such document was lost.

27
28  11.  To the extent that you intend to charge Plaintiff any cost or expense for

---

Subpoena to Active Prospect Inc.                    7                    No. 4:22-cv-04048-DMR

1    complying with this subpoena, all documents on which you may rely to support
     such cost or expense.

2    12.    To the extent that you object to this subpoena, every document on which you may
            rely to support such objection in any dispute regarding this subpoena
3

     Dated: December 12, 2022         By: _____
4                                          Ethan Preston (263295)
5                                          ep@eplaw.us
                                           PRESTON LAW OFFICES
6                                          4054 McKinney Avenue, Suite 310
                                           Dallas, Texas 75204
7                                          Telephone: (972) 564-8340
                                           Facsimile: (866) 509-1197
8
                                           *Attorneys for Plaintiff Kelly Pinn, on her own*
9                                          *behalf, and behalf of all others similarly situated*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 16

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated, | ) ) ) ) | Case No. 4:22-cv-04048-DMR |
| Plaintiffs, | ) ) | |
| V. | ) ) ) | **NON-PARTY ACTIVEPROSPECT, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SUBPOENA** |
| CONSUMER CREDIT COUNSELING FOUNDATION, INC., NATIONAL BUDGET PLANNERS OF SOUTH FLORIDA, INC., Florida corporations, and ISHWINDER JUDGE, an individual, and DOES 1-10, inclusive, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## NON-PARTY ACTIVEPROSPECT, INC.'S RESPONSE TO PLAINTIFF'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS, OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

Pursuant to Federal Rule of Civil Procedure 45, non-party ActiveProspect, Inc. ("Respondent") hereby submits the following responses and objections to Plaintiff's subpoena dated December 12, 2022 ("Subpoena").

## PRELIMINARY STATEMENT

Respondent is not a party to this action. Plaintiff nevertheless has served on Respondent a subpoena demanding that it undertake a search for and production of documents that, to the extent Plaintiff has any basis to request, Plaintiff should request from the Defendants in this action. Respondent thus objects to the entirety of the Subpoena as overbroad, harassing, and not proportional to the needs of the case.

The following responses are based on Respondent's knowledge, information, and belief at this time and are complete as to Respondent's best knowledge at this time. Furthermore, these responses were prepared based on Respondent's good faith interpretation and understanding of the individual Request for Production included in the Subpoena ("RFP") and are subject to correction for inadvertent errors or omissions, if any. These responses are given without

prejudice to subsequent revisions or supplementation based upon any information, evidence, and documentation that hereafter may be discovered, but Respondent assumes no obligation to supplement or amend voluntarily these responses to reflect information, evidence, documents, or things discovered following service of these responses.

Respondent's responses to this RFP are not intended to be, and shall not be construed as, an agreement or concurrence by Respondent with Plaintiff's characterization of any facts, circumstances, or legal obligations.

## GENERAL OBJECTIONS

1.      Respondent objects that the RFP is vague, ambiguous, uncertain, overbroad, unduly burdensome, not relevant to the parties' claims or defenses, and not proportional to the needs of the case, including because the request is not limited to any timeframe.

2.      Respondent objects to the RFP to the extent that it seeks information that is not relevant to the claims or defenses in this case.

3.      Respondent objects to the RFP to the extent that it is vague, ambiguous, uncertain, or compound and thus would require Respondent to speculate as to its meaning, would not enable Respondent to adequately respond without acting at its peril, or could lead to a confusing, misleading, inaccurate, or incomplete response.

4.      Respondent objects to the RFP and definition to the extent that it is overbroad and unduly burdensome in that it is not reasonably limited in scope or requires Respondent to make an investigation that is not proportional to the needs of this case.

5.      Respondent objects to the RFP to the extent that it seeks information, the disclosure of which would constitute an unwarranted invasion of affected persons' constitutional, statutory, or common-law rights of privacy and confidentiality.

6.      Respondent objects to the RFP to the extent that it seeks information subject to confidentiality agreements, privacy, or other obligations with respect to third parties.  To the extent that Respondent agrees to provide information that is subject to confidentiality agreements, privacy, or other obligations with respect to third parties, Respondent's agreement is subject to its ability to disclose said information in compliance with those obligations.

7.      Respondent objects to the RFP and definition to the extent that it seeks private, privileged, or confidential commercial, financial, or proprietary business information.

8.      Respondent objects to the RFP to the extent that it is speculative, lacks foundation, or improperly assumes the existence of hypothetical facts that are incorrect or unknown to Respondent.

9.      Respondent objects to the RFP to the extent that it seeks information not within Respondent's possession, custody, or control.

10.      Respondent objects to the RFP to the extent that it calls for information or purports to require production of documents that are public, already in Plaintiffs' possession, already identified or to be produced by any party to this action, or otherwise equally or more readily available from public or other sources to which Plaintiffs have equal or equivalent access.

11.      Respondent objects to the RFP to the extent that it seeks privileged information, including but not limited to information protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege and the common interest privilege.  The fact that Respondent does not specifically object to a request on the grounds that it seeks such privileged or protected information or documents shall not be deemed a waiver of the protection

afforded by any applicable privilege or protection.  Any privilege log that Respondent produces will comply with the requirements of Federal Rule of Civil Procedure 26(b)(5)(A)(ii).

12.     Respondent objects to the RFP to the extent that it purports to require the production of information from sources that are not reasonably accessible because of undue burden or cost.

13.     Respondent objects to the RFP to the extent it purports to impose an obligation on Respondent to conduct anything beyond a reasonable and diligent search of readily accessible files and information where such files and information reasonably would be expected to be found.

14.     Any statement in any response to an RFP that Respondent, notwithstanding its objections, will produce documents is not a representation that any such documents exist. Rather, any such statement represents that Respondent, subject to its objections, will undertake to conduct a reasonable search for, and shall produce responsive, non-privileged documents, if any, that are within the scope of Respondent's agreement to produce.

15.     Respondent incorporates its Preliminary Statement into these General Objections and into each specific objection set forth in Respondent's response the RFP below.

16.     Each and every General Objection shall be deemed to be incorporated in full into any individual response below, and all responses are provided subject to and without waiving any of the General Objections or any objection contained in any specific response.  The omission of any General Objection in the specific response to the RFP is not intended to be and should not be construed as a waiver or limitation of any General Objection to any RFP.  Likewise, the inclusion of any specific objection in any specific response to the RFP is not intended to be and should not be construed as a waiver or limitation of any other General Objection or specific objection made herein or that may be asserted at another date.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**
All documents concerning Kelly Pinn and/or her telephone number including any document containing any information associated with the TrustedForm Link, and any communication concerning the TrustedForm Link.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**
Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

> Respondent is unaware of any responsive documents.  ActiveProspect, Inc. does not retain or have access to information containing the personal information of specific individuals or consumers.

**REQUEST FOR PRODUCTION NO. 2:**
All documents which may be used to authenticate the TrustedForm Link as evidence that Kelly Pinn consented to receive telemarketing calls.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**
Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

*See* Declaration of Steven M. Rafferty provided herewith.

**REQUEST FOR PRODUCTION NO. 3:**
All documents necessary and sufficient to identify any ActiveProspect employee, agent, servant, attorney, officer, or other natural person with personal knowledge that the TrustedForm Link is evidence that Kelly Pinn consented to receive telemarketing calls.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**
Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

*See* Declaration of Steven M. Rafferty provided herewith.

**REQUEST FOR PRODUCTION NO. 4:**
All documents concerning communications ActiveProspect and Global Lynks since January 1, 2021, including any registration keys and information associated with any reference keys.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**
Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

Respondent is unaware of any responsive documents.

**REQUEST FOR PRODUCTION NO. 5:**
All documents concerning suspicions ActiveProspect with respect to Global Lynks, including ActiveProspect's level of confidence that the information collected and associated with Global Lynks was legitimately generated.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**
Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

Respondent is unaware of any responsive documents. Global Lynks is not and has not been a customer of ActiveProspect, Inc.

**REQUEST FOR PRODUCTION NO. 6:**

Any document concerning payment between ActiveProspect and Global Lynks since January 1, 2021 (including by way of example, but without limitation, invoices, bills, ledgers, credit card receipts, canceled checks, and/or bank transfer records), or documents concerning any financial account used or held by Global Lynks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

> Respondent is unaware of any responsive documents. Global Lynks is not and has not been a customer of ActiveProspect, Inc.

**REQUEST FOR PRODUCTION NO. 7:**

All documents concerning communications between ActiveProspect and DMS, since January 1, 2021, including any registration keys and information associated with any reference keys.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

> *See* communications provided herewith.  These responses are given without prejudice to subsequent supplementation based upon any information, evidence, and documentation that hereafter may be discovered.

**REQUEST FOR PRODUCTION NO. 8:**

Any document concerning payment between ActiveProspect and DMS since January 1, 2021 (including by way of example, but without limitation, invoices, bills, ledgers, credit card receipts, canceled checks, and/or bank transfer records), or documents concerning any financial account used or held by DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

> *See* documents provided herewith regarding payment by DMS to Respondent.

**REQUEST FOR PRODUCTION NO. 9:**

All documents concerning any communication between ActiveProspect and any other person (besides Plaintiff and her counsel) regarding the case captioned above, *Pinn v. Consumer Credit Counseling Foundation, Inc.*, No. 4:22-cv-04048-DMR, pending in the United States District Court for the Northern District of California), including by way of example, but without limitation, communications concerning this subpoena, Dawood's response thereto, and the retention and/or production of documents relevant to the case captioned above, as well as documents evidencing such communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

Respondent is unaware of any responsive documents.

**REQUEST FOR PRODUCTION NO. 10:**

All documents concerning any document retention policy under which any document which would be responsive to this subpoena was lost, destroyed, delinked, dereferenced, deleted and/or access to such document was lost.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

Respondent is unaware of any responsive documents.

**REQUEST FOR PRODUCTION NO. 11:**

To the extent that you intend to charge Plaintiff any cost or expense for complying with this subpoena, all documents on which you may rely to support such cost or expense.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

Respondent is unaware of any responsive documents.

**REQUEST FOR PRODUCTION NO. 12:**

To the extent that you object to this subpoena, every document on which you may rely to support such objection in any dispute regarding this subpoena.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Respondent incorporates its general objections as though fully set forth herein.  Subject to and without waiving the foregoing objections, Respondent responds as follows:

*See* general objections above.  Respondent is unaware of any further responsive documents.

By:


_____/s/_____
Steven M. Rafferty, Chief Executive Officer

ActiveProspect, Inc., Respondent


## CERTIFICATE OF SERVICE

I certify that on January 25, 2023, I caused Non-Party ActiveProspect Inc.'s Responses and Objections to Plaintiffs' Subpoena to be served via secure email transmission on all counsel of record in this action as set forth below:

Ethan Preston
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204

Seth W. Wiener
seth@sethwienerlaw.com
LAW OFFICER OF SETH K. WIENER
609 Karina Court
San Ramon, California 94582


_____/s/_____
Steven M. Rafferty, Chief Executive Officer

ActiveProspect, Inc., Respondent

Exhibit 17

Exhibits to Preston Declaration

**PRESTON**/LAW OFFICES

4054 McKinney Avenue, Suite 310 / Dallas, Texas 75204
(972) 564-8340 / (866) 509-1197 / ep@eplaw.us

*Via email*

Jason Smith
ActiveProspect Inc.
4009 Marathon Boulevard
Austin, Texas 78756                                                March 6, 2023

> Re:    *Pinn. v. Consumer Credit Counseling Foundation, Inc.*, No. 4:22-cv-04048-DMR,
>        pending in the United States District Court for the Northern District of California

Dear Mr. Smith,

   This law firm represents the Plaintiff in the above-captioned case. As you know, Plaintiff served a subpoena (the "Subpoena") on ActiveProspect Inc. ("ActiveProspect") in December 2022, and ActiveProspect served a response to the Subpoena (the "Response") together with a partial production on January 25, 2023. Please indicate your earliest availability to meet and confer on the issues identified below.

**The Response's General Objections Are Defective**

   As the "party resisting discovery," ActiveProspect "must show specifically how each [category of the Subpoena is] objectionable." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990), collecting cases). *Cf. Lozano v. Baylor Univ.*, 339 F.R.D. 447, 450 (W.D. Tex. 2020) ("'party objecting to discovery must state with specificity the objection and how it relates to the particular request being opposed,'" citation omitted). The same rules applies in the context of a subpoena: "a non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." *American Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015); Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment ("the scope of discovery through a subpoena is the same as that applicable to Rule 34").

   The Responses provides a list of generic objections. (Resp. at 1-3.)  In response to each specific category of documents sought in the Subpoena, the Response "incorporates its general objections" and responds "[s]ubject to and without waiving [those] objections[.]" This is deficient. Parties responding to discovery "should cease and desist from raising these free-standing and purportedly universally applicable 'general objections' in responding to discovery requests. Deploying these general objections in this manner is . . . inconsistent with the Federal Rules and is not warranted by existing law." *Heller v. City of Dallas*, 303 F.R.D. 466, 484 (N.D. Tex. 2014). *See also id.* at 483-84 (collecting authorities).[1] Responding to discovery "'subject to' and/or 'without waiving' objections is 'manifestly confusing (at best) and

―――――――――――――――

[1]    *See also Gonzalez v. Volkswagen Group of Am., Inc.*, No. 14-574, 2015 WL 5097271, *2 (W.D. Tex. Aug. 28, 2015) (quoting, following *Heller*, 303 F.R.D. at 483; *Sonnino v. Univ. of Kan. Hosp. Auth.*, , 666-67 (D. Kan. 2004)).

Jason Smith
March 6, 2023
Page 2 of 11

misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure," because it "leaves the requesting party guessing and wondering as to the scope of the documents or information that will be provided as responsive will be." *Id.* at 486-87.[2]

> It would be difficult to dispute the notion that the very act of making such boilerplate objections is prima facie evidence of a Rule 26(g) violation, because if the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, he or she should have disclosed them in the objection [where Rule 45] responses must state objections with particularity, on pain of waiver.

*Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357-58 (D. Md. 2008) (quoted in *Heller*, 303 F.R.D. at 484). The "Federal Rules dictate that a responding party must describe what portions of the [discovery] it is, and what portions it is not, answering or responding to based on its objections and why." *Heller*, 303 F.R.D. at 487. Otherwise, any such objections cited in a discovery response are such to waiver. [3]

Most of the Response's general objections object "to the extent" one or another general objection applies to the Subpoena.

> [A] general objection "to the extent" it may apply to particular requests for discovery [is] worthless for anything beyond delay of the discovery. Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery. [Court have] deemed such ostensible" objections waived, or declined to consider them as objections.

*Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 666-67 (D. Kan. 2004) (cleaned up, quoted by *Heller*, 303 F.R.D. at 483, *Gonzalez v. Volkswagen Group of Am., Inc.*, No. 14-574, 2015 WL 5097271, *2 (W.D. Tex. Aug. 28, 2015)). Because the Response makes only generic objections, and do not show how any of those objections apply to the specific documents sought in the Subpoena, the Response's objections are deficient.

Even if Plaintiff attempts to shoulder ActiveProspect's burden and tries to apply the general objections to the specific categories of documents sought by the Subpoena, she cannot identify viable objections. Plaintiff addresses each of the Response's objections below.

**The Subpoena Is Not Vague or Ambiguous**

The Response objects the Subpoena is "vague, ambiguous, uncertain, or compound and thus would require [ActiveProspect] to speculate as to its meaning." However, the Response

---

[2]   *See also Tijerina-Salazar v. Venegas*, No. 19-00074, 2021 WL 6011137, *5 n.3 (W.D. Tex. Dec. 20, 2021) (quoting, following *Heller*, 303 F.R.D. at 487).

