**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **KELLY PINN,** | § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 1:23-mc-00974 |
| **ACTIVEPROSPECT, INC.,** | § § | |
| Non-Party/Defendant. | § § § | |

**NON-PARTY ACTIVEPROSPECT'S RESPONSE TO PLAINTIFF PINN'S
MOTION TO COMPEL**

Non-Party ActiveProspect, Inc. ("AP") hereby responds to Plaintiff's Motion to Compel (Dkt. No. 1) (hereinafter "Motion") and would respectfully show the Court as follows:

## I.     INTRODUCTION

Plaintiff served two subpoenas on Non-Party ActiveProspect seeking information related to a single issue: whether Plaintiff, an individual named Kelly Pinn, consented to receive marketing calls from certain companies in April 2022. Despite extensive, good-faith cooperation by AP—a non-party with ***no financial interest or other stake*** in the underlying litigation—Plaintiff has turned the subpoenas into a ten-month fishing expedition designed to obtain information that is massively disproportionate to the needs of the case. Further, after leaving AP with no choice but to hire outside counsel to curtail its excessive demands, Plaintiff has come before this Court seeking unnecessary (and in certain cases, draconian) remedies. As demonstrated herein, the information Plaintiff seeks is irrelevant, disproportionate to the needs of the case, and/or unduly burdensome, and thus her Motion should be denied in its entirety. Further, Plaintiff has violated her obligations under Federal Rule 45 to avoid imposing excessive and undue burdens on AP, particularly because Plaintiff could have obtained discovery from the primary source, *not* AP. Because AP has now spent many months expending time and resources addressing demands that fall well outside the scope of Rule 45, AP also seeks leave herein to recoup its reasonable costs and attorneys' fees permitted by Federal Rule 45(d)(1).[1]

## II.    BACKGROUND

Plaintiff filed suit in the Northern District of California alleging violations of the Telephone Consumer Protection Act ("TCPA") because she received "several" phone calls from certain

---

[1] As explained herein, AP made every effort to accommodate Plaintiff over the course of many months. It did not do so because Plaintiff's requests were relevant or reasonably tailored; it did so in an effort to avoid needless waste of party and judicial resources. Unfortunately, those good-faith efforts were in vain.

1

defendants in April 2022 despite being on a "Do Not Call" list. [*See* Declaration of Matthew Gates In Support of AP's Response to Plaintiff's Motion to Compel ("Gates Decl."), Ex. 1 at ¶¶ 40, 44.] In their answer, defendants asserted a simple defense: that Plaintiff consented to be contacted via the website healthinstantly.org. [*Id.*, Ex. 2 at 8 ("Tenth Affirmative Defense")]. That narrow defense resulted in Plaintiff's subpoenas to AP. Critically, the entity responsible for obtaining consent (and generating the information underlying consent) is a company called SMAC Digital, Inc. ("SMAC"). SMAC is not a party to the underlying action but is the owner of the information related to Plaintiff's consent. Despite being the primary source of information, Plaintiff made no effort to subpoena SMAC, as explained herein. Instead, Plaintiff elected to subpoena AP, which merely provides technology services to companies like SMAC.[2]

AP received Plaintiff's first subpoena in December 2022 ("First Subpoena"), and the parties agreed to extend AP's time to respond to January 2023. [Motion, Declaration of Ethan Preston ("Preston Decl.") at ¶ 13.] AP served its responses on January 25, 2023 explicitly objecting "***to the entirety of the Subpoena as overbroad, harassing, and not proportional to the needs of the case***" because, among other things, Plaintiff sought information that should be obtained from the defendants or from other parties. [Motion, Preston Decl., Ex. 16 at 1 (emphasis added).] Despite these objections, AP proceeded in good-faith by: (1) responding to Plaintiff's subpoena and inviting dialogue; (2) engaging in substantive discussions with Plaintiff's counsel regarding responsive information; (3) and producing documents and a detailed declaration in less than six weeks from receiving the subpoena. [Gates Decl., Exs. 4-6; *see also* Ex. 3.] AP also confirmed it was "continuing to conduct an email search for any additional communications responsive to the subpoena" and that would supplement if additional information was found. [*Id.*, Ex. 6.]