[3]   When "a party fails to assert an objection in its initial response to the discovery request [it] is deemed waived." *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005) (cited, quoted by *Henderson v. Turner*, No. 11-0039, 2012 WL 12930838, at *2 n.4 (M.D. La. June 12, 2012); *Ari v. Archon Info. Sys., LLC*, No. 11-0531, 2012 WL 13001425, at *3 (E.D. La. June 25, 2012); *Jackson v. Wilson Welding Serv., Inc.*, No. 10-2843, 2011 WL 5119045, *5 (E.D. La. Oct. 27, 2011)).

Jason Smith
March 6, 2023
Page 3 of 11

does not identify any particular word, phrase, or other portion of the Subpoena that is vague,
ambiguous, or uncertain:

> A party objecting to discovery as vague or ambiguous has the burden to show
> such vagueness or ambiguity; that a party objecting on these grounds must explain
> the specific and particular way in which a request is vague; that the responding
> party should exercise reason and common sense to attribute ordinary definitions
> to terms and phrases utilized in interrogatories and, if necessary to clarify its
> answers, may include any reasonable definition of the term or phrase at issue; and
> that, if a party believes that the request is vague, that party [should] attempt to
> obtain clarification by conferring with the requesting party prior to objecting on
> this ground.

*Lopez*, 327 F.R.D. at 580 (quoting *Heller*, 303 F.R.D. at 491-92, cleaned up). The Response's
objection is deficient because it does not comply with the procedures above.

**The Subpoena Is Not Overbroad, Unduly Burdensome, or Disproportionate**

The Response objects the Subpoena is "overbroad, unduly burdensome, . . .and not
proportional to the needs of the case[.]" In the context of an objection to a subpoena based on
burden, "the objecting party must make a specific, detailed showing of how a request is
burdensome." *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (citation omitted). "Broad-
based, non-specific objections are almost impossible to assess on their merits, and fall woefully
short of the burden that must be borne by a party making an objection to an interrogatory or
document request." *Id.* (same). "'A party asserting undue burden typically must present an
affidavit or other evidentiary proof of the time or expense involved in responding to the
discovery request.'" *Id.* (same, collecting cases).[4] A "subpoena is not unreasonably burdensome
unless compliance threatens to unduly disrupt or seriously hinder normal operations of a
business." *United States v. Chevron U.S.A., Inc.*, 186 F.3d 644, 649 (5th Cir. 1999).

The Response's generic proportionality objections are likewise deficient. The 2015
advisory committee notes expressly reflect that the restoring proportionality as a consideration to
Rule 26(b)(1) did "not place on the party seeking discovery the burden of addressing all
proportionality considerations." Fed. R. Civ. P. 26(b) advisory committee's notes for 2015
amendment. *See also Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468-69 (N.D. Tex.
2015) ("amendments to Rule 26(b) . . . do not alter the basic allocation of the burden on the party
resisting discovery to . . . specifically object and show that the requested discovery does not fall
within Rule 26(b)(1)'s scope of proper discovery").

---

[4]   *See also Lopez*, 327 F.R.D. at 580 ("party resisting discovery must show how the requested
discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or
offering evidence revealing the nature of the burden"); *Enron Corp. Savings Plan v. Hewitt
Assocs., LLC*, 258 F.R.D. 149, 159 (S.D. Tex. 2009) (same, quoting *Brady*, 238 F.R.D. 429,
437); *Ferrell v. IBP, Inc.*, No. 98-4047, 2000 WL 34032907, at *1 (N.D. Iowa Apr. 28, 2000)
("burden to prove that a subpoena is unreasonable or oppressive rests upon the party seeking
to quash or modify; "[m]ere assertions that compliance would be burdensome are insufficient
to satisfy such a burden"; citations omitted);

Jason Smith
March 6, 2023
Page 4 of 11

The Response objects "to the extent" that the Subpoena requires "anything beyond a reasonable and diligent search of readily accessible files," "production of information from sources that are not reasonably accessible because of undue burden or cost," or "an investigation that is not proportional to the needs of this case." These objections are too conditional and subjective to give Plaintiff fair notice of the scope of ActiveProspect's objection, let alone notice of what ActiveProspect has withheld. "Where [] objections are themselves vague and impermissibly overbroad, and no specifics are given, the objecting party fails to carry its burden." *Ivins v. Corrections Corp. of Am.*, 291 F.R.D. 517, 519 (D. Mont. 2013) (citing *McLeod, Alexander*, 894 F.2d at 1485). *Cf. Sonnino*, 221 F.R.D. at 666-67.

The Response objects the Subpoena "is not limited to any timeframe." While this objection is more specific than the Response's other objections, it is misplaced. Categories 4 and 6 to 8 of the Subpoena are all, in fact, expressly limited to a timeframe after January 1, 2021. Categories 1 to 3 exclusively concern Plaintiff and, as that ActiveProspect only has one TrustedForm certificate which includes Plaintiff's name or telephone number (dated February 2, 2022), the timeframe for these categories is inherently limited. Categories 9 to 12 are likewise limited to documents concerning this case (filed in July 2022) or the Subpoena (served in December 2022), so their timeframe is likewise inherently limited.

The Response objects "to the extent" the Subpoena "purports to require the production of information from sources that are not reasonably accessible because of undue burden or cost." Rule 26 provides special procedures for discovery from sources that are "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). However, Rule 26(b)(2)(B) requires the responding party to "identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing," providing "enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources." Fed. R. Civ. P. 26(b)(2) advisory committee notes to 2006 amendment. "A party seeking to invoke the protections of Rule 26(b)(2)(B) . . . bears the burden of persuasion [which] burden cannot be sustained with bald generalizations," but instead requires "should present details sufficient to allow the requesting party to evaluate the costs and benefits of searching and producing the identified sources." *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-01644, 2010 WL 502721, *15 (D. Colo. Feb. 8, 2010) (cleaned up, citation omitted). The Response neither identifies the documents or the sources implicated in this objection, or the burden or cost associated with searching those sources. *Cf. Sonnino*, 221 F.R.D. at 666-67.

**The Subpoena Seeks Relevant Responses**

The Response objects that the Subpoena "seeks information that is not relevant to the claims or defenses in this case." This generic objection to relevancy lacks merit. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party[.]" *Enron Corp. Savings Plan v. Hewitt Assocs., LLC*, 258 F.R.D. 149, 159 (S.D. Tex. 2009) (citation omitted). Moreover, the "party resisting discovery bears the burden to clarify and explain its objections and to provide support for those objections." *Id.*; *Lopez v*, 327 F.R.D. at 580 (same); *Crow v. ProPetro Servs, Inc.*, No. 15-00149, 2016 WL 9776368, *4 (W.D. Tex. June 6, 2016) ("party resisting discovery must show specifically how each discovery request is

Jason Smith
March 6, 2023
Page 5 of 11

not relevant," citing *McLeod*, 894 F.2d at 1485). The Response does not offer identify any
specific information as irrelevant, or any explanation as to why it is irrelevant.[5]

## ActiveProspect Has Not Provided a Privilege Log

      The Response objects that the Subpoena seeks "privileged information," "including but
not limited to information protected by the attorney-client privilege, the attorney work product
doctrine, the joint defense privilege and the common interest privilege." Where ActiveProspect
withholds information based on a privilege claim, it must

> describe the nature of the [information] not produced or disclosed—and do so in a
> manner that, without revealing information itself privileged or protected, will
> enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A)(ii). Rule 26(b)(5)(A) requires "a privilege log or equivalent
document" to withhold responsive documents from production. *Heller*, 303 F.R.D. at 486. To
satisfy Rule 26(b)(5)(A), "a privilege log's description of each document and its contents must
provide sufficient information to permit courts and other parties to 'test the merits of' the
privilege claim." *EEOC v. BDO USA, LLP*, 876 F.3d 690, 697 (5th Cir. 2017) (cleaned up). If
ActiveProspect genuinely believes it has withheld responsive documents as privileged, it needs
to promptly provide a privilege log. Plaintiff reserves any claim that submission of a privilege
log would be untimely.[6]

## The Existing Protective Order is Adequate for Production of Confidential Documents

      The Response objects that the Subpoena "seeks information, the disclosure of which
would constitute an unwarranted invasion of affected persons' constitutional, statutory, or
common-law rights of privacy and confidentiality," "subject to confidentiality agreements,
privacy, or other obligations with respect to third parties," and/or "private, privileged, or
confidential commercial, financial, or proprietary business information." These objections have
"little merit. Confidential information is produced in lawsuits all the time." *Akins v. South Cent.
Bell Tel. Co.*, 744 F.2d 1133, 1136 (5th Cir. 1984). If it is necessary, "a protective order may be
used to safeguard the confidentiality of" ActiveProspect's documents. *Id.*

---

[5]    This is not especially remarkable. Active Prospect "is not a party to the case and [is] in no
position to be an arbiter of relevance therein." *Pivitol Colorado II, LLC v. Triple M
Beteiligungs-GMBH & Co KG*, No. 07-01991, 2008 WL 349059, *2 (D. Colo. Feb. 6, 2008).
*See also Cooney v. Sun Shipbuilding & Drydock Co.*, 288 F. Supp. 708, 717 (E.D. Pa. 1968)
("having no interest in the outcome of the case, arguments as to 'relevancy' and 'materiality'
are not appropriate concerns to . . . witnesses" who receive a subpoena).

[6]    *See Burlington N. & Santa Fe Ry. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149
(9th Cir. 2005) (setting deadline for privilege log on the date discovery responses are "as a
default guideline" for determining whether a privilege log is timely under Rule 34); *In re
Chevron Corp.*, 749 F. Supp. 2d 170, 180 (S.D.N.Y. 2010) ("Rule 45 . . . suggests strongly
that the privilege log, absent judicial relief, must accompany any objections or motion to
quash"). *Cf.* Fed. R. Civ. P. 45(d) advisory committee's notes on 1991 amendment (person
"claiming a privilege . . . who fails to provide adequate information about the privilege . . .
claim to the party seeking the information is subject to an order to show cause why the
person should not be held in contempt").

Jason Smith
March 6, 2023
Page 6 of 11

Here, the presiding Court has in fact already entered a protective order limiting the disclosure of such confidential information (attached to this letter). That protective order adequately protects any responsive private or confidential information. *Chevron*, 186 F.3d at 650 (protective order which "proscribe[d] disclosure of any confidential material, as designated pursuant to the protective order, to any other person except in accordance with the procedures set by the protective order" and required "a court order for disclosure to a private party" was "adequate protection" for confidential information).

The Response objects to producing documents which are "subject to confidentiality agreements, privacy, or other obligations with respect to third parties," and asserts that any production is "subject to [] those obligations." This is not a valid basis for to withhold documents. *Cf.*, *e.g.*, *Forsythe v. Brown*, 281 F.R.D. 577, 588, 589 (D. Nev. 2012) (non-party held in contempt where he followed his clients' instructions not to comply with subpoena, non-party could not "shirk his obligations under the subpoenas and the court's order with the response that he was following his clients' order"). *See also Sig M. Glukstad, Inc. v. Lineas Aereas Nacional-Chile*, 656 F.2d 976, 978, 979 (5th Cir. 1981) (party's argument that "it was bound by contract not to disclose its principal" did not justify refusal to answer discovery; "party should not be allowed to defeat a discovery order by simply stating that it had contracted not to reveal certain information"); *McMann v. SEC*, 87 F.2d 377, 378-379 (2d Cir. 1937) (broker could not refuse to comply with subpoenas based on directions from broker's principal: "it hardly needs to be said that nobody by contract, express or implied, can abridge public duties").

**The Subpoena Properly Seeks Documents That Might Be Available Elsewhere**

The Response objects "to the extent" the Subpoena seeks documents "equally or more readily available from public or other sources to which Plaintiffs have equal or equivalent access." Plaintiff is mindful about unnecessary burden of duplicative information, but without identifying specific documents ActiveProspect contends are duplicative, this objection lacks merit. *Cf. Sonnino*, 221 F.R.D. at 666-67. Moreover, the broad right of discovery under Rule 45 is based on the general principal that "the public has the right to every man's evidence[.]" *Garner v. Wolfinbarger*, 430 F.2d 1093, 1100 (5th Cir. 1970). "The administration of justice would not be aided . . . by a rule relieving [third parties] from giving particular evidence on the sole ground that they are not parties to the suit." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987). The objection that the Subpoena seeks documents "which are equally available" to Plaintiff lacks merit: "courts have unambiguously stated that this exact objection is insufficient to resist a discovery request." *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000) (collecting cases, cited and followed by *Thomas v. Innovative Emergency Mgmt., Inc.*, No. 06-886, 2008 WL 11351620, *2 (M.D. La. Mar. 27, 2008)).[7] Moreover, ActiveProspect's production is necessary to assess the

---

[7]   *See also Lofton v. Bank of Am. Corp.*, No. 07-05892, 2008 WL 2037606, *3 (N.D. Cal. May 12, 2008) (even if production from two parties was "somewhat duplicative," plaintiff was "entitled to these documents from both sources because of the difficulty of obtaining documents from [one defendant] and because such discovery may assist plaintiff in narrowing and defining the issues for trial").

Jason Smith
March 6, 2023
Page 7 of 11

integrity of other parties' productions:

> [T]here is no general rule that plaintiffs cannot seek nonparty discovery of
> documents likely to be in defendants' possession. . . . [I]n appropriate
> circumstances, production from a third party will be compelled in the face of an
> argument that the "same" documents could be obtained from a party, because
> there is reason to believe that the files of the third party may contain different
> versions of documents, additional material, or perhaps, significant omissions.

*Viacom Int'l, Inc. v. YouTube, Inc.*, No. 08-80129, 2008 WL 3876142, *2-3 (N.D. Cal. Aug. 18,
2008) (compelling compliance with subpoena where there was no "reason to believe that
[defendant] retained all communications and documents shared" with subpoena recipient,
quoting *Visto Corp. v. Smartner Info. Sys., Ltd.*, Nos. 06-80339, 2007 WL 218771, *3
(N.D. Cal. Jan. 29, 2007)).  Subpoenas are not "unreasonably cumulative and duplicative of party
discovery" where a party needs production on its subpoena "to test the veracity of [other party's]
assertions that they have produced all the documents they are required to produce." *Med. Tech.,
Inc. v. Breg, Inc.*, No. 10-00100, 2010 WL 3734719, *4 (E.D. Pa. Sept. 21, 2010). "While serving
non-parties with identical document requests may result in duplication, such action would ensure
discovery of all facts necessary to unearth the truth." *In re PE Corp. Sec. Litig.*, 221 F.R.D. 20,
28 (D. Conn. 2003) (denying motion for protective order against subpoenas which sought "nine
copies of the same documents from nine different parties").[8]

## **The Subpoena Properly Seeks Discoverable Documents**

The Response objections to the Subpoena "to the extent that it is speculative, lacks
foundation, or improperly assumes the existence of hypothetical facts that are incorrect or
unknown to" ActiveProspect. This is not a proper objection to discovery. "That a requested
document or information will not be admissible or relevant to the merits of a claim or defense is

---

[8]  *See also Drummond Co., Inc. v. Collingsworth*, No. 13-80169, 2013 WL 6074157, *10 (N.D.
Cal. Nov. 18, 2013) (rejecting argument that "information sought by the subpoenas is
duplicative of discovery already produced," where defendants failed "to provide any
evidence showing what discovery they have produced in previous litigation"); *In re C.R.
Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 287 F.R.D. 377, 383 (S.D. W. Va. 2012)
("possibility of duplication is not a reason for quashing the subpoena . . . plaintiffs should not
be limited to production of documents only by [defendant]"); *High Point Sarl v. Sprint Nextel
Corp.*, No. 09-2269, 2011 WL 124534 (D. Kan. Jan. 14, 2011) ("no undue burden or expense
that would require [party] to first seek these documents from" other parties, "interest[s] of
judicial economy and efficiency" required non-party "contractual custodian of the
subpoenaed documents" to comply with plaintiff's subpoena); *Ambu, Inc. v. Kohlbrat & Bunz
Corp.*, No. 99-20, 2000 WL 17181, *7 (W.D.N.C. June 6, 2000) (subpoena enforced where
plaintiffs did "seek [subpoenaed] information from a party before resorting to third parties,"
but "received . . . incomplete and evasive" responses); *Composition Roofers Union Local 30
Welfare Tr. Fund v. Graveley Roofing Enters., Inc.*, 160 F.R.D. 70, 72 (E.D. Pa. 1995)
(rejecting argument that documents could be more easily obtained from party where
"Plaintiffs [had] tried repeatedly to obtain the information from Defendant, without success,"
quoted, followed by, e.g., *Unisource Worldwide, Inc. v. Swope*, No. 13-02822, 2013 WL
12116382, *2 (C.D. Cal. May 14, 2013))).