---

[2] AP provides a "session replay" technology called "TrustedForm" to assist with documenting consent in compliance with the TCPA. [Gates Decl., Ex. 3.]

Despite AP's efforts, Plaintiff responded with an eleven-page, single-spaced letter accusing AP of waiving all its objections, unilaterally expanding the scope of her original requests, and demanding, without any legal basis for doing so, that AP "make arrangements for a deposition." [Motion, Preston Decl., Ex. 16 at 1-10.] AP, however, continued to work in good faith, including participating in continuous meet-and-confers to accommodate Plaintiff's requests. [Gates Decl., Exs. 7-11.] And despite repeated demands for more information outside the scope of Plaintiff's subpoena, AP continued to cooperate with Plaintiff and produced additional information along with a second declaration. [*Id*., Exs. 10-12.] However, Plaintiff only demanded *more*.

Specifically, Plaintiff subsequently demanded email communications and documents related to certain AP customers, including SMAC. [Gates Decl., Exs. 7, 8.] While AP hesitated to allow an even further expansion of the First Subpoena, it nevertheless agreed to continue working on providing the requested information. [*Id*.] After numerous email exchanges attempting to narrow Plaintiff's requests (once again), AP agreed it would provide "order forms" for certain customers, including SMAC. [*Id*.] Plaintiff's counsel indicated that he "might not need anything else if they have the information I need." [*Id*.; *see also* Motion, Preston Decl., Ex. 18]. Given this information **was clearly outside the scope of the First Subpoena**, AP suggested Plaintiff serve a supplemental subpoena to secure the specific order forms, and AP offered, in good faith, to accept service. [Motion, Preston Decl., Ex. 18].[3] Plaintiff served its supplemental subpoena ("Second Subpoena") in April 2023, and AP produced responsive documents in June 2023. [Gates Decl., Ex. 9.][4] AP also offered to provide a declaration authenticating the documents thereafter, which it

---

[3] It is ironic Plaintiff is seeking to compel documents in response to the Second Subpoena when it was suggested by AP to assist Plaintiff in obtaining information that was clearly outside the scope of the First Subpoena. This is one of numerous examples of Plaintiff's failure to approach this process in a reasonable manner.

[4] AP specifically inquired as to whether Plaintiff would like to receive "a formal response" to the supplemental subpoena [Gates Decl., Ex. 9.] Though Plaintiff requested a formal response in response to Plaintiff's first subpoena (*id*., Ex. 5 at 2), **Plaintiff did not respond to this request**.

3

eventually did. [*Id*, Exs. 9, 10, 13.] Once again, however, this was not enough. Following AP's June supplementation, Plaintiff made even more demands on AP, including that it provide *another* declaration detailing every step it had taken to search for and produce documents. [Motion, Preston Decl., Ex. 21 at 1]. Moreover, Plaintiff requested all TrustedForm certificates ever claimed by SMAC—***amounting to more than a million documents***—which was well beyond the "order forms" AP agreed to produce. Given the sheer scope of information requested by Plaintiff, AP responded it was "not willing to produce all TrustedFrom Certificates claimed by SMAC" during the period requested mainly because the information was owned by SMAC and its customers. [*Id*., Ex. 21 at 2.][5] Instead of addressing AP's concerns in a reasonable manner, Plaintiff filed this Motion.