Jason Smith
March 6, 2023
Page 8 of 11

not a proper objection to discovery . . ." *Heller*, 303 F.R.D. at 489.

**The Subpoena Seeks Documents Within ActiveProspect's Control**

The Response objects "to the extent" the Subpoena seeks documents "not within Respondent's possession, custody, or control." Plaintiff concedes Rule 45 limits the scope of production on the Subpoena to documents within ActiveProspect's "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). This "includes more than actual possession or control of the materials; it also contemplates a party's legal right or practical ability to obtain the materials from a nonparty to the action." *Mir v. L-3 Communc'ns Integrated Sys., LP*, 319 F.R.D. 220, 230 (N.D. Tex. 2016) (quoting *Edwards v. City of Bossier City*, No. 15-1822, 2016 WL 3951216, at *3 (W.D. La. July 20, 2016)); *Enron*, 258 F.R.D. at 164 (control includes "the legal right to obtain the documents on demand"). Plaintiff does not seek documents which exceed ActiveProspect's possession, custody, or control, but does seek all documents within its control as that term is broadly defined and construed for the purposes of Rule 45.

**ActiveProspect May Be Accountable For Spoliated Certificate**

As you know, the genesis of the Subpoena (and ActiveProspect's involvement in the above-captioned case) is the TrustedForm Certificate ID 0d459d604c22f30574aab2e51c85d376c cbcc518 (the "Certificate") identified in the January 25, 2023 declaration by Steven Rafferty. In my March 3 email to you, I identified ActiveProspect's deletion of the Certificate as a potential spoliation issue. You responded that if "DMS claimed the Certificate, they would have it and it would contain the same Certificate ID." But DMS must have claimed the Certificate because it still existed on the date of Rafferty's declaration: if DMS had not claimed the Certificate, it would have been deleted no later than May 3, 2022 (ninety days after February 2, 2022). You also responded that you were not "not sure what" I meant when I stated "ActiveProspect deleted the Certificate." As the Certificate was exclusively stored in the TrustedForm system, it is not clear who else could have deleted the Certificate besides ActiveProspect.

It bears mentioning that the Court has the inherent authority to sanction applies to "non-parties that [] are closely tied to the litigation." *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 858 (E.D. Tex. 2017). *Cf. Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015) (court has inherent authority "to sanction the conduct of a nonparty who participates in abusive litigation practices, or whose actions or omissions cause the parties to incur additional expenses," cleaned up, collecting cases). So far as the Response indicates, the Certificate contains unique information for which there is no substitute. Obviously, ActiveProspect had notice that the Certificate was relevant to Plaintiff's case at the time of the Response. This situation requires an explanation, and Plaintiff reserves all rights in that respect.

**The Response Does Not Indicate What Documents Were Withheld**

In 2015, Rule 34 was amended to require any response to document requests to "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). The 2015 amendments were intended to insure responses to document requests "state whether anything is being withheld on the basis of the objection," and "end the confusion [over] whether any relevant and responsive information has been withheld on the basis of the objections." Fed. R. Civ. P. 34 advisory committee notes to 2015 amendment. Again, the same rule applies to third parties' responses to subpoenas under Rule 45:

Jason Smith
March 6, 2023
Page 9 of 11

> The same rationale for requiring that a party objecting to a request for production of documents under [Rule] 34(b) must submit a written response specifying the objection to each category applies equally to the response to a subpoena duces tecum. This gives each party the opportunity to analyze the request and the corresponding objection, and gives the court a fuller record on which to base its ruling. It also provides some assurance that the party asserting the privilege has directed his or her attention to the scope of the claim being asserted.

*United States v. O'Neill*, 619 F.2d 222, 225-26 (3d Cir. 1980). *Cf. American Fed'n of Musicians*, 313 F.R.D. at 46; Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment ("the scope of discovery through a subpoena is the same as that applicable to Rule 34").

"When no responsive documents are found or a dispute arises out of the completeness of the production that is made, the subpoenaed person must come forward with an explanation of the search conducted 'with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.'" *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366-67 (D. Nev. 2019) (citation omitted)). "Information regarding the search conducted should be provided through a declaration under oath detailing the nature of the efforts to locate responsive documents" which "must address the inquiry made on a request-by-request basis." *Id.* at 367. (same).

The Response's objections also complicate the meet and confer process. We recognize ActiveProspect is a third party and does not have a stake in the litigation, and our preference is to offer ActiveProspect reasonable and appropriate accommodations that do not prejudice Plaintiff's litigation interests. However, the vague nature of its objections makes it more difficult to propose appropriate compromises. The Federal Rules require specific objections for a reason:

> Objections that fail to provide an appropriate factual basis make it difficult for the parties to even informally discuss any alleged defects in a discovery request or response in hope of fixing the defects. . . . This inhibits the parties' abilities to resolve discovery disputes on their own, as intended by the Rules. . . .

*Chevron Midstream Pipelines LLC v. Settoon Towing LLC*, No. 13-2809, 2015 WL 269051, *4 (E.D. La. Jan. 21, 2015). We ask ActiveProspect to provide an amended response which clearly identifies the scope of its search, and the documents it has withheld. We are better able to discuss ActiveProspect's objections if we understand what responsive documents exist, what documents have been withheld, and the available methods and means of collection, so Plaintiff can make an informed decision about how to narrow the subpoena.

## ActiveProspect Has Withheld Responsive, Non-Privileged Documents

Category 1 of the Subpoena seeks documents concerning Plaintiff's telephone number "including any document containing any information associated with the TrustedForm Link, and any communication concerning the TrustedForm Link." Although the Subpoena defines "TrustedForm Link" to mean the same Certificate identified in paragraph 6 of the Rafferty declaration, the Response indicates ActiveProspect "is unaware of any responsive documents." The Response is obviously inaccurate with respect to the Certificate itself. Moreover, the Certificate did not (or does not) contain all the http headers ActiveProspect collected via the TrustedForm javascript. Those http headers are essential evidence in Plaintiff's case.

Jason Smith
March 6, 2023
Page 10 of 11

Category 2 of the Subpoena seeks documents "necessary and sufficient to identify any ActiveProspect employee, agent, servant, attorney, officer, or other natural person with personal knowledge that the TrustedForm Link is evidence that Kelly Pinn consented to receive telemarketing calls." The Response simply references the Rafferty declaration. In turn, paragraph 6 of the Rafferty declaration asserts unnamed "ActiveProspect employees" verified the Certificate originated from https://healthinstantly.org/form.html. Again, responsive documents—which identify these employees and the basis of their knowledge concerning the Certificate—are essential evidence in Plaintiff's case.

Category 4 of the Subpoena seeks documents "concerning communications ActiveProspect and Global Lynks since January 1, 2021, including any registration keys and information associated with any reference keys." The Subpoena defines Global Lynks to include "the person(s) who operates . . . https://healthinstantly.org" and "whose website is associated with the" Certificate. The Response asserts ActiveProspect "is unaware of any responsive documents."

Again, this response is obviously inaccurate with respect to the Certificate itself. It also omits the user records in the TrustedForm database for the API key(s) associated with the Certificate and the user records for the API key(s) associated with https://healthinstantly.org, as well as the session data for those users. Moreover, it omits the reference keys ActiveProspect generated in connection with visits to https://healthinstantly.org, and the lead data associated with those reference keys. These documents—the other reference keys and lead data associated with https://healthinstantly.org—are again essential evidence in Plaintiff's case.

Category 5 of the Subpoena seeks documents "concerning suspicions ActiveProspect with respect to [https://healthinstantly.org], including ActiveProspect's level of confidence that the information collected and associated with [https://healthinstantly.org] was legitimately generated." The Response states ActiveProspect "is unaware of any responsive documents. [https://healthinstantly.org] is not and has not been a customer of ActiveProspect, Inc." Given the other items identified in this letter, we are concerned that ActiveProspect's search for responsive documents was not adequate. In particular, the comment that https://healthinstantly.org was not "a customer" of ActiveProspect is a non sequitur: given how the TrustedForm system functioned, the existence of responsive documents does not depend on whether that website was ever a customer of ActiveProspect.

Category 7 of the Subpoena seeks documents "concerning communications between ActiveProspect and [Digital Media Solutions, LLC ("DMS")], since January 1, 2021, including any registration keys and information associated with any reference keys." The Response references approximately nine emails produced with the response, which it states "are given without prejudice to subsequent supplementation based upon any information, evidence, and documentation that hereafter may be discovered."

Again, this response is inaccurate with respect to the Certificate itself. It also omits reference keys and associated lead data ActiveProspect provided to DMS, as well as claims, retains, or extends with respect to such reference keys sent by DMS to ActiveProspect  The Response also plainly contemplates that ActiveProspect's production is incomplete. We ask

Jason Smith
March 6, 2023
Page 11 of 11

ActiveProspect to either complete this production, or explain the limitations of its prior search so that we can assess ActiveProspect's ultimate production and meet and confer if necessary.

Category 10 of the Subpoena seeks documents "concerning any document retention policy under which any document which would be responsive to this subpoena was lost, destroyed, delinked, dereferenced, deleted and/or access to such document was lost." The Response indicates ActiveProspect "is unaware of any responsive documents." Again, ActiveProspect deleted the Certificate at issue in this case. If ActiveProspect did so pursuant to any document retention policy, it should produce written documents concerning that policy.

**<u>Plaintiff Asks ActiveProspect to Make Arrangements for a Deposition</u>**
Plaintiff still has several important items of discovery outstanding, but asks ActiveProspect to make arrangements for a deposition regarding the Certificate, the website where it was generated, ActiveProspect's relationship with DMS, and the contents of the Rafferty declaration. It would be productive for ActiveProspect to identify the Rule 30(b)(6) deponent and available dates, as well as any proposed conditions for the deposition, including accepting service of further subpoenas which include the deposition notice. (For instance, Plaintiff is amenable to a remote deposition under certain conditions.)

**<u>Resolution</u>**
Plaintiff reserves all rights with respect to the subpoena and any action required to enforce the subpoena. We hope to meet and confer with ActiveProspect by March 10. Plaintiff's counsel hopes and expects that the parties will be able to reach solutions that accommodate everyone involved.

Sincerely,

Ethan Preston

Exhibit 18

**Subject:** Re: Kelly Pinn v. Consumer Credit Counseling Foundation, Inc., et seq.; Case No. 4:22-cv-04048-DMR
**From:** "Jason Smith" <jason.smith@activeprospect.com>
**Date:** 4/28/23, 11:10 AM
**To:** "Ethan Preston" <ep@eplaw.us>

Yes, of course.

Thanks,

 **Jason Smith**
*General Counsel*

      **p.** 228.547.7703
      **e.** jason.smith@activeprospect.com
      **w.** www.activeprospect.com
      **in.** linkedin.com/in/jjasonsmith1

**NOTICE**:  This email and it's contents may contain information of a confidential or privileged nature. If you feel you have received this email in error, please immediately notify the sender and delete this email and it's contents. Nothing in this email is intended to create an attorney-client or business relationship unless there is a written agreement signed by both parties.

> On Apr 28, 2023, at 12:08 PM, Ethan Preston <ep@eplaw.us> wrote:
>
>  Sure, can I please serve the supplemental subpoena via email to your email address? Thanks in advance, Ethan
>
> On 4/28/23 7:53 AM, Jason Smith wrote:
>> Ethan,
>>
>> Apologies for the delay - have been out of the country on PTO.  Could you please supplement your subpoena requests formally to ask for the SMAC order forms and other documents.  We will need something to present to them to show why we are providing their confidential information to a third party.
>>
>> Thanks,



**Jason Smith**

*General Counsel*

**p.** 228.547.7703
**e.** jason.smith@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/in/jjasonsmith1

On Wed, Apr 19, 2023 at 8:56 PM Ethan Preston <ep@eplaw.us> wrote:

It sounds like the Order Forms might be a good place to start: we might not need anything else if they have the information I need.

On 4/19/23 8:46 AM, Jason Smith wrote:

I think this is only for self-service customers but I am getting confirmation. I believe both SMAC entities are contracted customers with us. If that's the case, do you just want their Order Forms that they executed to become customers?



**Jason Smith**

*General Counsel*

**p.** 228.547.7703
**e.** jason.smith@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/in/jjasonsmith1

On Tue, Apr 18, 2023 at 5:47 PM Ethan Preston <ep@eplaw.us> wrote:

So I do want to reiterate that ActiveProspect should provide all the relevant account data for the SMAC entities, but if you wanted to generate a TrustedForm certification, the Active Prospect website has links where users register to use the Javascript snippet, "Get Started" and "Sign Up Now."
https://activeprospect.com/trustedform/certify/

These links go to the ActiveProspect's user registration page:
https://sso.activeprospect.com/trustedform/script, where users input their name, telephone number, and email addresses in order to receive an account name like "SMAC X - Master" and "SMAC X - DSG Media."

Let me know if this answers the team's question.

Thanks!

Ethan

On 4/18/23 4:08 PM, Jason Smith wrote:

> Ethan,
>
> The team is not sure what exactly is meant by API registration data here.  If you could please clarify, we can get you what you need.
>
> Thanks,
>
> 
> **Jason Smith**
> *General Counsel*
>
> **p.** 228.547.7703
> **e.** jason.smith@activeprospect.com
> **w.** www.activeprospect.com
> **in.** linkedin.com/in/jjasonsmith1

On Mon, Apr 17, 2023 at 1:30 PM Ethan Preston <ep@eplaw.us> wrote:
> So I'm certainly seeking whatever account information exists, but obviously if they are ActiveProspect customers, we know that at least the API registration data exists.
>
> On 4/17/23 12:14 PM, Jason Smith wrote:
>
> > Ethan,
> >
> > Could you clarify what you mean by API registration info here vs. general account info?
> >
> > Thanks,
> >
> > 
> > **Jason Smith**
> > *General Counsel*
> >
> > **p.** 228.547.7703
> > **e.** jason.smith@activeprospect.com
> > **w.** www.activeprospect.com
> > **in.** linkedin.com/in/jjasonsmith1

On Mon, Apr 17, 2023 at 12:16 PM Ethan Preston <ep@eplaw.us> wrote:
> OK, that makes sense. I would like to have the API registration data for SMAC X - Master & SMAC X - DSG Media.
>
> On 4/17/23 11:07 AM, Jason Smith wrote:

Ethan,

(1) Jenlin Systems was a customer but they churned in March 2022. SMAC X - Master & SMAC X - DSG Media are current customers.