AP was left with no choice but to hire outside counsel, who immediately began discussions with Plaintiff's counsel to attempt to resolve the dispute without Court intervention. [Gates Decl., Ex. 14.] Following the initial meet-and-confer, AP's counsel confirmed the parties' dispute was narrowed to: (1) production of a letter related to SMAC; (2) certain additional email communications; and (3) production of SMAC certificates. [*Id.*, Ex. 15.] As to the certificates, AP's counsel reiterated this information belonged to SMAC, and that it was "puzzled" as to why Plaintiff had not subpoenaed that company. [*Id*., Ex. 15 at 1.] Notwithstanding, AP agreed to request permission from SMAC following Plaintiff's agreement to substantially narrow its request. [*Id*.][6] Over the next several days, AP's counsel reached out to SMAC and continued to diligently address additional matters to eliminate the parties' disputes. [*See* Exs. 20-22 at 1.]

---

[5] AP made clear Plaintiff would need to seek this information from SMAC. [Motion, Preston Decl., Ex. 21 at 2]. AP also stated it did not want to hire outside counsel but would do so if necessary. [*Id*.]
[6] As promised, AP's General Counsel and outside counsel sent multiple requests to SMAC requesting permission to produce the information requested by Plaintiff's counsel. [*See* Exs. 16-19.]

4

Importantly, despite Plaintiff's agreement to narrow the request for information related to SMAC, it subsequently reverted to demanding information related to the one million certificates related to SMAC, prompting AP's counsel to request another meet and confer. [*Id.*, Ex. 23 at 1-2; Ex. 24 at 1.] Following this meet and confer, and despite the constantly evolving nature of Plaintiff's demands, the parties agreed AP would perform revised searches in the hopes of ultimately eliminating the parties' disputes. [*See* Ex. 25 at 1; Ex. 26 at 1.] Once again, AP also continued to put aside its objections to address other matters raised by Plaintiff to avoiding burdening the Court. [*Id.*, Ex. 26 at 1; Ex. 27 at 1.] Finally, one week before AP's deadline to submit its response to Plaintiff's Motion, AP confirmed it had sought additional permission to seek the revised information from SMAC (among other matters) and asked Plaintiff to confirm it would withdraw its Motion. [*Id.*, Ex. 28 at 1.] Not surprisingly, Plaintiff refused, and despite additional correspondence from AP's counsel attempting to resolve the remaining issues, AP was left with no choice but to submit this Response to Plaintiff's Motion. [*See* Ex. 29-31 at 1.]

### III. <u>ARGUMENT</u>

Plaintiff seeks to compel information from AP regarding roughly a million documents that belong to a different party (SMAC) despite the fact that ***only a single certificate***—the one associated with Plaintiff Kelly Pinn—is relevant to her underlying case. [*See* Gates Decl., Ex. 14 at 1; Ex. 28 at 1; Ex. 29 at 1.] Notwithstanding the wholly improper nature of the request, Plaintiff argues AP has waived its objections, or at the very least, its objections are meritless and should be ignored. [Motion at 4-8]. As a result, Plaintiff next contends AP should be compelled all documents other documents requested by Plaintiff. [Motion at 9.] Finally, Plaintiff demands AP provide a declaration explaining every detail of its efforts to respond to Plaintiff's subpoenas over the last seven months, and if it does not, seeks the extraordinary and draconian relief of having an

"independent" auditor enter AP's business to conduct searches for the Plaintiff. [*Id*.] As demonstrated herein, Plaintiff's assertions are without merit.

As an initial matter, Plaintiff's demands are *per se* unreasonable in violation of the express language of Rule 45(d) requiring Plaintiff "to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). Setting aside the improper nature of the request, Plaintiff's specific grounds in support of her Motion warrant denial. First, AP's objections were timely and should be considered by this Court given AP's status as a non-party acting in good faith. Plaintiff's attempt to play procedural games after many months of conferring is unfounded. Second, AP's objections are well grounded. As demonstrated herein, Plaintiff seeks information regarding SMAC, an unrelated third party, and the requests encompass over a million documents that have no relevance whatsoever to Plaintiff's underlying litigation. Because Plaintiff's demands are overly broad, oppressive, and disproportionate to the needs of the underlying case, they should be denied in their entirety. Third, even if the information sought by Plaintiff was relevant and reasonable (it is not), much of it is owned by SMAC, and AP does not have permission to produce it. Fourth, Plaintiff's request for a detailed declaration is moot, and Plaintiff's request for an auditor should be rejected out of hand. Finally, given the undue burden Plaintiff has imposed on AP (since December of 2022), AP seeks leave herein to file a motion to recover its reasonable costs and attorneys' fees pursuant to Federal Rule 45(d)(1).