(2) Both those accounts have users with smac-digital.com AND smacxinc.com email addresses.

Thanks,


**Jason Smith**
*General Counsel*

**p.** 228.547.7703
**e.** jason.smith@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/in/jjasonsmith1

On Sat, Apr 15, 2023 at 2:37 PM Ethan Preston <ep@eplaw.us> wrote:

> Hi Jason,
>
> Having looked over all the materials I've received, I wanted to double-check my understanding on a couple of items:
>
> (1) The accounts listed in Certificate0d459d604c22f30574aab2e51c85d376ccbcc518.csv (Jenlin Systems Inc, SMAC X - Master, SMAC X - DSG Media) are all ActiveProspect customers.
>
> (2) Are the email addresses linked to the SMAC X - Master and SMAC X - DSG Media accounts associated with smac-digital.com or smacxinc.com?
>
> Thanks,
>
> Ethan
>
>> On 4/14/23 7:22 PM, Ethan Preston wrote:
>>
>> The declaration looks fine. Thanks! Ethan
>>
>>> On 4/14/23 10:57 AM, Jason Smith wrote:
>>>
>>> Ethan,
>>>
>>> Attached are:  1) the email you requested; and 2) a draft

declaration which has already been approved for accuracy. Please let me know if you have any questions or changes you would like to make.

Thanks,



**Jason Smith**
*General Counsel*

p. 228.547.7703
e. jason.smith@activeprospect.com
w. www.activeprospect.com
in. linkedin.com/in/jjasonsmith1

On Wed, Apr 12, 2023 at 11:47 AM Ethan Preston <ep@eplaw.us> wrote:

> Thanks, Jason. I look forward to it.
>
> We can certainly meet and confer on the scope of the SMAC production, but let's start with producing the specific email I've cited and we can go from there.
>
> On 4/10/23 10:59 AM, Jason Smith wrote:
>
>> We can certainly provide that declaration.  I will get it prepared this week.
>>
>> I will work with Justin Guido to set what email communications he has with SMAC, including the specific one you requested.  Can we narrow the scope here a bit though?  Such as communications which mention DMS, healthinstantly.org, Kelly Pinn, or any other individuals you provide?
>>
>> Thanks,
>>
>> 
>>
>> **Jason Smith**
>> *General Counsel*
>>
>> p. 228.547.7703
>> e. jason.smith@activeprospect.com
>> w. www.activeprospect.com
>> in. linkedin.com/in/jjasonsmith1

On Sat, Apr 8, 2023 at 1:21 AM Ethan Preston <ep@eplaw.us> wrote:

> I do think ActiveProspect should produce communications

Exhibit 19

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California ▾

| | |
|---|---|
| KELLY PINN, | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| CONSUMER CREDIT COUNSELING | ) |
| FOUNDATION, INC., at al | ) |
| _____ | ) |
| *Defendant* | ) |

Civil Action No. 4:22-cv-04048-DMR

## SUPPLEMENTAL
### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Active Prospect Inc., 4009 Marathon Boulevard, Austin, Texas 78756
c/o Steven M. Rafferty, 3612 Bonnie Road, Austin, Texas 78703

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached production schedule

| Place: Sparre Process Serving, LLC, 500 East 4th Street, Suite 143, Austin, Texas 78701 or other address as the parties may mutually agree | Date and Time: 05/16/2023 3:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/28/2023

|  | |
|---|---|
| *CLERK OF COURT* | |
|  | OR |
| _____ | s/Ethan Preston _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff Kelly Pinn
_____ , who issues or requests this subpoena, are:

Ethan Preston, Preston Law Offices, 4054 McKinney Avenue, Ste 310, Dallas, TX 75204, (972) 564-8340, ep@eplaw.us

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:22-cv-04048-DMR

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Kelly Pinn, on her own behalf,*
*and on behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CONSUMER CREDIT COUNSELING FOUNDATION, INC., NATIONAL BUDGET PLANNERS OF SOUTH FLORIDA, INC., Florida corporations, and ISHWINDER JUDGE, an individual, and DOES 1-10, inclusive, <br><br> Defendants. | **PRESERVATION INSTRUCTIONS AND SUPPLEMANTAL PRODUCTION SCHEDULE FOR SUBPOENA TO ACTIVE PROSPECT INC.** <br><br> No. 4:22-cv-04048-DMR |

## PRESERVATION AND PRODUCTION INSTRUCTIONS

The attached subpoena places Active Prospect Inc. ("Active Prospect") on notice that it has a duty to preserve evidence relevant to the above-captioned case, including in particular all verification records, reference keys, and other documents related to https://healthinstantly.org/ and the entity responsible for the content at https://healthinstantly.org, the entity associated with the TrustedForm Link (defined below), Digital Media Solutions, LLC, and their agents, partners, attorneys, servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of them. Contact the counsel identified above if there are any questions about the subpoena or your obligations thereto. Failure to obey a subpoena could render Active Prospect liable to sanctions for contempt of court. *See* Fed. R. Civ. P. 45(e). Federal law provides criminal penalties for any person who "corruptly ... obstructs, or impedes, or endeavors to influence, obstruct, or impede,

the due administration of justice[.]" 18 U.S.C. § 1503(a). See also 18 U.S.C. § 401(3) (court may punish "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command" by "fine or imprisonment, or both, at its discretion"). Contact the counsel identified above if there are any questions about the subpoena or your obligations thereto.

The duty to preserve created by a subpoena extends to documents and other evidence within Active Prospect's "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(iii). Active Prospect has "control" over evidence or documents where it has the right to obtain the documents upon demand.

It is likely that most of the documents requested in this subpoena are electronic. Effective preservation of documents requires you to identify and inventory the physical media where requested electronic documents may be found. Such physical media can take any number of forms, and the following list is provided for illustrative purposes: (1) hard drives attached to personal computers, laptops, and servers; (2) external, networked or detached drives; (3) archive or backup tapes; (4) portable drives (Flash USB drives and external hard drives connected via USB or FireWire); (5) optical media (i.e., CDs and DVDs); (6) floppy discs; (7) portable devices including wireless devices and other PDAs; and (8) volatile memory (i.e., RAM) of the foregoing devices. Document custodians should be alerted that relevant documents may be found in any of the foregoing media, and that a single item of computer media may contain multiple file systems.

**PRODUCTION SCHEDULE**

**Instructions:**

Active Prospect is required to respond to the attached subpoena in a manner that is consistent with Federal Rule 45. The following instructions do not limit the scope of Active Prospect's obligations under the Rule 45, but are merely meant to remind or inform it of these duties and to provide examples of compliance those duties.

**A.      Definitions**

With respect to this Subpoena,

1.  The term "TrustedForm Link" means the TrustedForm certificate found at the following link:

> https://cert.trustedform.com/0d459d604c22f30574aab2e51c85d376ccbcc518/assets/?shared_token=TlZWWWVVUk9lVWhYT1VFMmRrbDFSbG9yYVhZcldVUlhWMnAzTjBReVlYSm9VWGRwU0ZKcWRYYzVNVmx6WkCNmJFUnpkVlJxT0hwVmVsVTVUekJyVEZka1MxcHRaMVZZCY3pOaVZZSnFla3g2V0RoYYWNGUktibEk0V21ob1EyWlBRVGhzWkU1dWFqVnRVVVuRVV2M5TFFMxNFJFdGlhbhbG81VEZoVWJubHHVWV0pRSzI5aFFZEEUlJQVDA9LS0xMzJlMGVkZTgwMGZhOGFFaZjk0MDJhMGM0NTZmNTNiMWWM1OGNkMWQ2.

2.  The term "Active Prospect" means Active Prospect, Inc., as well as its principals, agents, partners, attorneys, servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of it, and/or any predecessor, successor, affiliate, subsidiary, parent or related corporation, partnership or entity, and/or anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

3.  The term "Global Lynks" means Global Lynks LLC, the person(s) who operates the https://healthinstantly.org, and/or the person(s) whose website is associated with the TrustedForm Link, as well as their principals, agents, partners, attorneys, servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of it, and/or any predecessor, successor, affiliate, subsidiary, parent or related corporation, partnership or entity, and/or anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

4.  The term "DMS" means Digital Media Solutions, LLC, as well as its principals, agents, partners, attorneys (including partners and employees of Klein Moynihan Turco LLP), servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of it, and/or any predecessor, successor, affiliate, subsidiary, parent or related corporation, partnership or entity, and/or anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

5.  The term "document" means any information that is fixed in a tangible form and stored in a medium from which it can be retrieved and examined. This definition includes, but is not limited to, emails, computer files in every kind and format, as well as writings of every kind, any correspondence, books, records, logs, reports, memoranda, abstracts, advertisements, agreements, appointment records, audio recordings (whether transcribed or not), balance sheets, bills, books of account, certificates, communications, checks, compilations, papers, transcriptions or summaries of conversations, diaries, drafts, disks, notes, notations, plans and specifications, graphs, tapes, slides, computer programs, computer print-outs, entries, estimates, expense records, financial analyses, financial statements, forms, handbooks, telegrams, income statements, indices, intra-office and inter-office communications, invoices, itemizations, journals, letters, meeting reports, minutes, notes, payroll records, photocopies, photographs, press releases, prospectuses, publications, receipts, records of account, reports, resolutions, statements, statistical records, studies, summaries, system analyses, and time records.

6.  The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make requests inclusive rather than exclusive.

7.     The term "concerning" means referring to, describing, evidencing, or constituting.

**B.     Scope**

In Active Prospect's response to the Subpoena, it shall produce (in addition to all documents in its possession or custody) all documents which it has a right to demand. By way of example, but without limitation, it shall produce all responsive documents found in the possession or custody of its agents, partners, attorneys, servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of it, and/or any predecessor, successor, affiliate, subsidiary, parent or related corporation, partnership or entity, and/or anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

**C.     Production of Electronic Documents**

Active Prospect shall produce any electronic documents requested herein in "native format," meaning the format in which they are ordinarily used or accessed by it outside of litigation. Native format explicitly includes application-specific metadata (like File Properties for Active Prospect Word .doc files) and file system metadata (like the date of creation and modification and file permissions stored in an NTFS-formatted file system). In particular, Active Prospect shall produce electronic documents with their original filepath.

File system metadata can be preserved by archiving responsive electronic documents in a .tar or .zip file. These archival formats simplify preservation of time-related metadata. These archival formats can also be used to simplify preservation of file systems' overall directory structure (and thereby responsive documents' filepath) by initially including the file systems' root directory in the archive, and then manually excluding all non-responsive directories and files. If it prefers, Active Prospect may use a .tar or .zip or similar archival file format to produce all responsive documents on a particular file system. (The documents contained within the archive file should still be produced in their native format.)

However, if responsive electronic documents are in a file format that is not accessible by mass-market software, Active Prospect shall translate the file to a format accessible by mass-market software. If possible, the documents should be translated in manner that preserves the

original documents' metadata. Typically, data in databases should be produced in plain text (i.e., ASCII or Unicode) format, with appropriate delimiters to preserve differentiation between different data fields (which may include tabs or commas), and clear identification of such data fields. Please coordinate with Plaintiffs' counsel early on so that the logistics of translating such electronic documents can be worked out in advance of the production deadline. If possible, the documents should be translated in manner that preserves the original documents' metadata. Conversion of documents from other formats to a .tiff or .pdf format is not acceptable for a number of reasons. **DO NOT CONVERT DATA STORED IN A DATABASE TO PDF FORMAT OR WE WILL REQUIRE YOU TO REPRODUCE THAT DATA.**

There are a variety of ways to authenticate electronic documents. For instance, Active Prospect may wish to assign a Bates number or calculate a hash value for each electronic document produced, or each archival file, or even each CD or hard drive. A hash is a mathematical or cryptographic "signature" of a file, and can be used to authenticate documents with only minimal time and resources. In either event, Active Prospect can ensure the integrity of the electronic documents you produce by including a cryptographic hash value for each document (or each archive). These hash values can be used to label particular productions, and to ensure that the productions are not altered. To the extent Active Prospect requires Bates designations on its production, it should provide an index with the file name, hash value, and Bates designation of each document produced.

### D. Manner of Production

Active Prospect shall organize the requested documents either "as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand." Fed. R. Civ. P. 45(d)(1)(A). If Active Prospect does not organize and label produced documents, it must demonstrate that it produced the documents as they are kept in the usual course of business. Active Prospect may be obliged to substantiate that the documents it produces are produced as they are kept in the ordinary course of business.

Active Prospect should produce documents on optical media (CDs or DVDs) or on a

portable hard drive. Ideally, it should produce documents on read-only optical media (such as CDs or DVDs). Active Prospect should produce documents on properly-formatted hard drive only if production on optical media is impractical (because of storage limitations) or the translation to an optical media file system materially alters documents.

If Active Prospect has paper documents without any electronic originals, those documents should be scanned into a .pdf format in a manner that ensures that they are legible and searchable. Please coordinate with Plaintiff's counsel early on, so that the logistics of scanning such paper documents in can be worked out in advance of the production deadline. For environmental and logistical reasons, documents that cannot be scanned should be produced on paper only as a last resort.

### E.    Objections

Any objections to the Subpoena must conform to Rule 45(c)(2)(B). Any grounds for objection that is not stated in a timely objection are waived. If documents are withheld under a claim of privilege or protection as trial-preparation material, Active Prospect shall make the claim expressly and shall describe the nature of the withheld documents (and, if applicable, the external circumstances which it claims support the application of such privilege) in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the applicability of the privilege or protection. *Cf.* Fed. R. Civ. P. 45(e)(2). A privilege log or equivalent should be prepared with your response to the Subpoena, or an extension should negotiated beforehand.

Defendants or other third parties may serve you with objections to your production in response to this subpoena. These objections do not require or permit Active Prospect to delay your production in response to this subpoena. Defendants and other third parties must file a motion for protective order or a motion to quash the subpoena if they wish to prevent your production, and they have limited standing to do so. *Cf.* Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(d)(3).

This subpoena seeks metadata and other information which do not constitute "contents"

of any communication, as that term is used in 18 U.S.C. § 2702.

**Supplemental Schedule of Documents to be Produced by Active Prospect, Inc.**

1.  All documents containing account information (including any information provided in the course of API registration, and any information used to process payments or other financial transactions) for any Active Prospect customer and/or account which claimed the TrustedForm Link, specifically including Jenlin Systems Inc., SMAC X - Master, SMAC X - DSG Media.

2.  All documents concerning communications since October 1, 2021 between Active Prospect and any Active Prospect customer and/or account which claimed the TrustedForm Link, specifically including Jenlin Systems Inc., SMAC X - Master, SMAC X - DSG Media, and the email addresses "chad@smac-digital.com" and/or "Angela@smacxinc.com."

3.  All documents concerning communications since October 1, 2021 between (1) Active Prospect and (2) Fawaz Saleem, Nathan Dawood, Amir Dawood, Rich Ortiz, and/or the email address(es) "f.saleem@urthaccess.com," "admin@digiconnectllc.com," and/or "r.ortiz@digiconnectllc.com."

4.  All documents concerning any document retention policy under which any document which would be responsive to this subpoena was lost, destroyed, delinked, dereferenced, deleted, and/or access to such document was lost.

5.  To the extent that you intend to charge Plaintiff any cost or expense for complying with this subpoena, all documents on which you may rely to support such cost or expense.