1. **AP's objections were timely and have not been waived**

Plaintiff asserts AP's objections to Plaintiff's First Subpoena were waived because they were "not specific," and its objections to Plaintiff's Second Subpoena were waived because they were untimely. [Motion at 4-5]. Plaintiff is incorrect. As demonstrated above, Plaintiff timely responded to the First Subpoena, and objected "to the entirety of the Subpoena as overbroad,

6

harassing, and not proportional to the needs of the case." [Motion, Preston Decl., Ex. 16 at 1.] AP then continued to confer with Plaintiff for months regarding the information requested. As for the Second Subpoena, AP conferred directly with Plaintiff about whether additional "formal" responses were necessary, to which Plaintiff did not respond. [Gates Decl., Ex. 9.] Thereafter, AP nevertheless dutifully raised its objections during the meet and confer process in addition to attempting to resolve the parties' disputes. [Gates Decl., Exs 7-11; *see also* Motion, Preston Decl. at Exs. 18, 21 at 2.] Plaintiff's waiver argument might have some merit if, for example, AP completely disregarded the subpoena or failed to respond at all. That is far from the case here.

Furthermore, assuming AP's objections were untimely (they were not), courts will not bar consideration of objections where: (1) the subpoena is overbroad and exceeds the bounds of fair discovery; (2) the subpoenaed party is a nonparty acting in good faith; and (3) counsel for the party and counsel for the subpoenaed party were in contact concerning compliance prior to the time the witness challenged the legal basis for the subpoena. *See Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 43-44 (N.D. Tex. 2015).[7] And, a court need only find *one* of these factors to consider objections as timely. *In re Denture Cream Products Liability Litigation*, 292 F.R.D. 120, 124 (D.D.C. 2013) (finding that contact between the parties regarding the subpoena by itself to be sufficient to consider untimely objections).

Here, each factor is met. As to the first, Plaintiff's subpoenas are overbroad and exceed what Plaintiff would even be entitled to in the underlying lawsuit. [*See* Section III, *infra*.]. As to the second and third factors, there is no dispute that AP and Plaintiff's counsel continuously conferred regarding compliance with Plaintiff's requests *prior* to Plaintiff's allegations of waiver

---

[7] *See also In re Ex Parte Application of Grupo Mexico SAB de CV for an Order to Obtain Discovery for Use in a Foreign Proceeding*, No. 3:14-MC-0073-G, 2015 WL 12916415, at *4 (N.D. Tex. Mar. 10, 2015), aff'd sub nom. Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd., 821 F.3d 573 (5th Cir. 2016) (applying this standard).

and that AP, a non-party, acted in good faith to resolve them. [Gates Decl., Exs 7-11; *see also* Motion, Preston Decl. at Exs. 18, 21 at 2.][8] Under these circumstances, AP's objections are properly considered by this Court. *Skodam Films*, LLC, 313 F.R.D. at 47.

### 2. Plaintiff's demands are overly broad, oppressive, and vastly disproportionate to the needs of the underlying case

Whether a subpoena is reasonable is determined according to the facts of the case, the party's need for the documents, and the nature and importance of the litigation. *Skodam Films, LLC*, 313 F.R.D. at 44. In determining whether a subpoena is overly broad, burdensome, or oppressive, Courts also consider the following factors: (1) relevance; (2) the need of the party; (3) the breadth of the request; (4) the timeframe covered; (5) the particularity of the requests; and (6) the burden imposed. *Id*. (internal citations and quotations omitted). Further, courts consider the expense and inconvenience when the request involves a non-party. *Id*. Here, there is no reasonable dispute that Plaintiff's demands are overly broad, oppressive, and unduly burdensome.