6.  To the extent that you object to this subpoena, every document on which you may rely to support such objection in any dispute regarding this subpoena

Dated: April 28, 2023          By: __s/Ethan Preston__
                                   Ethan Preston (263295)
                                   ep@eplaw.us
                                   PRESTON LAW OFFICES
                                   4054 McKinney Avenue, Suite 310
                                   Dallas, Texas 75204
                                   Telephone: (972) 564-8340
                                   Facsimile: (866) 509-1197

                                   *Attorneys for Plaintiff Kelly Pinn, on her own behalf, and behalf of all others similarly situated*

## CERTIFICATE OF SERVICE

Pursuant to 28 U.S.C. § 1746 and Local Rule 79-5.2(f), I hereby certify that a complete set of these documents will be served on February 7, 2023 upon the parties below under Fed. R. Civ. P. 5(b) by either emailing a copy of the foregoing or mailing a copy of the foregoing to Defendants' last known address as follows:

Jay T. Ramsey
Sheppard, Mullin, Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055

*Attorneys for Defendants Digital Media Solutions, LLC*

Seth W. Wiener
Law Office of Seth W. Wiener
609 Karina Court
San Ramon, California 94582
Telephone: (925) 487-5607
seth@sethwienerlaw.com

*Attorneys for Defendants Consumer Credit Counseling Foundation, Inc., National Budget Planners of South Florida, Inc., and Ishwinder Judge*

Dated: April 28, 2023                    By: __s/Ethan Preston__
                                         Ethan Preston (263295)
                                         ep@eplaw.us
                                         PRESTON LAW OFFICES
                                         4054 McKinney Avenue, Suite 310
                                         Dallas, Texas 75204
                                         Telephone: (972) 564-8340
                                         Facsimile: (866) 509-1197

                                         *Attorneys for Plaintiff Kelly Pinn, on her own behalf, and behalf of all others similarly situated*

Exhibit 20

**Subject:** Re: Kelly Pinn v. Consumer Credit Counseling Foundation, Inc., et seq.; Case No. 4:22-cv-04048-DMR
**From:** "Jason Smith" <jason.smith@activeprospect.com>
**Date:** 6/23/23, 11:17 AM
**To:** "Ethan Preston" <ep@eplaw.us>, "seth@sethwienerlaw.com" <seth@sethwienerlaw.com>

Counsel:

Attached are all documents in ActiveProspect's possession which are responsive to Plaintiff's Supplemental Subpoena to Produce Documents. If you would like me to also prepare a formal response document, please let me know.

Regards,



**Jason Smith**
*General Counsel*

**p.** 228.547.7703
**e.** jason.smith@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/in/jjasonsmith1

On Wed, Jan 25, 2023 at 1:27 PM Jason Smith <jason.smith@activeprospect.com> wrote:

Counsel:

In regard to the above-referenced case, please find attached ActiveProspect's Responses and Objections to Plaintiff's Subpoena to Produce Documents. Also attached are documents referenced in the response.

Please note we are continuing to conduct an email search for any additional communications responsive to the subpoena and may supplement our response if we find additional documents.

Please let us know if you have any questions or concerns.

Best Regards,



**Jason Smith**
*General Counsel*

**p.** 228.547.7703
**e.** jason.smith@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/in/jjasonsmith1

Attachments:

| | |
|---|---|
| Second_Declaration_of_Steven_Rafferty__Kelly_Pinn_case_-steve_activeprospect.com.pdf | 357 KB |
| ActiveProspect Mail - Re_ New Act.pdf | 381 KB |
| ActiveProspect Mail - Re_ Final agreements.pdf | 226 KB |
| ActiveProspect Mail - Re_ [AP + SMAC] - New Agreement_.pdf | 348 KB |
| ActiveProspect Mail - Re_ Call followup.pdf | 286 KB |
| ActiveProspect Mail - Re_ New Accounts - Keys.pdf | 246 KB |
| ActiveProspect Mail - Re_ Mammoth marketing Group.pdf | 237 KB |
| Justin Emails .zip | 2.4 MB |
| ActiveProspect Mail - Re_ Leads Error.pdf | 257 KB |
| ActiveProspect Mail - Re_ Final agreements.pdf | 226 KB |
| ActiveProspect Mail - Re_ Call followup.pdf | 286 KB |
| ActiveProspect Mail - Re_ [AP + SMAC] - LC configuration_Action Items.pdf | 471 KB |
| ActiveProspect Mail - Re_ [AP + SMAC + CCC].pdf | 244 KB |
| ActiveProspect Mail - Re_ [AP + SMAC + CCC].pdf | 244 KB |
| ActiveProspect Mail - ActiveProspect_ Catch up_.pdf | 148 KB |
| ActiveProspect Mail - [AP + SMAC] - Outstanding invoice_.pdf | 157 KB |
| ActiveProspect Mail - [ActiveProspect] Re_ Re_ Issue Account setup.pdf | 384 KB |
| ActiveProspect___SMAC___Order_Form__8_30_2021_.pdf | 293 KB |
| ActiveProspect___SMAC__Order_Form__March_2022_ (1).pdf | 297 KB |
| ActiveProspect___SMAC__Referral_Agreement__March_2022_.pdf | 349 KB |
| ActiveProspect___SMAC_X__Amendment__2_v.4__Updated_Entity_Name_1.1.21.pdf | 530 KB |

Exhibit 21

**Subject:** Re: SMAC correspondence:
**From:** Ethan Preston <ep@eplaw.us>
**Date:** 7/15/23, 11:24 AM
**To:** Jason Smith <jason.smith@activeprospect.com>

Thanks for the reply. My responses in blue below.

On 7/13/23 5:36 PM, Jason Smith wrote:

> Hi Ethan,
>
> We can have a chat on Tuesday - I'm available any time after 1:30pm EST.

I'm working on clearing my calendar then. I'll get back to you on a time this weekend.

> As relayed in my email earlier, our IT team is working on your request to get the documents in a zip file.   We will produce sometime next week.
>
> We are happy to provide a declaration authenticating the production.

Great, please let me know when.

> If you want a declaration detailing all of the ongoing document searches and procedures you will need to supplement your subpoena request to ask for that.  I believe you only identified one specific email, and that was produced (if not in the correct format, that will be rectified).  We can chat further on Tuesday about what you mean here, but beyond the emails you just identified in the zip folder I'm not quite sure what you are referencing.

I think this portion of the declaration is a function of ActiveProspect's obligations under Rule 45 with respect to the existing subpoenas. *Cf. V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366–67 (D. Nev. 2019) ("When no responsive documents are found or a dispute arises out of the completeness of the production that is made, the subpoenaed person must come forward with an explanation of the search conducted 'with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence,'" citations omitted).

Hopefully, we agree there's some legitimate questions about ActiveProspect's search raised by the email headers in the zip file I sent you, including, by way of example, and without limitation, the following discrepancies:

- The zip file has emails for a variety of custodians that do not appear in ActiveProspect's productions, as far as I can tell (including Randy Bourgeois and Meghan Flint).
- ActiveProspect produced a handful of emails with f.saleem@urthaccess.com

(dated March 30 and 31 and April 6 and 26, 2022). The email headers have many, many more

- ActiveProspect produced 26 emails from Justin Myers (and just 8 emails since 2022), while the email headers reflect 38 emails sent by Myer (including 37 since 2022).

I am not done going through the documents I've obtained, and so the zip file is not a complete universe of every such discrepancy in ActiveProspect's productions. ActiveProspect needs to perform it own search for responsive documents, beyond simply responding to the zip file, and ensure that the search is complete.

> On your last point, ActiveProspect is not willing to produce all TrustedFrom Certificates claimed by SMAC, etc. during the period requested.  As we discussed previously, the Certificates do not belong to us.  For those, you will need to send a subpoena directly to the source or alleged source of the Certificates.  Again, if there are specific Certificates you are looking for, we can assess whether we will produce those.  We do not want to hire outside counsel to defend against this overly broad request, but we are prepared to do so if necessary.

I understand, and I recall ActiveProspect's position from our last meet and confer. I am still assessing the need for motion practice, but we should meet and confer.

For the record, legal title to the certificates does not limits ActiveProspect's possession, custody, or control of the certificates or its duty and ability to produce them in discovery. Also, the offer to produce specific certificates is not very meaningful. The certificates are publicly-available via the Internet, and if Pinn could identify the certificates she needed, she would not need ActiveProspect.

Thanks,



**Jason Smith**
*General Counsel*

**p.** 228.547.7703
**e.** jason.smith@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/in/jjasonsmith1

On Thu, Jul 13, 2023 at 5:35 PM Ethan Preston <ep@eplaw.us> wrote:
> Jason,
>
> I'd like to touch base on a few outstanding items:
>
> - I want to again ask ActiveProspect to produce all of the responsive documents in zip

file. Please make sure the documents are produced in native (including emails in eml format). It is difficult to compare the records I have with ActiveProspect's last production to identify outstanding documents, and its impossible to do so with ActiveProspect's prior productions.

- Pinn asks for a declaration authenticating ActiveProspect's production(s).
- Given ActiveProspect underproduction referenced in my last email, a declaration should also describe ActiveProspect's prior and ongoing document searches, and clearly explain why ActiveProspect did not find or produce the specific emails I identified.
- Pinn's second subpoena seeks "documents concerning communications since October 1, 2021 between Active Prospect and [] Jenlin Systems Inc., SMAC X - Master, SMAC X - DSG Media," and we've previously discussed whether ActiveProspect would produce TrustedForm Certificates claimed by SMAC, etc. during that period. We need to have another call on this point.

Do you have any availability for a call tomorrow, Monday, or Tuesday?

Thanks,

Ethan

On 7/12/23 8:37 AM, Jason Smith wrote:

> Working on this request.
>
> Thanks,
>
>  **Jason Smith**
> *General Counsel*
>
> **p.** 228.547.7703
> **e.** jason.smith@activeprospect.com
> **w.** www.activeprospect.com
> **in.** linkedin.com/in/jjasonsmith1
>
> **NOTICE**:  This email and it's contents may contain information of a confidential or privileged nature. If you feel you have received this email in error, please immediately notify the sender and delete this email and it's contents. Nothing in this email is intended to create an attorney-client or business relationship unless there is a written agreement signed by both parties.

On Jul 11, 2023, at 6:20 PM, Ethan Preston <ep@eplaw.us> wrote:

Jason, I'm just following up on this. Its difficult to parse ActiveProspect's production and I think at least some of its emails haven't been delivered. Pinn has obtained email headers from a variety of sources which include responsive email involving ActiveProspect. I think I am missing at least the emails in the attached zip file.

Thanks,

Ethan

On 7/7/23 11:44 AM, Ethan Preston wrote:

Jason, thanks for this. However, I've gotten some error messages which suggest that not all the emails have been delivered. I think it would be better if you could send me a zip file which includes all the emails attached (or upload them all to a Dropbox or similar). Thanks again, Ethan

On 7/7/23 11:20 AM, Jason Smith wrote:

As requested, please see the emails attached below in their original format.

Thanks,

--
Ethan Preston
**Preston**/Law Offices
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)

This email may be proprietary, confidential, attorney-client privileged, attorney work product, or otherwise not subject to disclosure under applicable law. This email is the property of Preston Law Offices, and is intended only for the use of the addressee(s): unauthorized use, disclosure or copying of this communication or any part thereof is prohibited. If you have received this email in error, please notify the sender, and destroy this email and any attachments. Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Please consider the environment before printing this e-mail
<Missing ActiveProspect Emails.zip>


--
Ethan Preston
**Preston**/Law Offices
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)

This email may be proprietary, confidential, attorney-client privileged, attorney work product, or otherwise not subject to disclosure under applicable law. This email is the property of Preston Law Offices, and is intended only for the use of the addressee(s): unauthorized use, disclosure or copying of this communication or any part thereof is prohibited. If you have received this email in error, please notify the sender, and destroy this email and any attachments. Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Please consider the environment before printing this e-mail


--
Ethan Preston
**Preston**/Law Offices
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)

This email may be proprietary, confidential, attorney-client privileged, attorney work product, or otherwise not subject to disclosure under applicable law. This email is the property of Preston Law Offices, and is intended only for the use of the addressee(s): unauthorized use, disclosure or copying of this communication or any part thereof is prohibited. If you have received this email in error, please notify the sender, and destroy this email and any attachments. Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Please consider the environment before printing this e-mail

Exhibit 22

From: Randy Bourgeois <randy@activeprospect.com>
Date: 5/11/21, 2:33 PM
To: Angela Mirabella <Angela@smacxinc.com>, jbrown2@progrexion.com
CC: Justin Myers <justin.myers@activeprospect.com>, Meghan Flint
<meghan.flint@activeprospect.com>
-------------------------
From: Randy Bourgeois <randy@activeprospect.com>
Date: 5/11/21, 2:36 PM
To: Angela Mirabella <Angela@smacxinc.com>, nicole.rothman@nationaldebtrelief.com,
Aaron Feld <aaron.feld@nationaldebtrelief.com>
CC: Justin Myers <justin.myers@activeprospect.com>, Meghan Flint
<meghan.flint@activeprospect.com>
-------------------------
From: Randy Bourgeois <randy@activeprospect.com>
Date: 5/11/21, 2:40 PM
To: Kevin Wallace <kwallace@debt.com>, Angela Mirabella <Angela@smacxinc.com>
CC: Justin Myers <justin.myers@activeprospect.com>, Meghan Flint
<meghan.flint@activeprospect.com>
-------------------------
From: Aaron Feld <Aaron.Feld@nationaldebtrelief.com>
Date: 5/11/21, 2:43 PM
To: Randy Bourgeois <randy@activeprospect.com>, Angela Mirabella
<Angela@smacxinc.com>
CC: Justin Myers <justin.myers@activeprospect.com>, Meghan Flint
<meghan.flint@activeprospect.com>
-------------------------
From: Randy Bourgeois <randy@activeprospect.com>
Date: 5/12/21, 10:37 AM
To: Angela Mirabella <Angela@smacxinc.com>, dhoward@acrelief.com
CC: Justin Myers <justin.myers@activeprospect.com>, Erica Garza
<erica.garza@activeprospect.com>
-------------------------
From: Josh Baldridge <Josh.Baldridge@FreedomMortgage.com>
Date: 5/18/21, 11:59 AM
To: Devin O'Connell <Devin.O'Connell@FreedomMortgage.com>, angela
<Angela@smacxinc.com>, Randy <randy@activeprospect.com>
CC: Justin Myers <justin.myers@activeprospect.com>, Meghan Flint
<meghan.flint@activeprospect.com>, Samuel Albetta
<Samuel.Albetta@FreedomMortgage.com>
-------------------------
From: Josh Brown <jbrown2@progrexion.com>
Date: 5/19/21, 10:26 AM
To: angela <Angela@smacxinc.com>, Randy <randy@activeprospect.com>, "Stanford
Bonnemort" <sbonnemort@progrexion.com>
CC: Justin Myers <justin.myers@activeprospect.com>, Meghan Flint
<meghan.flint@activeprospect.com>