Specifically, Plaintiff's subpoenas to AP originated from a single issue in the underlying case: whether Plaintiff visited the healthinstantly.org website and consented to receive phone calls from the defendants. [Gates Decl., Ex. 1 at ¶¶ 40, 44; *Id*., Ex. 2 at 8.] And after receiving Plaintiff's First Subpoena, AP produced documents and declarations responsive to *that specific issue*. [*Id*., Exs. 3-6.] Had Plaintiff left it there, neither party would be before this Court. Unfortunately, Plaintiff did not. Instead, despite AP's good faith efforts to diligently address the First Subpoena, Plaintiff sent AP a letter asserting all of its objections were waived. [Motion, Preston Decl., Ex. 16.] Seizing upon that assertion, Plaintiff then massively expanded the scope of its requests. And these requests were not limited ***to the single consent certificate*** related to Plaintiff, but instead

---

[8] Contrary to the positions taken in Plaintiff' Motion, Plaintiff's own counsel acknowledged AP has operated diligently and in good faith, particularly compared to other third parties. [Gates Decl., Ex. 15 at 1.]

8

included large numbers of emails and other data related to SMAC and other non-parties, including over one million certificates claimed by SMAC that have nothing to do with Plaintiff. [Gates Decl., Exs. 7-11; Preston Decl. at Exs. 18; *Id*., Ex. 21 at 1-2.] Despite AP's best efforts to both narrow and continue to accommodate these requests as well to avoid further expense and Court intervention, Plaintiff refused to accept any reasonable compromise, leaving AP no choice but to address these matters before the Court.[9]

In short, the information Plaintiff seeks is irrelevant to the underlying litigation, vastly overbroad, and unduly burdensome. Moreover, it belongs to SMAC, not AP, and AP does not have permission to produce it. [*See* Section III, 3, *infra*.][10] For these reasons, Plaintiff's motion to compel additional information from AP should be denied in its entirety.

> 3. **Even if the information sought by Plaintiff was not irrelevant, overly broad and unduly burdensome, AP does not have permission to produce it**

Importantly, this issue represents the bulk of the parties' discovery dispute, at least in terms of the volume of information Plaintiff is seeking. [Motion at 5-7] As demonstrated herein, Plaintiff originally demanded that AP produce all TrustedForm Certificates claimed by SMAC within a particular timeframe—a request that covers more than one million certificates. Despite being told on numerous occasions that AP does not own this information, Plaintiff cites general propositions

---

[9] In its Motion, Plaintiff contends Pinn's certificate was fabricated, and it alleges some sort of vast conspiracy involving different entities that may have been involved in that fabrication. [*See* Motion, Preston Decl. at ¶¶ 6-22.] However, none of these entities (including SMAC) are owned or controlled by AP, nor has Plaintiff accused AP of fabricating information or otherwise engaging in fraudulent activity. Moreover, Plaintiff does not explain why it needs access ***to a million irrelevant certificates*** related to SMAC to address the veracity ***of a single certificate*** related to the Plaintiff. Not only has it failed to explain its position, it acknowledges in its Motion it is withholding pertinent information from AP and the Court. [*See* Motion, Preston Decl. at ¶ 6 (noting that while Pinn's counsel believes the AP link "is fraudulent or inauthentic," the details "are confidential attorney work product" and Plaintiff is not in a position "to identify the perpetrator of this fraud.").]

[10] While Plaintiff's requests for information are always evolving, AP was nevertheless able to recently confirm that the universe of remaining information at issue *relates directly to SMAC*. [Gates Decl. Ex. 31 at 1.]

9

of law in its Motion regarding possession or control of information of a third party, and then casually asserts AP is permitted to produce it here. [Motion at 5-7.]. Plaintiff is incorrect.