Exhibit 22 to Preston Declaration          1

-------------------------
From: Randy Bourgeois <randy@activeprospect.com>
Date: 9/14/21, 7:51 AM
To: Angela Mirabella <Angela@smacxinc.com>, Adam Animasaun <adam@aamediainc.com>
-------------------------
From: Randy Bourgeois <randy@activeprospect.com>
Date: 9/14/21, 7:52 AM
To: Angela Mirabella <Angela@smacxinc.com>, Debbie <debbie@theleadgroup.com>
-------------------------
From: Debbie Conrad <debbie@theleadgroup.com>
Date: 9/14/21, 7:57 AM
To: Randy Bourgeois <randy@activeprospect.com>
CC: Angela Mirabella <Angela@smacxinc.com>
-------------------------
From: Randy Bourgeois <randy@activeprospect.com>
Date: 9/14/21, 8:10 AM
To: Angela Mirabella <Angela@smacxinc.com>, jbrown2@progrexion.com
-------------------------
From: Adam Animasaun <adam@aamediainc.com>
Date: 9/15/21, 12:04 PM
To: Randy Bourgeois <randy@activeprospect.com>, Angela Mirabella
<Angela@smacxinc.com>
-------------------------
From: Randy Bourgeois <randy@activeprospect.com>
Date: 9/15/21, 5:45 PM
To: Gene Calhoun <gene.calhoun@gmail.com>, Angela <angela@smacxinc.com>
Reply-to: randy@activeprospect.com
-------------------------
From: Tyler Serna <serna@apollointeractive.com>
Date: 9/21/21, 7:11 PM
To: Randy Bourgeois <randy@activeprospect.com>
CC: Angela Mirabella <Angela@smacxinc.com>
-------------------------
From: Tyler Serna <serna@apollointeractive.com>
Date: 9/24/21, 3:07 PM
To: Angela Mirabella <Angela@smacxinc.com>
CC: Randy Bourgeois <randy@activeprospect.com>
-------------------------
From: Bill Somerville <bill@policybind.com>
Date: 9/28/21, 2:50 PM
To: Randy Bourgeois <randy@activeprospect.com>
CC: Angela <angela@smacxinc.com>
-------------------------
From: Tyler Serna <serna@apollointeractive.com>
Date: 10/8/21, 3:01 PM
To: Angela Mirabella <Angela@smacxinc.com>

Exhibits to Preston Declaration

CC: Randy Bourgeois <randy@activeprospect.com>, Apollo Golf
<golf@apollointeractive.com>
------------------------
From: Randy Bourgeois <randy@activeprospect.com>
Date: 10/8/21, 5:15 PM
To: Admin <admin@handmadvisors.com>, Angela <angela@smacxinc.com>
Reply-to: randy@activeprospect.com
------------------------
From: Robert Gangi <admin@handmadvisors.com>
Date: 10/10/21, 6:58 PM
To: Randy Bourgeois <randy@activeprospect.com>
CC: Angela <angela@smacxinc.com>
------------------------
From: Randy Bourgeois <randy@activeprospect.com>
Date: 10/15/21, 9:50 AM
To: Angela <angela@smacxinc.com>
Reply-to: randy@activeprospect.com
------------------------
From: Randy Bourgeois <randy@activeprospect.com>
Date: 10/28/21, 12:20 PM
To: Angela Mirabella <Angela@smacxinc.com>
------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 11/16/21, 8:48 AM
To: Angela@smacxinc.com
CC: cyrus <cyrus@smacxinc.com>, Justin Myers <justin.myers@activeprospect.com>, Mubeen
Hussain <mubeen.hussain@activeprospect.com>
------------------------
From: Randy Bourgeois <randy@activeprospect.com>
Date: 11/16/21, 2:13 PM
To: Joshua Crisp <josh@fflentourage.com>, Angela Mirabella <Angela@smacxinc.com>
------------------------
From: Mubeen Hussain <mubeen.hussain@activeprospect.com>
Date: 11/17/21, 3:13 PM
To: Accounting SMAC-X <accounting@smacxinc.com>
CC: Erica Garza <erica.garza@activeprospect.com>, ActiveProspect Accounting
<accounting@activeprospect.com>, angela <Angela@smacxinc.com>, cyrus
<cyrus@smacxinc.com>, Justin Myers <justin.myers@activeprospect.com>
------------------------
From: Mubeen Hussain <mubeen.hussain@activeprospect.com>
Date: 11/25/21, 8:29 AM
To: Accounting SMAC-X <accounting@smacxinc.com>
CC: Erica Garza <erica.garza@activeprospect.com>, ActiveProspect Accounting
<accounting@activeprospect.com>, angela <Angela@smacxinc.com>, cyrus
<cyrus@smacxinc.com>, Justin Myers <justin.myers@activeprospect.com>
------------------------

From: Randy Bourgeois <randy@activeprospect.com>
Date: 11/30/21, 8:54 AM
To: angela <Angela@smacxinc.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 11/30/21, 9:14 AM
To: angela <Angela@smacxinc.com>
CC: Randy <randy@activeprospect.com>
-------------------------
From: Wesley Torres <wtorres@leadspedia.com>
Date: 11/30/21, 1:16 PM
To: angela <angela@smacxinc.com>
CC: accounting <accounting@smacxinc.com>, Erica Garza <erica.garza@activeprospect.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 2/4/22, 12:16 PM
To: "Accounting SMAC-X" <accounting@smacxinc.com>, "Chad" <chad@smac-digital.com>,
"Mubeen Hussain" <mubeen.hussain@activeprospect.com>, "Erica Garza"
<erica.garza@activeprospect.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 2/5/22, 11:08 AM
To: "Jessica Hamilton" <jessica.hamilton@activeprospect.com>
CC: "Chad" <chad@smac-digital.com>, "Sara Peace" <sara.peace@activeprospect.com>
-------------------------
From: Sara Peace <sara.peace@activeprospect.com>
Date: 2/7/22, 1:55 PM
To: angela <angela@smacxinc.com>
CC: Jessica Hamilton <jessica.hamilton@activeprospect.com>, Chad <chad@smac-digital.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 2/7/22, 4:01 PM
To: "Sara Peace" <sara.peace@activeprospect.com>
CC: "Jessica Hamilton" <jessica.hamilton@activeprospect.com>, "Chad" <chad@smac-
digital.com>
-------------------------
From: Sara Peace <sara.peace@activeprospect.com>
Date: 2/7/22, 4:07 PM
To: angela <angela@smacxinc.com>
CC: Jessica Hamilton <jessica.hamilton@activeprospect.com>, Chad <chad@smac-digital.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 2/7/22, 4:09 PM
To: "Sara Peace" <sara.peace@activeprospect.com>
CC: "Jessica Hamilton" <jessica.hamilton@activeprospect.com>, "Chad" <chad@smac-
digital.com>

Exhibits to Preston Declaration

------------------------
From: jessica.hamilton@activeprospect.com
Date: 2/7/22, 4:13 PM
To: angela@smacxinc.com, Steve Rafferty <steve@activeprospect.com>,
adam@activeprospect.com, ahmed.taleb@activeprospect.com, jason.smith@activeprospect.com,
chad@smac-digital.com
Reply-to: sara.peace@activeprospect.com
------------------------
From: Sara Peace <sara.peace@activeprospect.com>
Date: 2/7/22, 4:14 PM
To: angela <angela@smacxinc.com>
CC: Jessica Hamilton <jessica.hamilton@activeprospect.com>, Chad <chad@smac-digital.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 2/8/22, 5:31 PM
To: "ActiveProspect Accounting" <accounting@activeprospect.com>
CC: "Accounting SMAC-X" <accounting@smacxinc.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 2/9/22, 2:21 PM
To: "Accounting SMAC-X" <accounting@smacxinc.com>, "ActiveProspect Accounting"
<accounting@activeprospect.com>
------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 2/9/22, 2:41 PM
To: angela <Angela@smacxinc.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 2/9/22, 3:20 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: erica.garza@activeprospect.com
Date: 2/10/22, 8:23 AM
To: angela@smacxinc.com
------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 2/10/22, 11:01 AM
To: angela <Angela@smacxinc.com>, Mubeen Hussain <mubeen.hussain@activeprospect.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 2/10/22, 2:54 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
CC: "Mubeen Hussain" <mubeen.hussain@activeprospect.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 2/22/22, 12:43 PM

Exhibits to Preston Declaration

To: "Erica Garza" <erica.garza@activeprospect.com>, "Accounting SMAC-X"
<accounting@smacxinc.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 2/23/22, 11:06 AM
To: "Erica Garza" <erica.garza@activeprospect.com>, "Accounting SMAC-X"
<accounting@smacxinc.com>
------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 2/23/22, 11:29 AM
To: angela <Angela@smacxinc.com>, ActiveProspect Accounting
<accounting@activeprospect.com>, Mubeen Hussain <mubeen.hussain@activeprospect.com>
CC: Accounting SMAC-X <accounting@smacxinc.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 2/25/22, 2:43 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 2/25/22, 2:45 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 2/28/22, 9:51 AM
To: angela <Angela@smacxinc.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 2/28/22, 9:59 AM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: angela <Angela@smacxinc.com>
Date: 2/28/22, 12:03 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 2/28/22, 12:04 PM
To: angela <Angela@smacxinc.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 2/28/22, 3:49 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 2/28/22, 6:04 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------

Exhibits to Preston Declaration

From: Erica Garza <erica.garza@activeprospect.com>
Date: 3/1/22, 9:13 AM
To: angela <Angela@smacxinc.com>, Ahmed Taleb <ahmed.taleb@activeprospect.com>
-------------------------
From: Accounting SMAC-X <accounting@smacxinc.com>
Date: 3/7/22, 9:51 AM
To: "Billing, ActiveProspect"
<messages.4515826.130359.3e0255acb5@4515826.email.netsuite.com>
CC: "system" <system@sent-via.netsuite.com>, "Angela Mirabella" <angela@smacxinc.com>
-------------------------
From: Accounting SMAC-X <accounting@smacxinc.com>
Date: 3/11/22, 10:51 AM
To: "billing" <billing@activeprospect.com>, "Erica Garza" <erica.garza@activeprospect.com>
CC: "Angela Mirabella" <angela@smacxinc.com>
-------------------------
From: Catherine Perrin <catherine.perrin@activeprospect.com>
Date: 3/11/22, 2:24 PM
To: angela@smacxinc.com, accounting@smacxinc.com
CC: Steve Rafferty <steve@activeprospect.com>, Erica Garza
<erica.garza@activeprospect.com>, ActiveProspect Accounting
<accounting@activeprospect.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 3/17/22, 3:10 PM
To: Chad S <chad@smac-digital.com>, Angela Mirabella <Angela@smacxinc.com>
-------------------------
From: Chad S <chad@smac-digital.com>
Date: 3/18/22, 12:35 AM
To: Justin Myers <justin.myers@activeprospect.com>
CC: Angela Mirabella <Angela@smacxinc.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 3/18/22, 12:00 PM
To: Chad S <chad@smac-digital.com>
CC: Angela Mirabella <Angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 3/25/22, 2:43 PM
To: "Justin Myers" <justin.myers@activeprospect.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 3/28/22, 12:59 PM
To: Chad S <chad@smac-digital.com>, Angela Mirabella <Angela@smacxinc.com>
CC: Ahmed Taleb <ahmed.taleb@activeprospect.com>
-------------------------
From: Chad S <chad@smac-digital.com>

Exhibits to Preston Declaration

Date: 3/28/22, 2:10 PM
To: Justin Myers <justin.myers@activeprospect.com>
CC: Angela Mirabella <Angela@smacxinc.com>, Ahmed Taleb
<ahmed.taleb@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 3/28/22, 3:08 PM
To: Chad S <chad@smac-digital.com>
CC: Angela Mirabella <Angela@smacxinc.com>, Ahmed Taleb
<ahmed.taleb@activeprospect.com>, Erica Garza <erica.garza@activeprospect.com>, Megan
Nilles <megan.nilles@activeprospect.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 3/28/22, 3:52 PM
To: "Justin Myers" <justin.myers@activeprospect.com>
CC: "Chad S" <chad@smac-digital.com>, "Ahmed Taleb" <ahmed.taleb@activeprospect.com>,
"Erica Garza" <erica.garza@activeprospect.com>, "Megan Nilles"
<megan.nilles@activeprospect.com>
------------------------
From: angela <Angela@smacxinc.com>
Date: 3/28/22, 4:11 PM
To: "Justin Myers" <justin.myers@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 3/28/22, 4:16 PM
To: angela <Angela@smacxinc.com>
------------------------
From: Chad S <chad@smac-digital.com>
Date: 3/29/22, 4:38 PM
To: Justin Myers <justin.myers@activeprospect.com>
CC: Angela Mirabella <Angela@smacxinc.com>, Ahmed Taleb
<ahmed.taleb@activeprospect.com>, Erica Garza <erica.garza@activeprospect.com>, Megan
Nilles <megan.nilles@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 3/29/22, 4:53 PM
To: Chad S <chad@smac-digital.com>
CC: Angela Mirabella <Angela@smacxinc.com>, Ahmed Taleb
<ahmed.taleb@activeprospect.com>, Erica Garza <erica.garza@activeprospect.com>, Megan
Nilles <megan.nilles@activeprospect.com>
------------------------
From: Chad S <chad@smac-digital.com>
Date: 3/29/22, 4:55 PM
To: Justin Myers <justin.myers@activeprospect.com>
CC: Angela Mirabella <Angela@smacxinc.com>, Ahmed Taleb
<ahmed.taleb@activeprospect.com>, Erica Garza <erica.garza@activeprospect.com>, Megan

Nilles <megan.nilles@activeprospect.com>
------------------------
From: Chad S <chad@smac-digital.com>
Date: 3/30/22, 10:47 AM
To: Justin Myers <justin.myers@activeprospect.com>
CC: Angela Mirabella <Angela@smacxinc.com>, Ahmed Taleb
<ahmed.taleb@activeprospect.com>, Erica Garza <erica.garza@activeprospect.com>, Megan
Nilles <megan.nilles@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 3/30/22, 11:25 AM
To: Chad S <chad@smac-digital.com>
CC: Steve Rafferty <steve@activeprospect.com>, Angela Mirabella <Angela@smacxinc.com>,
Ahmed Taleb <ahmed.taleb@activeprospect.com>, Erica Garza
<erica.garza@activeprospect.com>, Megan Nilles <megan.nilles@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 3/30/22, 2:38 PM
To: mike@leadsdatamatch.com
CC: Chad S <chad@smac-digital.com>, Angela Mirabella <Angela@smacxinc.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 3/30/22, 3:02 PM
To: f.saleem@urthaccess.com
CC: Chad S <chad@smac-digital.com>, Angela Mirabella <Angela@smacxinc.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 3/30/22, 3:03 PM
To: r.ortiz@digiconnectllc.com
CC: Chad S <chad@smac-digital.com>, Angela Mirabella <Angela@smacxinc.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 3/30/22, 3:03 PM
To: j.luke@callpipe.net
CC: Chad S <chad@smac-digital.com>, Angela Mirabella <Angela@smacxinc.com>
------------------------
From: Mike <mike@leadsdatamatch.com>
Date: 3/30/22, 3:37 PM
To: "Justin Myers" <justin.myers@activeprospect.com>
CC: "Chad S" <chad@smac-digital.com>, "Angela Mirabella" <Angela@smacxinc.com>
------------------------
From: Chad S <chad@smac-digital.com>
Date: 3/31/22, 9:56 AM
To: Justin Myers <justin.myers@activeprospect.com>
CC: Angela Mirabella <angela@smacxinc.com>
------------------------