As discussed in the declaration of AP's General Counsel, AP's strict privacy and confidentiality protections are not just a matter of company policy, they are a matter of contractual and other legal obligations. [*See* Declaration of Jason Smith in Support of AP's Response to Plaintiff's Motion to Compel ("Smith Decl.") at ¶¶ 9-11.] With respect to SMAC in particular, the agreements between the companies do not permit AP to share SMAC's information unless AP provides notice and an opportunity to object, or it receives SMAC's express written consent. [*Id.*, ¶ 9.] And given the sheer scope of Plaintiff's requests (which have included demands for 4,000 certificates and metadata associated with another 500,000 certificates), producing that information without permission could expose AP to potential legal risk. [*Id.* ¶ 9.] Mindful of these risks, and also mindful of the Court's admonition that AP and Plaintiff use best efforts to resolve their disputes, AP and its counsel sought permission to produce certain information pursuant to the protective order governing the litigation. [*Id.* ¶ 10; *see also* Gates Decl., Exs. 16-18.] Despite these efforts, SMAC refused, citing privacy concerns, as well as potential disclosure of trade secret and confidential information. [Smith Decl., ¶ 10; *see also* Gates Decl., Ex. 19.][11]

Critically, Plaintiff could have avoided burdening AP and the Court with this demand by sending a subpoena directly to SMAC. Instead, it chose not to, and refuses to do so to this day. [Gates Decl., Ex. 31 at 1.] While Plaintiff finally provided an explanation as to why it has not done so (*Id.*, Ex. 32), it in no way justifies Plaintiff's refusal *to even attempt* to serve SMAC with a subpoena. In sum, in the event the Court determines SMAC's information is somehow relevant,

---

[11] SMAC offered to confer with AP. [Gates Decl., Ex. 19.] However, given the volume of information, it is difficult, if not impossible, to review metadata for over 500,000 certificates to determine what is private, confidential, or trade secrets. This confirms, yet again, the sheer scope of the burden Plaintiff has sought to impose on AP.

10

AP respectfully submits Plaintiff should be required to seek it from SMAC. Alternatively, if the Court orders AP to produce it, AP will dutifully comply with any such order.

4. **<u>AP has complied with its obligations to conduct reasonable searches and to provide sufficient detail regarding those searches</u>**

Finally, Plaintiff asks the Court compel AP to provide information describing its past and subsequent document searches.[12] [Motion at 9.] However, AP already provided this information to Plaintiff (*see* Gates Decl., Ex. 13, Ex. 14 at 1, Ex. 27 at 1), and it is also included in the Declaration of AP's General Counsel. [Smith Decl., ¶¶ 2-6.]  Thus, Plaintiff's request is moot.

Plaintiff also demands that AP explain why "it did not find or produce" certain emails identified by Plaintiff. [Motion at 9.] This has already been explained to Plaintiff as well. Three custodians identified by AP as potentially having responsive information departed the company prior to service of Plaintiffs subpoenas, and the rest of the emails were searched for, but do not exist. [Gates Decl., Ex. 15 at 1; Ex. 23 at 1-2; Ex. 26 at 1; Ex. 27 at 1; Ex. 28 at 1; Smith Decl. at ¶¶ 2-6.]

Lastly, Plaintiff asserts that AP's production of additional information following confirmation that "all responsive information had been produced" indicates the need for more information about AP's search procedures. Plaintiff's contention is misleading given the state of the record. From service of the First Subpoena to AP, counsel for AP and Plaintiff engaged in numerous discussions regarding the appropriate scope of the subpoena, and counsel for Plaintiff openly acknowledged that "the meet and confer process in this case hasn't been neat or concise." [Gates Dec., 33 at 2.][13] In certain cases AP agreed to produce information, and in certain cases AP sought to narrow the scope information. [*See e.g.,* Motion, Preston Decl. at Ex. at 5 (seeking to

---

[12] AP is not aware of authority in this Circuit requiring a declaration detailing a party's search efforts in the manner requested by Plaintiff.
[13] This was due, in large part, to Plaintiff's constantly shifting demands. [*See* Section II, *supra*.]