From: angela <angela@smacxinc.com>
Date: 4/5/22, 2:09 PM
To: "Justin Myers" <justin.myers@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/6/22, 9:49 AM
To: angela <Angela@smacxinc.com>
------------------------
From: angela <Angela@smacxinc.com>
Date: 4/6/22, 10:53 AM
To: "Justin Myers" <justin.myers@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/6/22, 11:10 AM
To: angela <Angela@smacxinc.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 4/6/22, 11:23 AM
To: "Justin Myers" <justin.myers@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/6/22, 11:35 AM
To: angela <Angela@smacxinc.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/6/22, 1:16 PM
To: angela <Angela@smacxinc.com>
------------------------
From: angela <Angela@smacxinc.com>
Date: 4/6/22, 1:26 PM
To: "Justin Myers" <justin.myers@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/6/22, 1:27 PM
To: angela <Angela@smacxinc.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 4/6/22, 2:08 PM
To: "Justin Myers" <justin.myers@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/6/22, 2:56 PM
To: angela <Angela@smacxinc.com>
------------------------
From: angela <Angela@smacxinc.com>
Date: 4/6/22, 3:02 PM

Exhibits to Preston Declaration

To: "Justin Myers" <justin.myers@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/6/22, 3:10 PM
To: Chad S <chad@smac-digital.com>
CC: Angela Mirabella <Angela@smacxinc.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/6/22, 3:12 PM
To: angela <Angela@smacxinc.com>
------------------------
From: "ActiveProspect, Inc." <noreply@mail.hellosign.com>
Date: 4/6/22, 4:59 PM
To: f.saleem@urthaccess.com
Reply-to: HelloSign
------------------------
From: Chad S <chad@smac-digital.com>
Date: 4/6/22, 5:11 PM
To: Justin Myers <justin.myers@activeprospect.com>
CC: Angela Mirabella <angela@smacxinc.com>
------------------------
From: "ActiveProspect, Inc." <noreply@mail.hellosign.com>
Date: 4/7/22, 8:51 AM
To: f.saleem@urthaccess.com
Reply-to: HelloSign
------------------------
From: Chad S <chad@smac-digital.com>
Date: 4/7/22, 9:57 AM
To: Justin Myers <justin.myers@activeprospect.com>
CC: Angela Mirabella <angela@smacxinc.com>, techsupport@smacxinc.com
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/7/22, 10:12 AM
To: Chad S <chad@smac-digital.com>
CC: Angela Mirabella <Angela@smacxinc.com>, techsupport@smacxinc.com, Erica Garza
<erica.garza@activeprospect.com>
------------------------
From: Cara DiValerio <cara.divalerio@activeprospect.com>
Date: 4/7/22, 11:08 AM
To: Graig Sadek <graig.sadek@yourinsurancegroup.net>, Angela@smacxinc.com
CC: Justin Myers <justin.myers@activeprospect.com>
------------------------
From: Chad S <chad@smac-digital.com>
Date: 4/7/22, 11:58 AM
To: Justin Myers <justin.myers@activeprospect.com>
CC: Angela Mirabella <angela@smacxinc.com>, Tech Support

Exhibits to Preston Declaration

<techsupport@leadsdatamatch.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 4/7/22, 2:08 PM
To: "Cara DiValerio" <cara.divalerio@activeprospect.com>
CC: "Graig Sadek" <graig.sadek@yourinsurancegroup.net>, "Justin Myers"
<justin.myers@activeprospect.com>
------------------------
From: Chad S <chad@smac-digital.com>
Date: 4/7/22, 6:26 PM
To: Steve Rafferty <steve@activeprospect.com>
------------------------
From: Graig Sadek <Graig.Sadek@yourinsurancegroup.net>
Date: 4/8/22, 7:35 AM
To: angela <angela@smacxinc.com>, Cara DiValerio <cara.divalerio@activeprospect.com>
CC: Justin Myers <justin.myers@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/8/22, 11:28 AM
To: f.saleem@urthaccess.com
------------------------
From: angela <angela@smacxinc.com>
Date: 4/11/22, 2:20 PM
To: "ActiveProspect" <support@activeprospect.zendesk.com>
------------------------
From: Chad S <chad@smac-digital.com>
Date: 4/11/22, 4:56 PM
To: Justin Myers <justin.myers@activeprospect.com>
CC: Angela Mirabella <angela@smacxinc.com>



------------------------
From: angela <angela@smacxinc.com>
Date: 4/12/22, 12:18 PM
To: "ActiveProspect" <support+id29702@activeprospect.zendesk.com>
CC: "support" <support@activeprospect.zendesk.com>
------------------------
From: Chad S <chad@smac-digital.com>
Date: 4/13/22, 3:21 PM
To: ActiveProspect <support+id29701@activeprospect.zendesk.com>
CC: Angela Mirabella <angela@smacxinc.com>, Erica Garza
<erica.garza@activeprospect.com>, Techsupport <techsupport@smacxinc.com>
------------------------
From: "Chad S (ActiveProspect)" <support@activeprospect.zendesk.com>
Date: 4/13/22, 3:22 PM

Exhibits to Preston Declaration

To: Angela Mirabella <angela@smacxinc.com>
Reply-to: ActiveProspect
------------------------
From: erica.garza@activeprospect.com
Date: 4/14/22, 8:34 AM
To: angela@smacxinc.com
------------------------
From: angela <angela@smacxinc.com>
Date: 4/14/22, 8:58 AM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/14/22, 9:59 AM
To: f.saleem@urthaccess.com
CC: Justin Guido <justin.guido@activeprospect.com>, admin@digiconnectllc.com
------------------------
From: Justin Guido <justin.guido@activeprospect.com>
Date: 4/14/22, 6:47 PM
To: f.saleem@urthaccess.com
CC: admin@digiconnectllc.com, Justin Myers <justin.myers@activeprospect.com>
------------------------
From: ActiveProspect <support@activeprospect.com>
Date: 4/14/22, 6:48 PM
To: f.saleem@urthaccess.com
------------------------
From: support@activeprospect.com
Date: 4/15/22, 12:39 PM
To: f.saleem@urthaccess.com
------------------------
From: angela <angela@smacxinc.com>
Date: 4/18/22, 1:34 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 4/18/22, 9:25 PM
To: angela <angela@smacxinc.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 4/18/22, 9:44 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: "Perrin, Catherine (catherine.perrin@activeprospect.com)" <system@sent-via.netsuite.com>
Date: 4/20/22, 7:56 AM
To: f.saleem@urthaccess.com
Reply-to: "Perrin, Catherine"

Exhibits to Preston Declaration

-------------------------
From: angela <Angela@smacxinc.com>
Date: 4/20/22, 5:21 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
CC: "SMACX Sales" <sales@smacxinc.com>
-------------------------
From: angela <Angela@smacxinc.com>
Date: 4/21/22, 9:49 AM
To: "Erica Garza" <erica.garza@activeprospect.com>
CC: "SMACX Sales" <sales@smacxinc.com>
-------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 4/21/22, 9:57 AM
To: SMAC X <sales@smacxinc.com>, Caitie Clarke <caitie.clarke@activeprospect.com>,
angela <Angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 4/21/22, 10:12 AM
To: "Erica Garza" <erica.garza@activeprospect.com>
CC: "SMAC X" <sales@smacxinc.com>, "Caitie Clarke" <caitie.clarke@activeprospect.com>
-------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 4/21/22, 10:16 AM
To: SMAC X <sales@smacxinc.com>, Caitie Clarke <caitie.clarke@activeprospect.com>,
angela <Angela@smacxinc.com>
-------------------------
From: erica.garza@activeprospect.com
Date: 4/21/22, 10:20 AM
To: angela@smacxinc.com, Angela Mirabella <sales@smacxinc.com>, Caitie Clarke
<caitie.clarke@activeprospect.com>
-------------------------
From: erica.garza@activeprospect.com
Date: 4/21/22, 11:17 AM
To: angela@smacxinc.com, Angela Mirabella <sales@smacxinc.com>, Caitie Clarke
<caitie.clarke@activeprospect.com>
-------------------------
From: Justin Guido <justin.guido@activeprospect.com>
Date: 4/22/22, 7:35 PM
To: "admin@digiconnectllc.com admin@digiconnectllc.com" <admin@digiconnectllc.com>
CC: chad@smac-digital.com, Arthur Holmes <arthur.holmes@activeprospect.com>,
"jay@ellipses.net" <jay@ellipses.net>, "rony.albaalbaky@ellipses.net"
<rony.albaalbaky@ellipses.net>, "r.ortiz@digiconnectllc.com" <r.ortiz@digiconnectllc.com>,
"f.saleem@urthaccess.com" <f.saleem@urthaccess.com>, "j.luke@callpipe.net"
<j.luke@callpipe.net>
-------------------------
From: Justin Guido <justin.guido@activeprospect.com>

Exhibits to Preston Declaration

Date: 4/22/22, 7:37 PM
To: "f.saleem@urthaccess.com f.saleem@urthaccess.com" <f.saleem@urthaccess.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 4/25/22, 1:01 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 4/25/22, 1:18 PM
To: angela <angela@smacxinc.com>, Caitie Clarke <caitie.clarke@activeprospect.com>
------------------------
From: "Khatri, Muid (muid.khatri@activeprospect.com)" <system@sent-via.netsuite.com>
Date: 4/26/22, 10:43 AM
To: f.saleem@urthaccess.com, justin.guido@activeprospect.com,
mubeen.hussain@activeprospect.com
Reply-to: "Khatri, Muid"
------------------------
From: Accounting SMAC-X <accounting@smacxinc.com>
Date: 4/26/22, 2:04 PM
To: "Mubeen Hussain" <mubeen.hussain@activeprospect.com>
CC: "Chad S" <chad@smac-digital.com>, "Erica Garza" <erica.garza@activeprospect.com>,
"Catherine Perrin" <catherine.perrin@activeprospect.com>, "Angela Mirabella"
<angela@smacxinc.com>
------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 4/28/22, 10:52 AM
To: angela <Angela@smacxinc.com>
------------------------
From: angela <Angela@smacxinc.com>
Date: 4/28/22, 11:08 AM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: angela <Angela@smacxinc.com>
Date: 4/29/22, 10:41 AM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 5/2/22, 3:10 PM
To: Chad S <chad@smac-digital.com>
CC: Angela Mirabella <angela@smacxinc.com>
------------------------
From: Chad S <chad@smac-digital.com>
Date: 5/2/22, 3:20 PM
To: Justin Myers <justin.myers@activeprospect.com>
CC: Angela Mirabella <angela@smacxinc.com>
------------------------

Exhibits to Preston Declaration

From: Erica Garza <erica.garza@activeprospect.com>
Date: 5/3/22, 1:01 PM
To: angela <Angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 5/3/22, 1:21 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
CC: "angela" <Angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 5/3/22, 1:21 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
CC: "angela" <Angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 5/5/22, 8:28 AM
To: "Justin Myers" <justin.myers@activeprospect.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 5/5/22, 10:30 AM
To: "Erica Garza" <erica.garza@activeprospect.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 5/5/22, 11:04 AM
To: angela <angela@smacxinc.com>
-------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 5/5/22, 11:15 AM
To: angela <angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 5/5/22, 12:23 PM
To: "Justin Myers" <justin.myers@activeprospect.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 5/5/22, 12:27 PM
To: angela <angela@smacxinc.com>
-------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 5/5/22, 4:16 PM
To: angela <Angela@smacxinc.com>
-------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 5/9/22, 8:24 AM
To: angela <Angela@smacxinc.com>
-------------------------

Exhibits to Preston Declaration

From: angela <Angela@smacxinc.com>
Date: 5/9/22, 8:34 AM
To: "Erica Garza" <erica.garza@activeprospect.com>
-------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 5/9/22, 9:10 AM
To: angela <Angela@smacxinc.com>, Caitie Clarke <caitie.clarke@activeprospect.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 5/11/22, 10:38 AM
To: angela <angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 5/11/22, 10:49 AM
To: "Justin Myers" <justin.myers@activeprospect.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 5/11/22, 10:57 AM
To: angela <angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 5/11/22, 11:15 AM
To: "Justin Myers" <justin.myers@activeprospect.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 5/11/22, 12:22 PM
To: angela <angela@smacxinc.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 5/11/22, 12:50 PM
To: angela <angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 5/11/22, 2:27 PM
To: "Justin Myers" <justin.myers@activeprospect.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 5/11/22, 3:37 PM
To: angela <angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 5/11/22, 4:23 PM
To: "Justin Myers" <justin.myers@activeprospect.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 5/11/22, 4:29 PM

Exhibits to Preston Declaration

To: "Justin Myers" <justin.myers@activeprospect.com>, "Chad" <chad@smac-digital.com>
------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 5/11/22, 4:49 PM
To: angela <angela@smacxinc.com>
CC: Chad <chad@smac-digital.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 5/16/22, 12:56 PM
To: "Erica Garza" <erica.garza@activeprospect.com>
------------------------
From: erica.garza@activeprospect.com
Date: 5/16/22, 1:10 PM
To: angela@smacxinc.com
------------------------
From: Justin Guido <justin.guido@activeprospect.com>
Date: 5/17/22, 11:48 AM
To: "admin@digiconnectllc.com admin@digiconnectllc.com" <admin@digiconnectllc.com>,
chad@smac-digital.com
CC: Arthur Holmes <arthur.holmes@activeprospect.com>, "jay@ellipses.net"
<jay@ellipses.net>, "rony.albaalbaky@ellipses.net" <rony.albaalbaky@ellipses.net>,
"r.ortiz@digiconnectllc.com" <r.ortiz@digiconnectllc.com>, "f.saleem@urthaccess.com"
<f.saleem@urthaccess.com>, "j.luke@callpipe.net" <j.luke@callpipe.net>, Justin Myers
<justin.myers@activeprospect.com>
------------------------
From: Chad S <chad@smac-digital.com>
Date: 5/17/22, 11:53 AM
To: Justin Guido <justin.guido@activeprospect.com>
CC: "admin@digiconnectllc.com admin@digiconnectllc.com" <admin@digiconnectllc.com>,
Arthur Holmes <arthur.holmes@activeprospect.com>, jay@ellipses.net,
rony.albaalbaky@ellipses.net, r.ortiz@digiconnectllc.com, f.saleem@urthaccess.com,
j.luke@callpipe.net, Justin Myers <justin.myers@activeprospect.com>
------------------------
From: Justin Guido <justin.guido@activeprospect.com>
Date: 5/17/22, 12:17 PM
To: Chad S <chad@smac-digital.com>
CC: "admin@digiconnectllc.com admin@digiconnectllc.com" <admin@digiconnectllc.com>,
Arthur Holmes <arthur.holmes@activeprospect.com>, jay@ellipses.net,
rony.albaalbaky@ellipses.net, r.ortiz@digiconnectllc.com, f.saleem@urthaccess.com,
j.luke@callpipe.net, Justin Myers <justin.myers@activeprospect.com>
------------------------
From: "ActiveProspect" <marketing@activeprospect.com>
Date: 5/17/22, 1:58 PM
To: <f.saleem@urthaccess.com>
------------------------
From: Tech Support <techsupport@smacxinc.com>