11

narrow requests to information that might actually be relevant, including limited to Kelly Pinn or the actual defendants in the case).] Following AP's retention of counsel, and renewed requests for information, AP simply produced it. [Gates Decl., Ex. 20 at 1; Ex. 21. at 1; Ex 23 at 1-2; Ex. 26 at 1; Ex. 27 at 1.] And not because it was responsive or relevant, but because AP sought to minimize burdening the Court with immaterial disputes. In any event, Plaintiff's request that this process warrants any additional relief is without merit.

### 5. AP Requests leave to file a motion seeking its reasonable costs and fees incurred in addressing Plaintiff's subpoenas and Motion

Pursuant to Federal Rule 45(d)(1), it is well-settled that parties have a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and that the Court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Skodam Films, LLC*, 313 F.R.D. at 58. Further, "an order requiring . . . a subpoenaed parties reasonable attorneys' fees ***is mandated*** where the party issuing the subpoena failed to take reasonable steps to avoid imposing undue burden or expense . . . ." *Id*. (emphasis added).

Here, there can be no reasonable dispute that Plaintiff has imposed undue burdens on AP in violation of Rule 45(d)(1). While the underlying litigation involves a narrow dispute—whether Plaintiff consented to receive a handful of calls from the defendants—Plaintiff served two subpoenas on AP seeking information well beyond the needs of the underlying case, including over one million certificates that belong to an unrelated third party, SMAC. And despite production of numerous other documents, emails and declarations by AP (and dozens of attempts by in-house and outside counsel to resolve the subpoenas), Plaintiff has refused to cooperate in a good-faith, reasonable manner. [Gates Decl., Exs. 3-31; *see also* Smith Decl. at ¶ 12 (noting AP has expended over 100 hours of time attempting to resolve the subpoenas absent attorney time and costs).

Moreover, Plaintiff intentionally placed the entire burden of its discovery requests on AP when it has known for many months that most (if not all) the information it seeks belongs to SMAC—a third party that Plaintiff has refused to subpoena to this day. [Motion, Preston Decl., Ex. 21 at 2 (AP's General counsel confirming Plaintiff would need to seek certificates and related information from SMAC); Gates Decl., Ex. 14 at 1; Ex. 15 at 1; Ex. 23 at 2; Ex. 24 at 1; Ex. 27 at 1; Ex 28 at 1; Ex. 29 at 1; Ex. 30 at 1; Ex. 31 at 1; *see also* Smith Decl. at ¶ 12.]

In view of the foregoing, AP seeks leave to file a motion with the Court to address reasonable fees incurred in responding to Plaintiff's subpoenas and Motion. *Skodam Films, LLC*, 313 F.R.D. at 58-59 (finding the party imposed undue burdens on the non-party and providing a briefing schedule regarding reasonable fees and costs in the event the parties could not agree on reasonable fees during the meet and confer mandated by the Court).[14]

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Non-Party ActiveProspect should be denied in its entirety. Further, AP respectfully requests leave to file a motion seeking to recover its costs and attorneys' fees incurred in addressing Plaintiff's subpoenas and Motion.

---

[14] AP informed Plaintiff of its intent to seek reasonable costs and fees for having to address discovery more appropriately directed to another party (SMAC), and for having to prepare this response, among other matters. [Gates Decl, Ex 30 at 1-2.] If the Court determines fees are appropriate, AP will confer with Plaintiff pursuant to Local Rule CV-54 regarding the amount and reasonableness of those fees prior to filing its motion.

Dated: October 2, 2023

Respectfully submitted,

By: */s/ John D. Saba*
John D. Saba, Jr.
Texas State Bar No. 24037415
john@wittliffcutter.com
Matthew K. Gates
Texas State Bar No. 24069770
Matt@wittliffcutter.com
**Wittliff Cutter PLLC**
510 Baylor Street
Austin, Texas 7870
Telephone: (512) 960-4388
Facsimile: (512) 960-4869

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ John D. Saba*
John D. Saba, Jr.