Exhibits to Preston Declaration

Date: 6/15/22, 11:19 AM
To: "support" <support@activeprospect.com>
CC: "ericagarza" <erica.garza@activeprospect.com>, "Angela Mirabella"
<angela@smacxinc.com>, "chad" <chad@smac-digital.com>, "Tech Support"
<techsupport@smacxinc.com>
------------------------
From: ActiveProspect <support@activeprospect.zendesk.com>
Date: 6/15/22, 11:19 AM
To: Techsupport <techsupport@smacxinc.com>
CC: Erica Garza <erica.garza@activeprospect.com>, Chad S <chad@smac-digital.com>, Angela
Mirabella <angela@smacxinc.com>
Reply-to: ActiveProspect
------------------------
From: "Ashley Thomas (ActiveProspect)" <support@activeprospect.zendesk.com>
Date: 6/15/22, 11:29 AM
To: Techsupport <techsupport@smacxinc.com>
CC: Erica Garza <erica.garza@activeprospect.com>, Chad S <chad@smac-digital.com>, Angela
Mirabella <angela@smacxinc.com>
Reply-to: ActiveProspect
------------------------
From: Tech Support <techsupport@smacxinc.com>
Date: 6/15/22, 4:14 PM
To: "ActiveProspect" <support+id30292@activeprospect.zendesk.com>
CC: "support" <support@activeprospect.zendesk.com>, "Erica Garza"
<erica.garza@activeprospect.com>, "Chad S" <chad@smac-digital.com>, "Angela Mirabella"
<angela@smacxinc.com>
------------------------
From: "Sable Childs (ActiveProspect)" <support@activeprospect.zendesk.com>
Date: 6/15/22, 4:22 PM
To: Techsupport <techsupport@smacxinc.com>
CC: Erica Garza <erica.garza@activeprospect.com>, Chad S <chad@smac-digital.com>, Angela
Mirabella <angela@smacxinc.com>
Reply-to: ActiveProspect
------------------------
From: ActiveProspect <support@activeprospect.zendesk.com>
Date: 6/17/22, 5:02 PM
To: Techsupport <techsupport@smacxinc.com>
CC: Erica Garza <erica.garza@activeprospect.com>, Chad S <chad@smac-digital.com>, Angela
Mirabella <angela@smacxinc.com>
Reply-to: ActiveProspect
------------------------
From: ActiveProspect <support@activeprospect.zendesk.com>
Date: 6/21/22, 5:01 PM
To: Techsupport <techsupport@smacxinc.com>
CC: Erica Garza <erica.garza@activeprospect.com>, Chad S <chad@smac-digital.com>, Angela
Mirabella <angela@smacxinc.com>

Exhibits to Preston Declaration

Reply-to: ActiveProspect
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 6/22/22, 1:42 PM
To: accounting <accounting@smacxinc.com>
CC: Erica Garza <erica.garza@activeprospect.com>, Angela Mirabella
<Angela@smacxinc.com>, Chad S <chad@smac-digital.com>, ActiveProspect Accounting
<accounting@activeprospect.com>
-------------------------
From: Catherine Perrin <catherine.perrin@activeprospect.com>
Date: 6/22/22, 4:18 PM
To: Accounting SMAC-X <accounting@smacxinc.com>
CC: Mubeen Hussain <mubeen.hussain@activeprospect.com>, Chad S <chad@smac-
digital.com>, Erica Garza <erica.garza@activeprospect.com>, Angela Mirabella
<angela@smacxinc.com>, Yung Chung <yung.chung@activeprospect.com>
-------------------------
From: Accounting SMAC-X <accounting@smacxinc.com>
Date: 6/23/22, 1:25 PM
To: "Justin Myers" <justin.myers@activeprospect.com>
CC: "Erica Garza" <erica.garza@activeprospect.com>, "Angela Mirabella"
<Angela@smacxinc.com>, "Chad S" <chad@smac-digital.com>, "ActiveProspect Accounting"
<accounting@activeprospect.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 6/24/22, 11:12 AM
To: "ActiveProspect" <support+id30276@activeprospect.zendesk.com>
CC: "Tech Support" <techsupport@smacxinc.com>, "Erica Garza"
<erica.garza@activeprospect.com>, "Chad" <chad@smac-digital.com>
-------------------------
From: Mubeen Hussain <mubeen.hussain@activeprospect.com>
Date: 7/14/22, 8:10 PM
To: accounting <accounting@smacxinc.com>
CC: Catherine Perrin <catherine.perrin@activeprospect.com>, Ellen Martinez
<ellen.martinez@activeprospect.com>, Erica Garza <erica.garza@activeprospect.com>, Angela
Mirabella <Angela@smacxinc.com>, Chad S <chad@smac-digital.com>, ActiveProspect
Accounting <accounting@activeprospect.com>, Justin Guido
<justin.guido@activeprospect.com>
-------------------------
From: Accounting SMAC-X <accounting@smacxinc.com>
Date: 7/18/22, 10:48 AM
To: "Mubeen Hussain" <mubeen.hussain@activeprospect.com>
CC: "Catherine Perrin" <catherine.perrin@activeprospect.com>, "Ellen Martinez"
<ellen.martinez@activeprospect.com>, "Erica Garza" <erica.garza@activeprospect.com>,
"Angela Mirabella" <Angela@smacxinc.com>, "Chad S" <chad@smac-digital.com>,
"ActiveProspect Accounting" <accounting@activeprospect.com>, "Justin Guido"
<justin.guido@activeprospect.com>

Exhibits to Preston Declaration

-------------------------
From: Mubeen Hussain <mubeen.hussain@activeprospect.com>
Date: 7/18/22, 1:30 PM
To: Accounting SMAC-X <accounting@smacxinc.com>
CC: Catherine Perrin <catherine.perrin@activeprospect.com>, Ellen Martinez
<ellen.martinez@activeprospect.com>, Erica Garza <erica.garza@activeprospect.com>, Angela
Mirabella <Angela@smacxinc.com>, Chad S <chad@smac-digital.com>, ActiveProspect
Accounting <accounting@activeprospect.com>, Justin Guido
<justin.guido@activeprospect.com>
-------------------------
From: Justin Guido <justin.guido@activeprospect.com>
Date: 8/8/22, 2:07 PM
To: "f.saleem@urthaccess.com f.saleem@urthaccess.com" <f.saleem@urthaccess.com>
-------------------------
From: Erica Garza <erica.garza@activeprospect.com>
Date: 10/17/22, 4:11 PM
To: angela <Angela@smacxinc.com>, Chad S <chad@smac-digital.com>, Justin Myers
<justin.myers@activeprospect.com>, Portia Seeley <portia.seeley@activeprospect.com>
-------------------------
From: "Hussain, Mubeen (mubeen.hussain@activeprospect.com)" <system@sent-
via.netsuite.com>
Date: 11/4/22, 12:55 PM
To: f.saleem@urthaccess.com
Reply-to: "Hussain, Mubeen"
-------------------------
From: "ActiveProspect, Inc. (accounting@activeprospect.com)" <system@sent-
via.netsuite.com>
Date: 11/23/22, 1:14 PM
To: f.saleem@urthaccess.com
Reply-to: "Khatri, Muid"
-------------------------
From: "Billing, ActiveProspect (billing@activeprospect.com)" <system@sent-via.netsuite.com>
Date: 12/5/22, 7:07 AM
To: f.saleem@urthaccess.com
Reply-to: "Billing, ActiveProspect"
-------------------------
From: "Billing, ActiveProspect (billing@activeprospect.com)" <system@sent-via.netsuite.com>
Date: 12/5/22, 10:27 PM
To: f.saleem@urthaccess.com
Reply-to: "Billing, ActiveProspect"
-------------------------
From: Tech Support <techsupport@smacxinc.com>
Date: 1/3/23, 12:06 PM
To: "support" <support@activeprospect.com>
CC: "chad" <chad@smac-digital.com>, "cyrus" <cyrus@smacxinc.com>, "Angela Mirabella"
<angela@smacxinc.com>

Exhibits to Preston Declaration

------------------------
From: ActiveProspect <support@activeprospect.zendesk.com>
Date: 1/3/23, 12:07 PM
To: Techsupport <techsupport@smacxinc.com>
CC: Chad S <chad@smac-digital.com>, Angela Mirabella <angela@smacxinc.com>
Reply-to: ActiveProspect
------------------------
From: "Ashley Thomas (ActiveProspect)" <support@activeprospect.zendesk.com>
Date: 1/3/23, 1:05 PM
To: Techsupport <techsupport@smacxinc.com>
CC: Chad S <chad@smac-digital.com>, Angela Mirabella <angela@smacxinc.com>
Reply-to: ActiveProspect
------------------------
From: "Ashley Thomas (ActiveProspect)" <support@activeprospect.zendesk.com>
Date: 1/4/23, 1:42 PM
To: Techsupport <techsupport@smacxinc.com>
CC: Chad S <chad@smac-digital.com>, Angela Mirabella <angela@smacxinc.com>
Reply-to: ActiveProspect
------------------------
From: ActiveProspect <support@activeprospect.zendesk.com>
Date: 1/4/23, 2:01 PM
To: Techsupport <techsupport@smacxinc.com>
CC: Chad S <chad@smac-digital.com>, Angela Mirabella <angela@smacxinc.com>
Reply-to: ActiveProspect
------------------------
From: Tech Support <techsupport@smacxinc.com>
Date: 1/4/23, 2:03 PM
To: "ActiveProspect" <support+id32163@activeprospect.zendesk.com>
CC: "support" <support@activeprospect.zendesk.com>, "chad s" <chad@smac-digital.com>,
"angela mirabella" <angela@smacxinc.com>
------------------------
From: Tech Support <techsupport@smacxinc.com>
Date: 1/4/23, 2:41 PM
To: "ActiveProspect" <support+id32163@activeprospect.zendesk.com>
CC: "chad" <chad@smac-digital.com>, "Angela Mirabella" <angela@smacxinc.com>
------------------------
From: "The ActiveProspect Team" <marketing@activeprospect.com>
Date: 2/9/23, 1:54 PM
To: <f.saleem@urthaccess.com>
------------------------
From: "The ActiveProspect Team" <marketing@activeprospect.com>
Date: 3/2/23, 3:17 PM
To: <f.saleem@urthaccess.com>
------------------------
From: angela <angela@smacxinc.com>
Date: 4/4/23, 8:51 PM

Exhibits to Preston Declaration

To: "Justin Myers" <justin.myers@activeprospect.com>
-------------------------
From: "The ActiveProspect Team" <marketing@activeprospect.com>
Date: 4/6/23, 1:42 PM
To: <f.saleem@urthaccess.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/7/23, 9:30 AM
To: angela <angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 4/7/23, 9:43 AM
To: "Justin Myers" <justin.myers@activeprospect.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/7/23, 10:15 AM
To: angela <angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 4/7/23, 10:16 AM
To: "Justin Myers" <justin.myers@activeprospect.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/7/23, 10:25 AM
To: angela <angela@smacxinc.com>
-------------------------
From: angela <angela@smacxinc.com>
Date: 4/7/23, 10:32 AM
To: "Justin Myers" <justin.myers@activeprospect.com>
-------------------------
From: Justin Myers <justin.myers@activeprospect.com>
Date: 4/7/23, 1:21 PM
To: angela <angela@smacxinc.com>
-------------------------
From: justin.myers@activeprospect.com
Date: 4/7/23, 1:32 PM
To: angela@smacxinc.com
-------------------------
From: "The ActiveProspect Team" <marketing@activeprospect.com>
Date: 5/4/23, 3:14 PM
To: <f.saleem@urthaccess.com>
-------------------------

Exhibits to Preston Declaration

Exhibit 23

**Subject:** Your Daily Digest for Chatter
**From:** Chatter <noreply@chatter.salesforce.com>
**Date:** 3/17/21, 11:39 PM
**To:** "yung.chung@activeprospect.com" <yung.chung@activeprospect.com>

# Hi Yung, catch up on activity from the past day.

## To Me



**Account: BirdDog Media, LLC**

| | |
|---|---|
| **Billing Address** | 125 S. Wilke Rd, Suite 204<br>Arlington Heights, IL 60005<br>United States |
| **Website** | http://www.birddogmedia.com/ |
| **Account Owner** | Jon DelRusso |
| **Client Success Manager** | Jon DelRusso |

Yung Chung
Friday, March 12, 2021 2:09 PM
**@Shea Craig**

Hey! Heard from Jon that BirdDog was told by JobCase that they do not need to claim TF certs because they're doing it for them. Obviously we want to be mindful of tone but
… More

    3 older comments

    Jon DelRusso
    **@Yung Chung @Shea Craig** Yes, they specifically mentioned not having to claim as many certs because Jobcase was already doing it.
    Wednesday, March 17, 2021 11:54 AM

    Shea Craig
    Hmmm... That's definitely not been the case from the conversations I've had with them. Though, that doesn't mean it's the reality. Jason and I just spoke with them about the publisher program,
    … More
    Wednesday, March 17, 2021 11:58 AM

    Yung Chung
    **@Shea Craig** Asking sales leadership what the play is here. Hold tight!
    Wednesday, March 17, 2021 1:24 PM

## What I Follow

**Opportunity: DigitalBGA, LLC- KF**

| | |
|---|---|
| **Account Name** | DigitalBGA, LLC |
| **Close Date** | 3/31/2021 |
| **Amount** | $4,000.00 |
| **Opportunity Owner** | Katie Feeney |

Yung Chung

Edited Wednesday, March 17, 2021 2:55 PM

- Inbound lead from Eric.
- Did a great demo
  - Showed great interest in Data Enhancements and Compliance
- He owes us a 6-month ramp volume (Katie will follow up)
- Katie left a VM

**Opportunity: USA Medicare Advisors - KF - LC for FB Lead Ads**

| | |
|---|---|
| **Account Name** | USA Medicare Advisors |
| **Close Date** | 4/30/2021 |
| **Amount** | $3,000.00 |
| **Opportunity Owner** | Katie Feeney |

Yung Chung

Wednesday, March 17, 2021 2:51 PM

- For deals where there's no strong reason 'why' they would close this quarter we need to generate the urgency.
  - Locking in pricing
  - Pushing out start date an extra month but ensuring that the

… More

Yung Chung

Wednesday, March 17, 2021 2:45 PM

- They pushed a couple weeks.
- Everything is O&O and they're confident in their compliance. They want the ability to sell their overflow leads.
  - Ask them who they're working with and look for

… More

**Opportunity: AWL - KF - Enhanced Real Time Bidding**

| | |
|---|---|
| **Account Name** | All Web Leads |
| **Close Date** | 4/15/2021 |
| **Amount** | $14,500.00 |
| **Opportunity Owner** | Katie Feeney |

Yung Chung

Wednesday, March 17, 2021 2:43 PM

- Katie to call Allison to schedule a proposal meeting to go over the ERTB deck.
- **Goal getting the scoping call set up next week.**



**Opportunity: Globe Life - KF -TF Annual**
**Account Name**     Globe Life
**Close Date**     4/1/2021
**Amount**     $1,000.00
**Opportunity Owner**     Katie Feeney

Yung Chung
Wednesday, March 17, 2021 2:41 PM

- Katie spoke with Syed. Decision is with Legal & Security.
  - They want info on our data security protocols
    - Posted into InfoSec (Slack)
  - Waiting on them for Vendor Questionnaire



**Opportunity: SMAC - 2nd Upsell - JM**
**Account Name**     SMAC X - Master
**Close Date**     3/31/2021
**Amount**     $25,000.00
**Opportunity Owner**     Justin Myers

Yung Chung
Wednesday, March 17, 2021 11:43 AM

- Justin traveling to Orange County, CA to meet with them in two weeks.
- Proposed a couple numbers
  - They want LC on all their sub accounts - Justin proposed $100k
  - Currently using a different phone

… More



**Opportunity: Biz Focused - JM - FS**
**Account Name**     Biz Focused
**Close Date**     3/31/2021
**Amount**     $4,500.00
**Opportunity Owner**     Justin Myers

Yung Chung
Wednesday, March 17, 2021 11:40 AM

- Justin's been going back and forth via text at night.
- He's a PAYG. No real volume.
- 600k/year
- Justin quoted .10/lead. .09 with discount.


- LeadsPedia customer.

**Opportunity: Unyte Home LLC-JM-Full**
**Account Name**     Unyte Home LLC
**Close Date**     4/30/2021