# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| IN RE SUBPOENAS SERVED ON ACTIVEPROSPECT, INC. | **DECLARATION OF ETHAN PRESTON SUPPORTING KELLY PINN'S REPLY** |
| | REDACTED VERSION |
| | No. 1:23-mc-0974 |
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated, | Underlying Case No. 4:22-cv-04048-DMR, pending in the United States Court for the Northern District of California, before Judge Donna M. Ryu |
| Plaintiffs, | |
| v. | |
| CONSUMER CREDIT COUNSELING FOUNDATION, INC., NATIONAL BUDGET PLANNERS OF SOUTH FLORIDA, INC., Florida corporations, and ISHWINDER JUDGE, an individual, DIGITAL MEDIA SOLUTIONS, LLC, a Delaware company, and DOES 1-10, inclusive, | |
| Defendants. | |

ETHAN PRESTON hereby declares:

1.      My name is Ethan Preston. I am an attorney at law licensed to practice before all of the courts of the State of California and Texas. I am counsel of record for Plaintiff Kelly Pinn ("Pinn"), and have personal knowledge of all of the facts set forth in this declaration and could testify thereto if called to do so.

2.      **ActiveProspect's Website:** On its website, ActiveProspect, Inc. ("AP") promotes the authentication features of its TrustedForm certificates as competitive advantages to its prospective clients. AP's website states "TrustedForm certificates provide unbiased, third-party

documentation of consent for lead buyers. In the event of a TCPA complaint, you can easily view the certificate and share it with your legal team." ActiveProspect, Inc., *TrustedForm Retain API*, https://activeprospect.com/trustedform/api-retain. Elsewhere, AP's website states

> Issue independent certificates of authenticity for the leads you generate. TrustedForm Certify allows you to provide proof of consent for each lead you generate - for your own use or to sell - documenting exactly when and where proof of consent was obtained. [] Benefits of TrustedForm Certify  Whether you are generating leads for your own use or to sell, TrustedForm Certify allows you to document consent to prove prior express written consent to call was obtained.

ActiveProspect, Inc., *TrustedForm Certify*, https://activeprospect.com/trustedform/certify. (*See also* August 21, 2023 Preston Decl. ¶5, ECF No. 1-1 (hereinafter, "1st Preston Decl.," providing other AP statements regarding the authentication features of TrustedForm certificates).) In AP's documentation for the TrustedForm API (application programming interface), AP describes the "check-in" function:

> Check-in supports various actions for a TrustedForm Certificate (e.g. extending the claim period on certificates). Failing to make the authenticated API call within the standard claim period (72 hours of generating the lead) will result in the irretrievable deletion of the certificate.

ActiveProspect, Inc., *TrustedForm Certificate Check-in*, https://activeprospect.redoc.ly/docs/trustedform/api/v3.0/tag/TrustedForm-Certificate-Check-in. True and correct screenshots of the websites quoted above are attached as Exhibit 1 to this Declaration.

3.     **The Pinn Certificate:** Pinn's motion to compel (the "Motion") and supporting declaration describe a TrustedForm certificate which incorporates Pinn's name and telephone number (the "Pinn Certificate"). (*See* 1st Preston Decl. ¶3, Ex. 2.) The Pinn Certificate indicates that it was created on February 2, 2022—before Pinn received the calls at issue in this case, in April 2022. (*See* 1st Preston Decl. ¶3, Exs. 1 at 1-3, 2 at 1-2.) The Pinn Certificate also indicates that Pinn allegedly used the IP 76.233.5.193 to access healthinstantly.org, where she allegedly

consented to calls from the defendants. (*See id.*, Ex. 2 at 1-2.)

4.     **Pinn's Subpoena to AT&T:** In March 2023, Pinn served a subpoena on AT&T Corp. for "documents concerning all AT&T accounts which used the IP address 76.233.5.193 on or about February 2, 2022." On or about April 25, 2023, AT&T Corp. made a production in response to the subpoena, which demonstrated the person using the 76.233.5.193 IP address was not Pinn. A true and correct copy of this production is attached as Exhibit 2 to this Declaration, except that it has been partially redacted to protect the identity the actual user of that IP address, while providing sufficient information to show that Pinn is not the user.

5.     **Meet and Confer Process on the First Subpoena:** Pinn served her first subpoena on AP in December 2022. (*See* 1st Preston Decl. ¶13, Ex. 15.) AP provided a response on January 25, 2023. (*See id.*, Ex. 16.) On March 6, 2023, Pinn sent a meet and confer letter to AP regarding its response to the December 2022 subpoena. (*See id.* ¶14, Ex. 17.) Between January 25, 2023 and March 6, 2023, AP did not communicate or meet and confer with Pinn.

6.     **SMAC Certificate Metadata:** On March 31, 2023, AP emailed Pinn. A true and correct copy of this email is attached as Exhibit 3. The email included a comma-separated value (.csv) file exported from its database(s) which contained a portion of the metadata associated with the Pinn Certificate (including the 76.233.5.193 IP address). (*See* Ex. 3 at 7-8.) AP produced this .csv file when the Pinn Certificate itself had "expired," was not online, and AP needed several days to restore access to the Pinn Certificate (at Pinn's request). (*Id.* at 1-6.)

7.     **Orders to Show Cause Have Already Been Entered Against Chad Smanjak's Companies:** The Student Loan Robocall Operation identified in the FCC order includes Chad Smanjak, Amir Nathan Dawood, Global Lynks LLC, Urth Access, LLC, and SMAC Digital Inc. (*Cf.* FCC, *Order*, *In re Urth Access, LLC*, No. EB-TCD-22-00034232 ¶8 (Dec. 8, 2022),

https://docs.fcc.gov/public/attachments/DA-22-1271A1.pdf; 1st Preston Decl. ¶10.) California Secretary of State records identify Chad Smanjak as the Chief Executive Officer, Secretary, Chief Financial Officer of SMAC Digital Inc. ("SMAC"). A true and correct copy of these records is attached as Exhibit 4 to this Declaration. The record shows that Chad Smanjak also controls Global Lynks, LLC's assets (specifically, the "healthinstantly.org" domain name and website where Pinn allegedly consented to calls), and Dawood acts as Global Lynks, LLC's agent for service of process. (1st Preston Decl. ¶¶7-10, Exs. 5 to 9.) Pinn has already moved to compel compliance with a subpoena on Global Lynks, LLC and Dawood, and that motion is the subject of continuing litigation and multiple orders to show case. (*See id*., Ex. 5 (Findings, Certification and Order to Show Cause re: Contempt for Amir Dawood, Dawood & Company, Global Lynks LLC, *In re Subpoenas to Amir Dawood, Dawood & Company, Global Lynks LLC*, No. 22-mc-00240 (C.D. Cal. Apr. 20, 2023), ECF No. 19 ¶3); Order to Show Cause re Contempt, *In re Subpoenas to Amir Dawood, Dawood & Company, Global Lynks LLC*, No. 22-mc-00240 (C.D. Cal. Sept. 11, 2023), ECF No. 30.) A true and correct copy of the September 11, 2023 order is attached as Exhibit 5 to this Declaration.

8.      **AP's August 2022 Productions:** On August 8, 2023, AP made a supplemental production that included 307 (non-duplicative) emails and the native format (json) production of a Slack channel regarding SMAC and certain TrustedForm certificates that SMAC had claimed. The json production indicates that ActiveProspect prepared a draft warning letter to SMAC on January 20, 2022, and provided participants an online link to that warning letter. (*See* 1st Preston Decl. ¶27.) I have reviewed AP's August 2023 production to identify the various people associated with specific email addresses contained within the production, including the individuals discussed in reference to the August 2022 production below.

9. ███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

10.     **AP and SMAC's February 10, 2022 Call:** AP's August 2023 production included a calendar invitation for a call on February 10, 2022 which included SMAC (including Chad Smanjak), AP's CFO/COO, CEO (and executive assistant), co-founder, and Vice President of Client Success. A true and correct excerpt of this calendar invitation is attached as Exhibit 7 to this Declaration. AP's August 2023 production included an email chain between AP's CEO and Smanjak between February 11 and February 16, 2022. A true and correct copy of this email chain is attached as Exhibit 8 to this Declaration. In emails dated February 11, 2022, AP's CEO stated: "Thanks for taking the time to explain the business yesterday. I'm thinking about other ways to structure the relationship that would be mutually beneficial" and "I'm thinking a partnership structure is more appropriate." (Ex. 8 at 4, 6.)

11.     **AP and SMAC's March 2022 Contract:** AP's August 2023 production included two email chains between AP (including its CEO and a Sales Director) and Smanjak between March 15 and 16, 2022. True and correct excerpts of these email chains (including a Word document named "Referral Agreement SMAC X 2022-03-15.docx") are attached as Exhibits 9 and 10 to this Declaration. These emails reflect that AP and SMAC entered into a new contract on March 16, 2022, under which AP paid SMAC a referral fee "equal to one month of the Referred Customer's contracted revenue" for at the time of signing and during renewal. (Ex. 10

at 4.) While AP's August 2023 production includes "Referral Agreement SMAC X 2022-03-15.docx," it does not include an actual signed up of the March 16 contract that was evidently executed via "HelloSign." (Ex. 9 at 2.) AP has never produced the signed version of the contract.

12.     **AP Begins to Onboard SMAC's Referrals:** AP's August 2023 production included an email chain between AP (including its CEO and the Sales Director) and SMAC between March 18 and 30, 2022. A true and correct excerpt of this email chain is attached as Exhibit 11 to this Declaration. The email chain reflects that, AP began to onboard SMAC's referrals beginning in March 28, 2022, and that some of SMAC's referrals used the Student Loan Robocalling Operation mailing and email addresses (specifically including Urth Access), and these referrals were relayed to AP's CEO. (Ex. 11 at 1-2.) I have reviewed the California Secretary of State records available online, and cannot find the names of SMAC's referrals, Verified Data LLC, Optin Data LLC, and Reliable Data LLC.

13.     **Pinn's Email Headers and AP's Missing Email:** Pinn served subpoenas on Namecheap, Inc. ("Namecheap") and Zoho Corporation ("Zoho") for non-content email headers for email addresses using the domain name "urthaccess.com" and "angela@smacxinc.com," and afterwards provided AP with a zip file named "Missing ActiveProspect Emails.zip," which contained 207 email headers for emails between AP and Student Loan Robocall Operation email addresses (including SMAC). (*See* 1st Preston Decl. ¶¶19-22.) True and correct excerpts of these subpoenas and their respective responses are attached as Exhibit 12, except Pinn has redacted a fileshare URL. A true and correct copy of the email headers in "Missing ActiveProspect Emails.zip" is included as Exhibit 22 to first declaration. AP's August 2022 production does not produce any emails between March 17 and March 27, but the headers identify six (6) missing emails between SMAC and AP's Sales Director and/or Vice President of Client Success between

March 17 and 28, 2022. AP produced 29 emails involving SMAC or Urth Access sent between March 28 and May 5, 2022, but the email headers indicate there are at least 88 emails missing during that time period. In total, AP's August 2022 production includes 162 emails sent after its January 21, 2023 letter involving SMAC—the email headers indicate there are 150 emails missing from that time period. AP identifies three former employees who were custodians, Randy Bourgeois, Catherine Perrin, and Meghan Flint. (See Smith Decl. ¶5.) Pinn's headers do not include any emails sent or received by Randy Bourgeois and Meghan Flint in or after 2022. All of the email headers involving Catherine Perrin also involve one or more AP employee who are presumably still employees.

14.     **Post-Motion Meet and Confer Process:** On September 11, 2023, AP's counsel counsel emailed Pinn's counsel and alerted Pinn that SMAC had claimed over a million TrustedForm certificates, and that the process for retrieving these certificates took hours. (*See* Gates Decl., Ex. 14 at 1.) Pinn responded to this email the same day. (*See* Gates Decl., Ex. 33 at 1-2.) As Pinn told AP, prior to this email, Pinn was not aware of either the volume of the SMAC certificates or the claimed burden associated with producing them: AP had "not provided this detail about the volume of SMAC's TrustedForm certificates previously" and "this [was] the first time ActiveProspect has provided this detail about storage and produciton of SMAC's TrustedForm certificates." (*See id.*, Ex. 33 at 2.) In Pinn's initial response, she offered to meet and confer on ways to "narrow[] the subpoena." (*Id.*)

15.     A true and correct excerpt of an email chain between counsel for Pinn and AP between September 7 and September 14, 2022 is attached as Exhibit 13 to this Declaration. In the email chain, AP indicated it had "conducted additional searches, and [] located no additional information" and Pinn responded in relevant part:

> while I appreciate you have conducted additional searches and have not found
> additional documents, ActiveProspect does not provide adequate information to
> answer Pinn's questions about ActiveProspect's prior and current document
> searches. [] The assertion ActiveProspect has not found any of the missing emails
> is troubling. With all due respect, a bald assertion that "the information is simply
> not available" is not going to resolve the issue.

(Ex. 13 at 1, 2.)

16.     On September 21, 2023, Pinn and AP met and conferred by telephone regarding

the subpoena and the SMAC TrustedForm certificates, and Pinn sent a follow-up email

memorializing their discussion. (*See* Gates Decl., Ex. 25 at 1.) Pinn proposed to limit AP's initial

production to metadata from AP's databases for all SMAC TrustedForm certificates generated

within specific time periods, "to use the database entries to further narrow her request for the

actual certificates, and that she intends to narrow her sample of actual certificates to well under

4,000." (*Id. See also* Gates Decl., Ex. 24 at 2 [in September 20 email, "Pinn does not seek all of

SMAC's certificates themselves, only the corresponding database entries"].)

17.      A true and correct excerpt of an email chain between counsel for Pinn and AP

between September 7 and September 26, 2022 is attached as Exhibit 14 to this Declaration. By

September 26, Pinn and AP had largely agreed Pinn's proposal for SMAC certificate-related

discovery (subject to SMAC's consent). (Ex. 14 at 4-5.) This agreement fell apart and AP sought

its attorneys' fees on September 26, after Pinn advised AP that she would not withdraw her

Motion with respect to the relief sought regarding AP's search for documents. (*Id*. at 2-4.)

> With respect to the missing email, I appreciate your representation that AP
> custodians have searched their own records, that those searches are complete, and
> that no other records were found. AP has not otherwise provided any explanation
> for the vast bulk of missing documents, such as AP's internal Slack channel for
> SMAC and the corresponding linked documents [] As I indicated in my
> September 14 email, AP's general assurances have not adequately addressed the
> concerns identified in Pinn's motion. Taking the record as a whole, AP's
> description of its search does not provide adequate assurance that its search was
> complete and effective.

(*Id*. at 4.) AP then contended that Pinn "insist[ed] on maintaining a motion without specifying why you are doing so." (*Id*. at 2.) Pinn responded by identifying the open disputes where the Pinn and AP had not reached final resolution. (*Id*. at 1-2.) With respect to the missing documents, Pinn stated:

> AP says it has produced everything except for the email from a handful of former employees which it deleted, but does not state whether the other emails identified by Pinn were never sent or destroyed, and has not any other alternative explanation why they were not produced. If AP claims the missing emails were in fact never sent, the parties have a factual dispute. If AP claims it destroyed email of existing employees, it should explain when and how, and produce documents responsive to category 4 ("All documents concerning any document retention policy under which any document which would be responsive to this subpoena was lost, destroyed, delinked, dereferenced, deleted, and/or access to such document was lost"). To the extent AP claims it deletes former employee email, AP's operative Workspace/Google Vault data retention settings also fall under category 4.

(*Id*. at 2.) AP promised to "respond to [these] points below by" September 27, but never did so. (*Id*. at 1.) AP's records indicate that SMAC did not withhold consent to the production of its metadata on September 27. (Gates Decl., Ex. 19 at 1.)

18.    **AP's September 18, 2023 Production:** Pinn's Motion identified email referencing a SalesForce instance maintained by AP which included records related to a "SMAC X – Master" account. (1st Preston Decl. ¶28.) After Pinn filed her Motion, on September 18, 2023, AP produced a copy of that SalesForce instance as an Excel file named "(CONFIDENTIAL) SMAC Export-09_15_2023-16_25_46.xlsx." That Excel file contained URLs where recordings of video conferences between AP and SMAC could be accessed. On September 20 and 21, Pinn requested copies of some of these recordings, identified as "AP + SMAC November 9, 2021" and "SMAC-X LLC | ActiveProspect May 5, 2022," which AP produced on September 24. (*See* Gates Decl., Ex. 24 at 3-4, Ex. 25 at 1.)

19.     **AP's Video Recordings:** In the November 2021 recording, which concerned and involved SMAC, a member of AP's Customer Success team states "I shared in the internal Slack channel the links to the documents that are in the client drive" at about 2:26 to 2:35. In the May 2022 recording,



20.     **Certification:** Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 10, 2023          By:   s/Ethan Preston
                                         Ethan Preston

Exhibit 1

active/prospect     Products ⌄   Solutions ⌄   Industry ⌄   Resources ⌄   Pricing     Get a demo     Get started today



**trustedform**     Overview   Products ⌄   Use case ⌄   How it works   Certify web SDK   Pricing

**Choose TrustedForm for unbiased, third-party documentation of consent.**

# Benefits of TrustedForm Certify

Whether you are generating leads for your own use or to sell, TrustedForm Certify allows you to **document consent to prove prior express written consent** to call was obtained.

In just a few easy steps, you can put in place a system that



**TCPA Compliance**

Consent to call is mandatory and being able to prove it allows you - and your lead buyer - to better protect yourself against TCPA litigation



**Increase lead value**

Be the best in class by certifying the leads you generate and show lead buyers you value quality.

**activeprospect**

Products ⌄    Solutions ⌄    Industry ⌄    Resources ⌄    Pricing

# TrustedForm Retain API

An API for verifying and documenting proof of consent.

TrustedForm certificates provide unbiased, third-party documentation of consent for lead buyers. In the event of a TCPA complaint, you can easily view the certificate and share it with your legal team.



Exhibit 2



AT&T
11760 US HWY 1, SUITE 300
NORTH PALM BEACH FL 33408

(800) 635-6840
(888) 938-4715 (Fax)

CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL
RULES OF EVIDENCE 902(11) AND 902(13)

GLDC FILE NUMBER: 3639428

I, Alex Yllanes, attest, under penalties of perjury by the laws of the United States of America pursuant to
28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed
by AT&T, and my title is Legal Compliance Analyst.   I am qualified to authenticate the records
attached hereto because I am familiar with how the records were created, managed, stored, and
retrieved.  I state that the records attached hereto are true duplicates of the original records in the
custody of AT&T.  I further state that:

     a.     All records attached to this certificate were made at or near the time of the occurrence of
the matter set forth by, or from information transmitted by, a person with knowledge of those matters,
they were kept in the ordinary course of the regularly conducted business activity of AT&T , and they
were made by AT&T  as a regular practice; and

     b.     Such records were generated by AT&T's electronic process or system that produces an
accurate result, to wit:

     1. The records were copied from electronic device(s), storage medium(s), or file(s) in the
custody of AT&T in a manner to ensure that they are true duplicates of the original records; and

     2. The process or system is regularly verified by AT&T, and at all times pertinent to the
records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules
of Evidence.

*Alex Yllanes*

04-25-2023
Date

3639428
03/16/2023



# SUBSCRIBER / IP USAGE

| 76.233.5.193 | U-Verse |
|---|---|

### BILLING PARTY

| Account Number: | 250277263 |
|---|---|
| Account Name: | EM███ Su███ |
| Billing Address: | ████████████ ,CORAL SPRINGS ,FL 33076-0000 |
| Acct Creation: | 2017-04-25 |
| Account Status: | Open |
| Account Email: | ████████@ATT.NET |

### SERVICE INFORMATION

| Name: | EM███ Su███ |
|---|---|
| Service Address: | ████████ ,CRL SPRNGS ,FL 33076-0000 |
| Contact Phone: | (954) ████████ |
| Contact Email: | ████████@MSN.COM |

### IP Usage

| IP Address | Start Date (UTC) | End Date (UTC) |
|---|---|---|
| 76.233.5.193 | 06/08/2021 05:16 PM | Present |

**AT&T PROPRIETARY**

The information contained here is for use by authorized person only and
is not for general distribution.

Exhibit 3

**Subject:** Re: Kelly Pinn v. Consumer Credit Counseling Foundation, Inc., et seq.; Case No. 4:22-cv-04048-DMR
**From:** "Jason Smith" <jason.smith@activeprospect.com>
**Date:** 3/31/23, 8:52 AM
**To:** "Ethan Preston" <ep@eplaw.us>

Ethan,

I spoke with Christopher Williams and got a few answers for you.  Before I formally supplement the discovery responses, I wanted to provide the answers here to see if you seek any additional information beforehand.  I assume we will need to set up a call, and I would like to include Christopher so he can directly answer any questions.  If you prefer, we could also just move forward with setting up a virtual deposition with Christopher.

1.  When generating a TrustedForm Certificate, is it true that some of the HTTP header info is blocked?  If so, do we have access to the blocked information?

    If you mean "URL headers" instead of "HTTP headers" (which is not something captured on a TrustedForm Certificate), then yes they can be captured but we do not store any of the URL headers or parameters.

2.  When a TrustedForm Certificate is claimed, do the reference keys generated prior to the claim get stored in AWS or MongoDB?

    Will need to be more specific here about "reference keys" but if you mean a "Certificate ID" that is generated as soon as the session replay begins and is part of the TrustedForm Certificate.

3.  Do we store any API key data?  If so, do we have for healthinstantly.org?

    We would only have API key data for customers, so we might have for DMS.  This would not be specific to the website.

4.  Do we know when the Certificate in question was claimed?

    This Certificate was claimed by the following accounts on Feb 8, 2022:

        Jenlin Systems Inc
        SMAC X - Master
        SMAC X - DSG Media

    Attached is a csv file with the Certificate's metadata we captured for each of the claim requests. Since this Certificate has already expired, we can't make an "Insights" request anymore so this is all the data we have stored outside of the Certificate.      To be clear, "expired" in this context simply means that you can no longer make an API request (claim, etc.) against that Certificate anymore.  This Certificate expired on 5/3/2022, but will still be accessible until 2/2/2027.

Best,



**Jason Smith**

*General Counsel*

**p.** 228.547.7703
**e.** jason.smith@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/in/jjasonsmith1

On Fri, Mar 17, 2023 at 6:37 PM Ethan Preston <ep@eplaw.us> wrote:

Dear Jason,

I wanted to follow up and memorialize our call on March 9. If I've misunderstood something or omitted something important, please let me know.

We discussed that ActiveProspect's response does not indicate what documents it has withheld, and I referenced the authorities in my letter about the need to make that disclosure. You indicated you would look into that.

Regarding Category 1, I indicated that I expected additional documents outside the Certificate identified in paragraph 6 of the Rafferty declaration, and specifically sought the all the http headers ActiveProspect collected via the TrustedForm javascript. You agreed to look into that as well.

Regarding Category 2, I indicated we would need to identify ActiveProspect employees with personal knowledge that the TrustedForm Certificate at issue was authentic, and that the Rafferty declaration simply cites unnamed "ActiveProspect employees." You agreed to look into the databases which store the TrustedForm Certificate and the ActiveProspect employees responsible for those databases, and we agreed to meet and confer further about the appropriate employees and the appropriate documents identifying those employees.

Regarding Category 4, I indicated I sought the user records in the TrustedForm database for the API key(s) associated with the Certificate and the user records for the API key(s) associated with https://healthinstantly.org, as well as the session data for those users, as well as the reference keys ActiveProspect generated in connection with visits to https://healthinstantly.org, and the lead data associated with those reference keys. As I mentioned, this data is essential evidence in Pinn's case. If the TrustedForm Certificate at issue is the only reference key associated with https://healthinstantly.org, that is highly probative for Pinn. If not, the other reference keys and lead data from https://healthinstantly.org are still important to authenticating the Certificate. You indicated

you were not in a position to agree with this request and required more time to formulate a definitive response.

Regarding Category 5, I indicated that ActiveProspect should produce any documents concerning suspicions with respect to https://healthinstantly.org. Whether no documents or lots of documents exist, it is probative to the authenticity of the TrustedForm Certificate at issue.

Regarding Category 7, I indicated we sought DMS's claim for the TrustedForm Certificate at issue, as the date of that claim is significant. With respect to other reference keys, lead data, and claims, I granted that someone might argue  the subpoena was overbroad and narrow it communications about lead data generated by the the API key(s) associated with the Certificate and/or https://healthinstantly.org. Again, you indicated you were not in a position to agree with this request and required more time to formulate a definitive response.

Thanks,

Ethan

On 3/8/23 11:39 AM, Jason Smith wrote:

> Ethan,
>
> In anticipation of our call tomorrow, I checked with our engineering team to ensure the Certificate in question was not somehow deleted. It is still available and being retrieved from long term storage. The message you likely received that the Certificate is no longer available is not correct.
>
> Thanks,
>
>  **Jason Smith**
> *General Counsel*
>
> **p.** 228.547.7703
> **e.** jason.smith@activeprospect.com
> **w.** www.activeprospect.com
> **in.** linkedin.com/in/jjasonsmith1
>
> **NOTICE**:  This email and it's contents may contain information of a confidential or privileged nature. If you feel you have received this email in error, please immediately notify the sender and delete this email and it's contents. Nothing in this email is intended to create an attorney-client or business relationship unless there is a written agreement signed by both parties.

On Mar 6, 2023, at 1:22 PM, Jason Smith <jason.smith@activeprospect.com> wrote:

 Yes, that works.

Thanks,

   **Jason Smith**
*General Counsel*

    **p.** 228.547.7703
    **e.** jason.smith@activeprospect.com
    **w.** www.activeprospect.com
    **in.** linkedin.com/in/jjasonsmith1

**NOTICE**:  This email and it's contents may contain information of a confidential or privileged nature. If you feel you have received this email in error, please immediately notify the sender and delete this email and it's contents. Nothing in this email is intended to create an attorney-client or business relationship unless there is a written agreement signed by both parties.

 On Mar 6, 2023, at 1:19 PM, Ethan Preston <ep@eplaw.us> wrote:

 Let's shoot for 12:30 CT/1:30pm ET on Thursday?

On 3/6/23 11:54 AM, Jason Smith wrote:

 I am available between 12-2pm EST on Wednesday or anytime after 1pm EST on Thursday.



**Jason Smith**

*General Counsel*

**p.** 228.547.7703
**e.** jason.smith@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/in/jjasonsmith1

On Mon, Mar 6, 2023 at 12:07 PM Ethan Preston <ep@eplaw.us> wrote:
Thank you, Jason. Please see the attached correspondence. Please let me know when we can have a call this week.

Sincerely,

Ethan

On 3/6/23 9:36 AM, Jason Smith wrote:
Ethan,

If DMS claimed the Certificate, they would have it and it would contain the same Certificate ID.  The Certificate is their property, not ActiveProspect's.  I'm not sure what you mean when stating that ActiveProspect deleted the Certificate.

Thanks,



**Jason Smith**

*General Counsel*

**p.** 228.547.7703
**e.** jason.smith@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/in/jjasonsmith1

On Fri, Mar 3, 2023 at 12:00 PM Ethan Preston <ep@eplaw.us> wrote:
Jason,

Thanks for your January 25 response. I am preparing a letter to follow but in the meantime, I wanted to raise a potential spoliation issue with you. It seems like Active Prospect has deleted the TrustedForm Certificate cited in Mr. Rafferty's declaration (ID 0d459d604c22f30574aab2e51c85d376ccbcc518).

Can you please advise on what's going on here? My understanding is that DMS already claimed this certificate, so it should not matter that the claim period expired.

Thanks,

Ethan


On 1/25/23 12:27 PM, Jason Smith wrote:

Counsel:

In regard to the above-referenced case, please find attached ActiveProspect's Responses and Objections to Plaintiff's Subpoena to Produce Documents.  Also attached are documents referenced in the response.

Please note we are continuing to conduct an email search for any additional communications responsive to the subpoena and may supplement our response if we find additional documents.

Please let us know if you have any questions or concerns.

Best Regards,

 **Jason Smith**

*General Counsel*

**p.** 228.547.7703
**e.** jason.smith@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/in/jjasonsmith1


--
Ethan Preston
**Preston**/Law Offices
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)

This email may be proprietary, confidential, attorney-client privileged, attorney work product, or otherwise not subject to disclosure under applicable law. This email is the property of Preston Law Offices, and is intended only for the use of the addressee(s): unauthorized use, disclosure or copying of this communication or any part thereof is prohibited. If you have received this email in error, please notify the sender, and destroy this email and any attachments. Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Please consider the environment before printing this e-mail

--
Ethan Preston
**Preston**/Law Offices
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)

This email may be proprietary, confidential, attorney-client privileged, attorney work product, or otherwise not subject to disclosure under applicable law. This email is the property of Preston Law Offices, and is intended only for the use of the addressee(s): unauthorized use, disclosure or copying of this communication or any part thereof is prohibited. If you have received this email in error, please notify the sender, and destroy this email and any attachments. Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Please consider the environment before printing this e-mail

--
Ethan Preston
**Preston**/Law Offices
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)

This email may be proprietary, confidential, attorney-client privileged, attorney work product, or otherwise not subject to disclosure under applicable law. This email is the property of Preston Law Offices, and is intended only for the use of the addressee(s): unauthorized use, disclosure or copying of this communication or any part thereof is prohibited. If you have received this email in error, please notify the sender, and destroy this email and any attachments. Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Please consider the environment before printing this e-mail

--
Ethan Preston
**Preston**/Law Offices
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)

This email may be proprietary, confidential, attorney-client privileged, attorney work product, or otherwise not subject to disclosure under applicable law. This email is the property of Preston Law Offices, and is intended only for the use of the addressee(s): unauthorized use, disclosure or copying of this communication or any part thereof is prohibited. If you have received this email in error, please notify the sender, and destroy this email and any attachments. Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Please consider the environment before printing this e-mail

---

Attachments:

Certificate0d459d604c22f30574aab2e51c85d376ccbcc518.csv          1.4 KB

cert_token,account_name,account_id,domain,page_url,cert_created_at,request.created_at,archive.created_at,country,location.coordinates,city,extended,elapsed_seconds,reference_domain,framed,vendor,browser,operating_system,state,cert_fingerprint_count,time_on_page,ip,time_zone,country_code,postal_code

0d459d604c22f30574aab2e51c85d376ccbcc518,Jenlin Systems Inc,619bd50f687712099ae1ab26,healthinstantly.org,https://healthinstantly.org/form.html,2022-02-02T19:19:45.405035Z,2022-02-08T22:59:19Z,2022-02-08T23:14:22.889Z,United States,"[26.3165, -80.2748]",Pompano Beach,TRUE,531562,,FALSE,,Chrome 97.0.4692.99,Windows 10,Florida,4,12565,76.233.5.193,America/New_York,US,33076

0d459d604c22f30574aab2e51c85d376ccbcc518,SMAC X - Master,5de2aca3e68f523e715a4298,healthinstantly.org,https://healthinstantly.org/form.html,2022-02-02T19:19:45.405035Z,2022-02-08T19:22:43Z,2022-02-08T19:38:32.022Z,United States,"[26.3165, -80.2748]",Pompano Beach,TRUE,518566,leadconduit.com,FALSE,SMAC X - DSG Media,Chrome 97.0.4692.99,Windows 10,Florida,4,12565,76.233.5.193,America/New_York,US,33076

0d459d604c22f30574aab2e51c85d376ccbcc518,SMAC X - DSG Media,618bea87f64301097c8aac0a,healthinstantly.org,https://healthinstantly.org/form.html,2022-02-02T19:19:45.405035Z,2022-02-08T19:22:43Z,2022-02-08T19:37:50.020Z,United States,"[26.3165, -80.2748]",Pompano Beach,TRUE,518566,leadconduit.com,FALSE,SMAC X - DSG Media,Chrome 97.0.4692.99,Windows 10,Florida,4,12565,76.233.5.193,America/New_York,US,33076

Exhibit 4

BA20230689106



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION
CORPORATION**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File No.: BA20230689106

Date Filed: 4/26/2023

| Entity Details | |
|---|---|
| Corporation Name | SMAC DIGITAL INC |
| Entity No. | 4267487 |
| Formed In | CALIFORNIA |

| Street Address of Principal Office of Corporation | |
|---|---|
| Principal Address | 20271 SW ACACIA STREET<br>SUITE 200<br>NEWPORT BEACH, CA 92660 |

| Mailing Address of Corporation | |
|---|---|
| Mailing Address | 2505 SAN JOAQUIN PLZ<br>SUITE 200<br>NEWPORT BEACH, CA 92660 |
| Attention | |

| Street Address of California Office of Corporation | |
|---|---|
| Street Address of California Office | 20271 SW ACACIA STREET<br>SUITE 200<br>NEWPORT BEACH, CA 92660 |

Officers

| Officer Name | Officer Address | Position(s) |
|---|---|---|
| CHAD SMANJAK | 20271 SW ACACIA STREET<br>SUITE 200<br>NEWPORT BEACH, CA 92660 | Chief Executive Officer, Secretary, Chief Financial Officer |

Additional Officers

| Officer Name | Officer Address | Position | Stated Position |
|---|---|---|---|
| None Entered | | | |

Directors

| Director Name | Director Address |
|---|---|
| CHAD SMANJAK | 20271 SW ACACIA STREET<br>SUITE 200<br>NEWPORT BEACH, CA 92660 |

The number of vacancies on Board of Directors is: 0

| Agent for Service of Process | |
|---|---|
| California Registered Corporate Agent (1505) | REPUBLIC REGISTERED AGENT INC.<br>Registered Corporate 1505 Agent |

| Type of Business | |
|---|---|
| Type of Business | CONSULTING |

| Email Notifications | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

Labor Judgment

B1706-8552 04/26/2023 11:18 AM Received by California Secretary of State

No Officer or Director of this Corporation has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

Electronic Signature

☒ By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

*Chad Smanjak*
Signature

*04/26/2023*
Date

B1706-8553 04/26/2023 11:18 AM Received by California Secretary of State

Exhibit 5

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:22-mc-00240-DSF-AGRx | Date | 9/11/2023 |

| | |
|---|---|
| Title | Kelly Pinn v. Consumer Credit Counseling Foundation, Inc. et al |

Present: The Honorable    DALE S. FISCHER, United States District Judge

| Holidae Crawford | Pat Cuneo |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ethan Preston | NONE PRESENT |

**Proceedings:**   Order to Show Cause re Contempt (Held and Completed)

 The matter is called and counsel states his appearance.  Also appearing is subpoenaed party Amir Dawood. The Court questions counsel and Dawood as stated in court and on the record on above motion and the parties to present their oral arguments. Oral arguments are heard.  The Court gives Global Lynks LLC, Dawood and Company, and Amir Dawood until October 2, 2023 to produce subpoenaed documents.

Exhibit 6

Exhibit 7

**Subject:** Updated invitation: Call w/ SMAC X | ActiveProspect @ Thu Feb 10, 2022 1pm - 2pm (CST) (Steve Rafferty)
**From:** Sara Peace <sara.peace@activeprospect.com>
**Date:** 2/7/22, 4:13 PM
**To:** Steve Rafferty <steve@activeprospect.com>, jessica.hamilton@activeprospect.com, adam@activeprospect.com, ahmed.taleb@activeprospect.com, jason.smith@activeprospect.com, chad@smac-digital.com, angela@smacxinc.com

▼ jessica.hamilton@activeprospect.com has invited you to Call w/ SMAC X | ActiveProspect

| | |
|---|---|
| Title: | Call w/ SMAC X | ActiveProspect |
| Location: | https://us02web.zoom.us/j/5128108097 |
| When: | Thursday, February 10, 2022 1:00 PM – 2:00 PM |
| Organizer: | jessica.hamilton@activeprospect.com <jessica.hamilton@activeprospect.com> |
| Description: | |

Jessica Hamilton is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting
https://us02web.zoom.us/j/5128108097

Meeting ID: 512 810 8097
One tap mobile
+13462487799,,5128108097# US (Houston)
+14086380968,,5128108097# US (San Jose)

Dial by your location
+1 346 248 7799 US (Houston)
+1 408 638 0968 US (San Jose)
+1 669 900 6833 US (San Jose)
+1 253 215 8782 US (Tacoma)
+1 312 626 6799 US (Chicago)
+1 646 876 9923 US (New York)
+1 301 715 8592 US (Washington D.C)
Meeting ID: 512 810 8097

Find your local number: https://us02web.zoom.us/u/kcNXmvCr5T

-::~:~::~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~::~:~::-
Do not edit this section of the description.

View your event at https://calendar.google.com/calendar/event?action=VIEW&eid=Njc2OGdwNmJ2MTJqMmFrNmtuMWpmbDIzbmIgc3RldmVAYWN0aXZlcHJvc3BlY3QuY29t&tok=MzUjamVzc2ljYS5oYW1pbHRvbkBhY3RpdmVwcm9zcGVjdC5jb200NDM3MzQ4YTdjYWYzMDcxNTk1ZWNjNjMgxMTA4NGFmMWJjOWI4YzNh&ctz=America%2FChicago&hl=en&es=1.
-::~:~::~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~:~::~:~::-

| Attendees: | Steve Rafferty <steve@activeprospect.com> |
|---|---|
| | jessica.hamilton@activeprospect.com <jessica.hamilton@activeprospect.com> |
| | adam@activeprospect.com <adam@activeprospect.com> |
| | ahmed.taleb@activeprospect.com <ahmed.taleb@activeprospect.com> |
| | jason.smith@activeprospect.com <jason.smith@activeprospect.com> |
| | chad@smac-digital.com <chad@smac-digital.com> |
| | angela@smacxinc.com <angela@smacxinc.com> |

**This event has been changed.**

**Changed: Call w/ SMAC X | ActiveProspect**

| When | Thu Feb 10, 2022 1pm – 2pm Central Time - Chicago | **more details »** |
|---|---|---|
| Where | https://us02web.zoom.us/j/5128108097 (map) | |
| Calendar | Steve Rafferty | |
| Who | • jessica.hamilton@activeprospect.com - organizer | |
| | • sara.peace@activeprospect.com - creator | |
| | • Steve Rafferty | |
| | • adam@activeprospect.com | |
| | • ahmed.taleb@activeprospect.com | |
| | • jason.smith@activeprospect.com | |
| | • chad@smac-digital.com | |
| | • angela@smacxinc.com | |

Jessica Hamilton is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting
https://us02web.zoom.us/j/5128108097

Meeting ID: 512 810 8097
One tap mobile
+13462487799,,5128108097# US (Houston)
+14086380968,,5128108097# US (San Jose)

Dial by your location
        +1 346 248 7799 US (Houston)
        +1 408 638 0968 US (San Jose)
        +1 669 900 6833 US (San Jose)
        +1 253 215 8782 US (Tacoma)
        +1 312 626 6799 US (Chicago)
        +1 646 876 9923 US (New York)
        +1 301 715 8592 US (Washington D.C)
Meeting ID: 512 810 8097

Find your local number: https://us02web.zoom.us/u/kcNXmvCr5T

Going (steve@activeprospect.com)?   **Yes**  -  **Maybe**  -  **No**   **more options »**

Invitation from Google Calendar

You are receiving this email at the account steve@activeprospect.com because you are subscribed for updated invitations on calendar Steve Rafferty.

To stop receiving these emails, please log in to https://calendar.google.com/calendar/ and change your notification settings for this calendar.

Forwarding this invitation could allow any recipient to send a response to the organizer and be added to the guest list, or invite others regardless of their own invitation status, or to modify your RSVP. Learn More.

Exhibit 8

**Subject:** Re: follow up question
**From:** Steve Rafferty <steve@activeprospect.com>
**Date:** 2/16/22, 3:55 PM
**To:** Chad S <chad@smac-digital.com>

Hey Chad-

DMS is already a TrustedForm customer, so please don't pitch them on it. Note that with the structure I proposed, you would get free TF claims for the leads that DMS buys (assuming they claim all the certs in their account).

Glad to hear you see big potential!

Regarding pricing, we would need the ability to approve prospects in advance to ensure they are not existing customers.  We want to avoid a situation where you share a price with a customer that is at a higher rate.  As you said, you have clients at a wide range of volumes and we typically set pricing based on committed volume levels.

Currently you guys are a .02 overage rate for TF.  With the proposed structure, you would be getting half the claim volume (in your master account) for free. So we would need to charge the end buyers .04 to maintain the same revenue level.

Steve

On Wed, Feb 16, 2022 at 12:34 PM Chad S <chad@smac-digital.com> wrote:
Hi Steve,

Just left you a voicemail.

Sorry about the gaps in communication. Was traveling and this week I have clients in town until **Thursday.**

**Couple thoughts:**

- I am speaking to DMS and they are showing interest in purchase large sums of data from SMAC.
- Seem ok with the idea of having an account with Active to claim the certs in their account.
- Many other publishers are buyer are slowly starting to come around. **Big potential.**
- SMAC has a couple Big clients waiting on the final approval and structure from you.


**Pricing:**
This is I am waiting to hear from you on your thoughts on pricing. This is the deal maker or breaker for these clients.
Send me your thoughts and we can discuss and see how to structure this as a win win…more importantly, structured so that we can scale the business. Pricing is the

On Feb 13, 2022, at 6:15 PM, Steve Rafferty <steve@activeprospect.com> wrote:

My understanding is that you are currently paying to claim certs twice - once in your master account and again in the sub accounts.  Let me know if that is incorrect.

You would be getting free certs in the master account.  So your costs would effectively go to nothing. You are still selling data to your sub accounts, maintaining revenue.

On Sat, Feb 12, 2022 at 11:13 AM Chad S <chad@smac-digital.com> wrote:
> Question I have is how does SMAC benefit financially from the sub accounts that contract directly with Active prospect ?
>
> Could you explain the financial metric of this proposed partnership. Thank you.
>
> Sent from my iPhone

> On Feb 12, 2022, at 8:01 AM, Chad S <chad@smac-digital.com> wrote:

> Sounds very interesting. Let me think through the process and respond later this morning.

> Appreciate you. Thanks

> Sent from my iPhone

> On Feb 11, 2022, at 4:37 PM, Steve Rafferty <steve@activeprospect.com> wrote:

> I'm thinking a partnership structure is more appropriate. Here is what I am thinking... Your customers would contract with us directly. They would get a special SMAC rate.  We could possibly have a special sign up page for them. Your accounts would be connected. When they claim a cert in their account that was generated on one of your domains we would automatically claim that certificate in your master account for free. So as long as your customers are claiming all the certs you generate, you would get them all claimed

for free in your account.  I think this would be better for both of us.
Let me know what you think

On Fri, Feb 11, 2022 at 3:53 PM Chad S <chad@smac-digital.com>
wrote:
> All domains belong to us…. All digital assets belong to us…

Thank you. Look forward to long relationship.

Sent from my iPhone

> On Feb 11, 2022, at 11:37 AM, Steve Rafferty
> <steve@activeprospect.com> wrote:

Thanks.  I'm just concerned with ownership of the domain where
the certificates are being generated. If they are all coming from
your domain, that is good as it allows me to provide an
interesting alternative for you

I'll try to get something back to you by Monday.

On Fri, Feb 11, 2022 at 11:04 AM Chad S <chad@smac-digital.com> wrote:
> Hi Steve

Thank you for taking the time yesterday. I have been looking
forward to that call for months now.

Appreciate you and your team.

The landing pages are run and operated by us however there
are different sources of traffic from a combination of partners
affiliates and ourself.

I could get more granular if needed.

Sorry for delayed response was driving kids to school.

Thanks
Chad

Sent from my iPhone

> On Feb 11, 2022, at 7:07 AM, Steve Rafferty
> <steve@activeprospect.com> wrote:

Hey Chad,
Thanks for taking the time to explain the business yesterday. I'm thinking about other ways to structure the relationship that would be mutually beneficial.

You mentioned that you guys claim the certs in your master account and then they get claimed again by the sub-acounts. Are these leads being generated on your owned and operated sites or partner sites or a combo of both? If a combo, what % come from your owned and operated sites?

Steve

--

**Steve Rafferty**

*Founder & CEO*

**p.** 512.743.0796
**e.** steve@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/stevenrafferty

--

**Steve Rafferty**

*Founder & CEO*

**p.** 512.743.0796
**e.** steve@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/stevenrafferty

Exhibit 9

**Subject:** Re: Final agreements
**From:** Justin Myers <justin.myers@activeprospect.com>
**Date:** 3/16/22, 2:58 PM
**To:** Chad S <chad@smac-digital.com>
**CC:** Steve Rafferty <steve@activeprospect.com>

Perfect - thank you, Chad!



**Justin Myers**

*Sales Director*

**p.** 214.724.9165
**e.** justin.myers@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/justinmarkmyers
**s.** .cid.69edbe1bc8968a32

On Wed, Mar 16, 2022 at 2:39 PM Chad S <chad@smac-digital.com> wrote:
Entity Name = SMAC X LLC

State of Incorporation = Wyoming

Head office address = Illinois address...

Thanks

Sent from my iPhone

On Mar 16, 2022, at 11:41 AM, Justin Myers <justin.myers@activeprospect.com> wrote:

You bet, Chad! And just to confirm the following before sending:

- Entity Name = SMAC X
- State of Incorporation = Illinois

Once I have your confirmation I can fire off!



**Justin Myers**

*Sales Director*

**p.** 214.724.9165

**e.** justin.myers@activeprospect.com

**w.** www.activeprospect.com

**in.** linkedin.com/justinmarkmyers

**s.** .cid.69edbe1bc8968a32

On Wed, Mar 16, 2022 at 1:20 PM Chad S <chad@smac-digital.com> wrote:

Thanks Justin.

Sent from my iPhone

On Mar 16, 2022, at 9:03 AM, Justin Myers <justin.myers@activeprospect.com> wrote:

Morning Chad,

I'll get these over to you via HelloSign here shortly.

Cheers!
Justin



**Justin Myers**

*Sales Director*

**p.** 214.724.9165

**e.** justin.myers@activeprospect.com

**w.** www.activeprospect.com

**in.** linkedin.com/justinmarkmyers

**s.** .cid.69edbe1bc8968a32

On Wed, Mar 16, 2022 at 9:14 AM Chad S <chad@smac-digital.com> wrote:

Thanks for making this happen even while on vacation. Much appreciated.

Signer details:

Chad Smanjak

58 N. Chicago St. 2nd Floor
Joliet, IL 60432
714-401-0669

Sent from my iPhone

On Mar 15, 2022, at 8:35 PM, Steve Rafferty <steve@activeprospect.com> wrote:

Hi Chad,

Attached are the final versions that incorporate the changes we discussed.

I added a line to the referral agreement in the responsibilities of partner section about support:
"providing customer support to Referred Customers for Partner's services and"

I've copied Justin Myers on this email as he will be the point person for the new accounts.  Justin - can you send these agreements to Chad for electronic signature?

Thanks
Steve
--



**Steve Rafferty**
*Founder & CEO*

**p.** 512.743.0796
**e.** steve@activeprospect.com
**w.** www.activeprospect.com
**in.** linkedin.com/stevenrafferty

Exhibit 10

**Subject:** Re: Final agreements
**From:** Chad S <chad@smac-digital.com>
**Date:** 3/16/22, 9:14 AM
**To:** Steve Rafferty <steve@activeprospect.com>
**CC:** Justin Myers <justin.myers@activeprospect.com>

Thanks for making this happen even while on vacation. Much appreciated.

Signer details:

Chad Smanjak

58 N. Chicago St. 2nd Floor
Joliet, IL 60432
714-401-0669

Sent from my iPhone

> On Mar 15, 2022, at 8:35 PM, Steve Rafferty <steve@activeprospect.com> wrote:
>
>
> Hi Chad,
>
> Attached are the final versions that incorporate the changes we discussed.
>
> I added a line to the referral agreement in the responsibilities of partner section about support:
> "providing customer support to Referred Customers for Partner's services and"
>
> I've copied Justin Myers on this email as he will be the point person for the new accounts.  Justin - can you send these agreements to Chad for electronic signature?
>
> Thanks
> Steve
> --
>
>   **Steve Rafferty**
> *Founder & CEO*
>
>    **p.** 512.743.0796
>    **e.** steve@activeprospect.com
>    **w.** www.activeprospect.com
>    **in.** linkedin.com/stevenrafferty

Attachments:

| | |
|---|---|
| Referral Agreement SMAC X 2022-03-15.docx | 22.0 KB |
| SMAC Order Form 2022-03-15.docx | 248 KB |

**ActiveProspect, Inc.**
**Referral Agreement**

This Referral Agreement (this "Agreement") is made and entered into effective as of this ___ day of March, 2022 (the "Effective Date"), between ActiveProspect, Inc., a Delaware corporation whose principal offices are at 4009 Marathon Blvd., Austin, TX 78756 ("AP") and SMAC X, Inc., a _____ whose principal offices are at _____ ("Partner") (each, a "Party," and together, the "Parties").

The Parties hereby agree as follows:

1. **Recitals**

WHEREAS, AP is engaged in the business of software-as-a-service, providing products including TrustedForm, LeadConduit, LeadsBridge and similar marketing products and services (collectively, the "Services");

WHEREAS, Partner is in the business of lead generation;

WHEREAS, Partner wishes to partner with AP to refer Partner's existing customer base to AP, and in particular, TrustedForm; and

WHEREAS, AP wishes to contract with Partner's referred customers to provide the Services.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

2. **Responsibilities of Partner**

Partner will have the following responsibilities:

   a) submitting customers and prospective customers of Partner (each, a "Referral") for referral to AP that may be prospective customers for AP through the process set forth in this Agreement (A Referral must be actively purchasing leads from Partner and cannot be a current customer or prospect of AP);
   b) marketing the Services in a manner approved in writing by AP;
   c) maintaining an account (the "Partner Account") with AP per the terms of the Order Form executed contemporaneously herewith and agree to the ActiveProspect Terms of Service incorporated in the Order Form;
   d) identifying the likely purchaser/decision-maker within each such Referral for the Services;
   e) making the initial contact with each such Referral, introducing the Services, providing information (as requested), and recommending the Services;
   f) providing contact information for each such Referral to AP;
   g) providing customer support to Referred Customers for Partner's services and
   h) other items as agreed to in writing by both parties.

3. **Responsibilities of AP**

AP will have the following responsibilities:

   a) making commercially reasonable efforts to enter into a written annual agreement (an "Order Form") with the Referred Customers, subject to the exclusive right and choice of AP whether to form such an agreement (Referrals who enter into an Order Form with AP shall be referred to herein as "Referred Customers");
   b) providing and supporting the Services to the Referred Customers;
   c) handling all administrative functions including billing, accounting, and Referral Fee payments; and

   d) providing marketing materials and information to Partner as reasonably required.

4.      **Pricing**

This Agreement shall not relieve the Partner of any outstanding financial obligations to AP.  If Partner fails to make timely payments owed to AP, AP reserves the right to terminate this Agreement at any time without notice.  For the avoidance of doubt, this Agreement shall not supersede any payment obligations of Partner to AP made prior to the Effective Date of this Agreement.

AP shall provide all Referred Customers with: 1) a rate discounted from AP's published rates, which discount will vary based upon the level of commitment of the Referral; and 2) lower contracted minimums for Services. Each Referral must agree to a minimum commitment of $500/month with AP to receive the aforementioned discounted rate.

5.      **Referral Fees**

When a Referral signs an Order Form to become a Referred Customer per the terms set forth in this Agreement, AP will pay Partner a referral fee equal to one month of the Referred Customer's contracted revenue as of the date of the Order Form (the "Referral Fee") for each Referred Customer after the first ten (10) Referred Customers. For each one (1) year renewal term (each, a "Renewal Term") entered into by the Referred Customer, AP will pay Partner an additional referral fee equal to one month of the Referred Customer's contracted revenue for that Renewal Term at the time of renewal (the "Renewal Referral Fee"). AP shall pay Partner the Referral Fee and any Renewal Referral Fees within sixty (60) days of the date of the Referred Customer's Order Form or of the initial date of any Renewal Term, subject to having received two months payment from the Referred Customer.

6.      **Confidentiality/Non-Exclusivity**

Partner agrees that all confidential information of AP, including but not limited to knowledge acquired regarding the AP's services, products, systems, protocol, methodologies, procedures, trade secrets, know-how, provider directories and discount rates, fees, customers, prospects, marketing plans or strategies, technology, customer or contact lists, relationships with third-party companies and any other information that Partner should reasonably know is confidential or proprietary (all of the foregoing, "AP Confidential Information"), will not be shared with anyone other than employees, and then only to the extent required to fulfill the terms of this Agreement and only in the event such employees agree to be bound by this provisions prior to disclosure. Partner further agrees that it will not copy, use or modify any AP Confidential Information for any purpose not authorized by AP.  AP and Partner may, upon Agreement of both parties, jointly establish a co-marketing arrangement with prospective customers.  The duties and obligations set forth in this Section 6 shall survive the Term and any subsequent Renewal Terms (defined in Section 9) for a period of three (3) years thereafter.

Nothing in this Agreement establishes an exclusive arrangement between the Parties and Partner shall not be the exclusive referral or any other type of exclusive business partner for AP.

7.      **Restrictions**

For the Term of this Agreement and for six (6) months thereafter, Partner and all other entities in which Partner has an interest shall not:

a)   create a product, market a product, or provide marketing or consulting services using any of the AP Confidential Information;

b)   divert, call upon, or take away, or attempt to divert, call upon, or take away, any customers of AP for purposes of providing goods, services or technology that are competitive with AP or its employees, contractors or consultants;

c)   directly or indirectly, either individually, in partnership, jointly, or in conjunction with, or on behalf of, any person, affiliate, firm, partnership, corporation, limited liability company, or unincorporated association or

In Witness Whereof, this Agreement has been duly executed by the undersigned as of the Effective Date.

**ActiveProspect, Inc.**                     **SMAC X:**

_____                   _____
Signature                                   Signature

_____                   _____
Name (Print)                                Name (Print)

_____                   _____
Title                                       Title

Exhibit 11

**Subject:** Fwd: [AP + SMAC] - New accounts:
**From:** Justin Myers <justin.myers@activeprospect.com>
**Date:** 3/30/22, 10:49 AM
**To:** Steve Rafferty <steve@activeprospect.com>



**Justin Myers**

*Sales Director*

**p.** 214.724.9165

**e.** justin.myers@activeprospect.com

**w.** www.activeprospect.com

**in.** linkedin.com/justinmarkmyers

**s.** .cid.69edbe1bc8968a32

---------- Forwarded message ---------
From: **Chad S** <chad@smac-digital.com>
Date: Tue, Mar 29, 2022 at 4:55 PM
Subject: Re: [AP + SMAC] - New accounts:
To: Justin Myers <justin.myers@activeprospect.com>
Cc: Angela Mirabella <Angela@smacxinc.com>, Ahmed Taleb
<ahmed.taleb@activeprospect.com>, Erica Garza <erica.garza@activeprospect.com>,
Megan Nilles <megan.nilles@activeprospect.com>

Hi Justin,

Please see below for details requested. Please copy me on all the emails sent to these
buyers so I can follow up and get this handled.

1. LDM.  - **Support@leadsdatamatch.com**. **Attention Mike Harper**
2. Leads 360 - Send these to me and I will get them to the right person
3. Stratum Media DMCC services -  Send this to me and I will get them to the right
   person

**New Clients to Onboard**

Verified Data LLC - **$1000 monthly  to start  (review after 1 month to increase )**

- 500 N. State College Blv
- Ste 1114
- Orange,CA 92868
- **TRUSTED FORM ONLY**

- **12,500**
- 888-375-3764; J. Luke
- j.luke@callpipe.net

Optin Data LLC - **$500 monthly  to start  (review after 1 month to increase )**

- 2901 W Coast Hwy
- STE 200
- Newport Beach CA 92663
- **TRUSTED FORM ONLY**
- 877-587-8331; R. Ortiz
- r.ortiz@digiconnectllc.com

Reliable Data LLC -  **$500 monthly  to start  (review after 1 month to increase )**

- 500 N. State College Blv
- Ste 1100
- Orange,CA 92868
- **TRUSTED FORM ONLY**
- 800-674-3099; F. Saleem
- f.saleem@urthaccess.com;

Chad Smanjack

_____



m: (714) 642-5709
e: chad@smac-digital.com

Exhibit 12

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California ▾

| | | |
|---|---|---|
| KELLY PINN, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  4:22-cv-04048-DMR |
| CONSUMER CREDIT COUNSELING FOUNDATION, INC., ISHWINDER JUDGE, and DOES 1-10 | ) ) ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Namecheap Legal Department, 4600 East Washington Street, Suite 305, Phoenix, Arizona 85034

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached production schedule

| Place: Preston Law Offices, 4054 McKinney Avenue, Ste 310, Dallas, TX 75204 or (at Namecheap's election) alternate location designated in Phoenix, Arizona | Date and Time: 05/12/2022 3:00 pm |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    04/25/2023

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | s/Ethan Preston |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiff Kelly Pinn
, who issues or requests this subpoena, are:

Ethan Preston, Preston Law Offices, 4054 McKinney Avenue, Ste 310, Dallas, TX 75204, (972) 564-8340, ep@eplaw.us

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

1    Any objections to the Subpoena must conform to Rule 45(c)(2)(B). Any grounds for

2  objection that is not stated in a timely objection are waived. If documents are withheld under a

3  claim of privilege or protection as trial-preparation material, Namecheap shall make the claim

4  expressly and shall describe the nature of the withheld documents (and, if applicable, the external

5  circumstances which it claims support the application of such privilege) in a manner that,

6  without revealing information itself privileged or protected, will enable the parties to assess the

7  applicability of the privilege or protection. *Cf.* Fed. R. Civ. P. 45(e)(2). A privilege log or

8  equivalent should be prepared with your response to the Subpoena, or an extension should

9  negotiated beforehand.

10    Defendants or other third parties may serve you with objections to your production in

11  response to this subpoena. These objections do not require or permit Namecheap to delay your

12  production in response to this subpoena. Defendants and other third parties must file a motion for

13  protective order or a motion to quash the subpoena if they wish to prevent your production, and

14  they have limited standing to do so. *Cf.* Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(d)(3).

15    This subpoena seeks metadata and other information which do not constitute "contents"

16  of any communication, as that term is used in 18 U.S.C. § 2702.

17    **Schedule of Documents to be Produced by Namecheap, Inc.**

18    1.    All documents concerning all Namecheap accounts which accounts registered the
         domain name "urthaccess.com," including account, registration, or subscription
19         information (including Social Security Number, names, mailing addresses,
         telephone numbers, and email addresses), and or other records identifying the
20         accounts which registered the domain name healthinstantly.org, and all
         documents which provide the payment history for all such accounts (including
21         wire instructions, credit card receipts, check images, and/or images of any other
         financial instruments).
22
23    2.    All documents sufficient and necessary to identify the following information with
         respect to every email sent to or from any email address using the domain name
24         "urthaccess.com" since July 11, 2018, including email header files: the date and
         time each such email was sent; the date and time each such email was deleted
25         from Google; the Internet Protocol address(es) from which such email were
         deleted from Google; the recipient(s) of each such email; the sender of each such
26         email; routing data; the Message-ID of each such email; the DKIM-Signature of
         each such email; the size of each such email (in bytes); any hash value of each
27         such email and/or other non-content value used to uniquely identify each such
         email.
28

**Subject:** Namecheap Response 2: Pinn v. Consumer Credit Counseling Foundation, Inc., No. 4:22-cv-04048-DMR
**From:** "Jordan Brown" <legal@namecheap.com>
**Date:** 5/17/23, 11:51 AM
**To:** "Ethan Preston" <ep@eplaw.us>
**CC:** "legal@namecheap.com" <legal@namecheap.com>

Dear Mr. Preston,

Thank you for your follow up correspondence and patience in this matter.

Please be advised that I attached the wrong subpoena to the previous email (the previous return was for 230417).

Attached please find the production materials pursuant to the subpoena numbered: 230425

If you have any questions, please let us know.

Best regards,
Jordan Brown

Namecheap Legal  .  Namecheap,
Inc  .  E  legal@namecheap.com  .  W  namecheap.com

---

Attachments:

Pinn v. Consumer Credit Counseling Foundation (2).zip                    10.3 MB

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California ▾

|  |  |
|---|---|
| KELLY PINN, | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 4:22-cv-04048-DMR |
| CONSUMER CREDIT COUNSELING FOUNDATION, INC., at al | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Zoho Corporation, 4141 Hacienda Drive, Pleasanton, California 94588
c/o Incorporating Services, Ltd., 7801 Folsom Boulevard, Suite 202, Sacramento, California 95826

*(Name of person to whom this subpoena is directed)*

☛ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached production schedule

| Place: John Lofton, Aiman-Smith & Marcy, 7677 Oakport Street, Suite 1150, Oakland, California 94621-1932 | Date and Time:<br><br>05/18/2023 3:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/02/2023

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | OR |  |
|  |  | /s/Ethan Preston |
| *Signature of Clerk or Deputy Clerk* |  | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff Kelly Pinn
, who issues or requests this subpoena, are:

Ethan Preston, Preston Law Offices, 4054 McKinney Avenue, Ste 310, Dallas, TX 75204, (972) 564-8340, ep@eplaw.us

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

circumstances which it claims support the application of such privilege) in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the applicability of the privilege or protection. *Cf.* Fed. R. Civ. P. 45(e)(2). A privilege log or equivalent should be prepared with your response to the Subpoena, or an extension should negotiated beforehand.

Defendants or other third parties may serve you with objections to your production in response to this subpoena. These objections do not require or permit Zoho to delay your production in response to this subpoena. Defendants and other third parties must file a motion for protective order or a motion to quash the subpoena if they wish to prevent your production, and they have limited standing to do so. *Cf.* Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(d)(3).

This subpoena seeks metadata and other information which do not constitute "contents" of any communication, as that term is used in 18 U.S.C. § 2702.

### Schedule of Documents to be Produced by Zoho Corporation

1. All documents sufficient and necessary to identify the following information with respect to every email sent to or from the following email address: "angela@smacxinc.com" since July 11, 2018, including email header files: the date and time each such email was sent; the date and time each such email was deleted from Zoho; the Internet Protocol address(es) from which such email were deleted from Zoho; the recipient(s) of each such email; the sender of each such email; routing data; the Message-ID of each such email; the DKIM-Signature of each such email, or other such cryptographic value; the size of each such email (in bytes); any hash value of each such email and/or other non-content value used to uniquely identify each such email.

2. All documents concerning the Zoho account associated with the email address "angela@smacxinc.com," including account, registration, session records (including records of IP addresses used to register such account or to access such account at different times, and records of the devices used to access such account (including hardware model, operating system versions), records of recovery email addresses or telephone numbers, records of unique device identifiers, and records of mobile network information and other records identifying any other Zoho account used by the person(s) using the Zoho account associated with the email address "angela@smacxinc.com."

3. All documents concerning any communication between Zoho and any other person (besides Plaintiff and her counsel) regarding the case captioned above, *Pinn v. Consumer Credit Counseling Foundation, Inc.*, No. 4:22-cv-04048-DMR, pending in the United States District Court for the Northern District of California (including, by way of example but without limitation, communications concerning this subpoena, your response thereto, and the retention and/or production of documents relevant to the case captioned above, as well as

**Subject:** Re:[## 3428058 ##] Fwd:Consumer Credit Counseling & Incorporating Services, Ltd. Subpoena
**From:** "Legal Co-ordinator" <legal@accounts.zohosupport.com>
**Date:** 6/20/23, 11:28 AM
**To:** <ep@eplaw.us>
**CC:** <legal@accounts.zohosupport.com>, "gov-datarequests.us@zohocorp.com" <gov-datarequests.us@zohocorp.com>

**Greetings,**

The requested account information is available in the password-protected link - https://workdrive.zohoexternal.com/external
/

A password will be shared in a separate mail.

Also attaching the subpoena, Production letter, and Invoice for your reference.

Regards,

**Zoho Team.**

─ Attachments: ──────────────────────────────

443124 Zoho-39_s Production Response Letter - Invoice.pdf          41.1 KB

20230516143008 1.pdf          841 KB



4141 Hacienda Drive, Pleasanton, California - 94588

June 20, 2023

*Via E-mail,*

Preston Law Offices
4045 McKinney Ave, Ste 310
Dallas, TX 75204
Attn: Ethan Preston

Re:     Kelly Pinn v. Consumer Credit Counseling Foundation, etc. Subpoena ("Subpoena")
dated May 2, 2023

Dear Ethan Preston,

Zoho produces the enclosed information in response to the referenced law enforcement process in accordance with the requirements and limitations imposed by the Stored Communications Act, Title 18, United States Code, Section 2701, et. seq.

If you have any questions, please contact us at gov-datarequests.us@zohocorp.com. Pursuant to 18 U.S.C. § 2706, Zoho hereby requests reimbursement for its reasonably necessary costs incurred in assembling the produced records. An invoice detailing these costs is attached.

Warm Regards,
Team
Government Data Requests-US

Exhibit 13

Re: Activity in Case 1:23-mc-00974-DII Pinn v. ActiveProspect, Inc. Order on Motion for Extension of Time to File R...

Case 1:23-mc-00974-RP    Document 9-2    Filed 10/09/23    Page 64 of 71

**Subject:** Re: Activity in Case 1:23-mc-00974-DII Pinn v. ActiveProspect, Inc. Order on Motion for Extension of Time to File Response/Reply
**From:** Ethan Preston <ep@eplaw.us>
**Date:** 9/14/23, 10:53 AM
**To:** Matt Gates <matt@wittliffcutter.com>
**CC:** "John Saba Jr." <john@wittliffcutter.com>

Matt,

My apologies for the delay on the motion for continuance, I intended to get that out after I heard from you but I was diverted by matters yesterday.

That said, the response below gives me pause. Generally, while I appreciate you have conducted additional searches and have not found additional documents, ActiveProspect does not provide adequate information to answer Pinn's questions about ActiveProspect's prior and current document searches.

In any event, I recognize we are not going to resolve all the open items today, but I ask ActiveProspect to commit to dates certain for addressing each item below.

(1) The assertion ActiveProspect has not found any of the missing emails is troubling. With all due respect, a bald assertion that "the information is simply not available" is not going to resolve the issue. To the extent current ActiveProspect employees deleted responsive emails, it would be a deeply troubling spoliation issue. However, it seems ActiveProspect's basis for its claim that no further information is available is that some of its employees left ActiveProspect. ActiveProspect should identify the former employees whose email is unavailable. Many of the missing emails include current ActiveProspect employees. My understanding is that ActiveProspect uses Google Workspace for its email, which does not automatically delete former employee emails.

(2) You indicated during our call Tuesday that former employee emails may have been archived. This is another area where ActiveProspect should provide clarity. Category 4 of Pinn's April subpoena sought: "All documents concerning any document retention policy under which any document which would be responsive to this subpoena was lost, destroyed, delinked, dereferenced, deleted, and/or access to such document was lost." Given the present state of play identified above, ActiveProspect should produce responsive documents, such as its historical Workspace/Google Vault data retention settings.

(3) Please confirm ActiveProspect searched its email and all of its Slack channels for "SMAC," "Smanjak," "Urth Access," "urthaccess," "Mirabella," "Fawaz," "Saleem," "Dawood," and/or "digiconnect."

Re: Activity in Case 1:23-mc-00974-DII Pinn v. ActiveProspect, Inc. Order on Motion for Extension of Time to File R...

Case 1:23-mc-00974-RP    Document 9-2    Filed 10/09/23    Page 65 of 71

(4) ActiveProspect has a SalesForce instance devoted to SMAC. None of the SalesForce data has been produced. See paragraph 28 of the declaration. https://activeprospect.my.salesforce.com/0013s000010E2N7?fromEmail=1&s1oid=00D6A0000001BCN&s1nid=000000000000000&s1uid=0053s000003DVTf&s1ext=0&emkind=chatterUnifiedUserDigest&emtm=1616042389659

(5) Please send the January 2021 fraud letter and email at your earliest opportunity.

I understand the parties disagree about ActiveProspect producing documents to which SMAC might have access. I think the motion adequately lays out Pinn's position on this issue. (Please advise if you disagree.) If there are authorities or contractual language that support ActiveProspect's position, please provide those.

Please let me know if I've misunderstood or omitted anything material from our call on Tuesday.

Thanks,

Ethan


On 9/13/23 10:49 PM, Matt Gates wrote:

> Ethan,
>
> I'm writing to follow-up on our meet and confer on Tuesday afternoon. First and foremost, thanks again for agreeing to our proposal to further extend briefing deadlines so the parties can continue to substantively address outstanding issues related to the subpoenas. Narrowing those issues, or hopefully resolving them outright, is certainly preferable to burdening the Court with motion practice.
>
> Second, we appreciate your acknowledgement of our client's good faith efforts to date regarding the subpoenas compared to other third parties you have been dealing with. ActiveProspect takes its legal obligations seriously, and we will continue to work diligently to resolve these matters.
>
> As for the substance of our call, we understand there are three outstanding issues that need to be addressed: (1) production of a letter ActiveProspect sent to SMAC regarding an allegedly false TrustedForm certification; (2) certain email communications you have previously identified; and (3) production of certain certificates related to SMAC.
>
> As to the first issue, we have identified a single notice letter and a transmittal email from January 2022. After the notice was provided, there were no additional communications, and there is no additional information to produce. As for producing the letter and email, I am out of pocket tomorrow morning and traveling Friday morning, but hope to have it produced by Friday afternoon. We intend to designate both as confidential information subject to the protective order governing your case, so please confirm you will treat it as such.

Exhibit 14

Re: Activity in Case 1:23-mc-00974-DII Pinn v. ActiveProspect, Inc. Order on Motion for Extension of Time to File R...

Case 1:23-mc-00974-RP    Document 9-2    Filed 10/09/23    Page 67 of 71

**Subject:** Re: Activity in Case 1:23-mc-00974-DII Pinn v. ActiveProspect, Inc. Order on Motion for Extension of Time to File Response/Reply
**From:** Ethan Preston <ep@eplaw.us>
**Date:** 9/26/23, 7:55 PM
**To:** Matt Gates <matt@wittliffcutter.com>
**CC:** "John Saba Jr." <john@wittliffcutter.com>

Matt,


I am concerned that ActiveProspect has misstated the record on the parties' meet and confer process. In fact, Pinn explained why she has not pursued discovery directly from SMAC in more than one of the parties subsequent meet and confer calls (and in the motion). Without waiving that position, Pinn notes:

The documents that Pinn seeks are on ActiveProspect's computers, not SMAC's computers. AP is a larger organization, and has more resources than SMAC: discovery from ActiveProspect is more proportionate than discovery from SMAC. *Cf.* Fed. R. Civ. P. 26(b)(1) (proportionality assessed by "considering [] the parties' relative access to relevant information [and] resources"). Pinn has subpoenaed one of Mr. Smanjak's other companies (Global Lynks), and he has been unresponsive: that subpoena is the subject of an order to show cause. Pinn is not obligated to exhaust every other possibility (no matter how unpromising) before seeking documents from ActiveProspect. ActiveProspect's obligation to comply with a valid subpoena is not abrogated by the fact that someone besides ActiveProspect might be able to produce the documents sought in the subpoena.


Sincerely,

Ethan

On 9/26/23 7:23 PM, Matt Gates wrote:

> Ethan,
>
> I will respond to each of your points below by tomorrow.
>
> In the meantime, each of the categories of information you identify below relate to SMAC (minus the production in native format issue). During our second meet and confer last week, we asked you, for the second time, whether you have subpoenaed SMAC for any of this information since we began the meet and confer process. You confirmed you had not and provided no explanation as to why. Have you attempted to subpoena SMAC since our most recent meet and confer? Assuming you have not, please confirm in writing why you have not done so, and why you continue to refuse to do so.
>
> Best,
>
> Matt
>
> Matt Gates
> Wittliff | Cutter PLLC
> 510 Baylor Street
> Austin, TX 78703
> P: 210.560.7477
> matt@wittliffcutter.com
> www.wittliffcutter.com
>
> The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is subject to the attorney-client privilege, attorney work product doctrine or otherwise exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer.
>
> **From:** Ethan Preston <ep@eplaw.us>
> **Sent:** Tuesday, September 26, 2023 6:21 PM
> **To:** Matt Gates <matt@wittliffcutter.com>
> **Cc:** John Saba Jr. <john@wittliffcutter.com>
> **Subject:** Re: Activity in Case 1:23-mc-00974-DII Pinn v. ActiveProspect, Inc. Order on Motion for Extension of Time to File Response/Reply
>
> [EXTERNAL SENDER]
>
> Matt,

Pinn adequately described the relief she seeks in her motion, and in the parties' meet and confer emails. Still, without waiving that position, I want to make a written record of what has been resolved and what hasn't been resolved:

1. Pinn identified email that AP should have produced but did not. AP says it has produced everything except for the email from a handful of former employees which it deleted, but does not state whether the other emails identified by Pinn were never sent or destroyed, and has not any other alternative explanation why they were not produced. If AP claims the missing emails were in fact never sent, the parties have a factual dispute. If AP claims it destroyed email of existing employees, it should explain when and how, and produce documents responsive to category 4 ("All documents concerning any document retention policy under which any document which would be responsive to this subpoena was lost, destroyed, delinked, dereferenced, deleted, and/or access to such document was lost"). To the extent AP claims it deletes former employee email, AP's operative Workspace/Google Vault data retention settings also fall under category 4.

2. Pinn has some outstanding questions about the differences between Keen and Snowflake, but it appears the parties have otherwise agreed to narrow the production of the metadata to SMAC TrustedForm certificates generated between January 2022 and April 2023. The parties do not have a final agreement on the SMAC certificates themselves, and will not have an agreement until Pinn can review the SMAC certificate metadata.

3. It is unclear whether AP intends to produce the internal Slack channel for SMAC and the linked documents referenced in 8348643268194860537.playback (1).mp4 at 2:27.

4. Pinn requested native format production. AP never objected to native format production, but has produced certain documents (especially email) in pdf.

5. AP has produced some documents (the July 2023 production, the August 2023 production, the fraud letter, the SalesForce instance, the emails in the September 20 production, the Gong recordings, and the Slack channel) only after Pinn identified and requested them, although AP had previously represented that it had produced all responsive documents. AP has indicated that its custodians collected their own documents. Taking the entire record into consideration, Pinn has concerns about the adequacy of AP's collection and production of responsive documents. To address those concerns, Pinn seeks (1) an adequate declaration explaining AP's past and subsequent collection and production of documents, which clearly explains why AP did not find or produce documents until Pinn located them, and/or (2) an independent collection of documents.

Sincerely,

Ethan


On 9/26/23 3:25 PM, Matt Gates wrote:

Ethan,

There is no common ground because you once again insist on maintaining a motion without specifying why you are doing so. With respect to the emails in particular, we have provided you with highly detailed responses about the searches, and you insist you need more information without specifying what that is. In short, we have accommodated your every request (and it remains unclear precisely what issues remain outstanding), but you refuse to specify exactly what relief you are seeking. As far as we can tell as of today, the email searches are the only remaining outstanding issue to be addressed, but you won't even confirm that. In the event you refuse to explicitly identify what remaining relief you are seeking, we will be sure to inform the Court accordingly.

As for fees and costs, the emails back and forth the last two weeks are more than sufficient to support for ActiveProspect's request, which is not based solely on your refusal to withdraw your motion. It is based on your refusal to cooperate in good faith, and your decision to force ActiveProspect to expend attorney time and fees preparing a response to a motion that is moot.

We will circulate a dial-in for tomorrow. Please be prepared to (1) identify in specific detail the remaining demands you believe are outstanding, and (2) what information you believe would satisfy those demands.

Best,

Matt

Matt Gates
Wittliff | Cutter PLLC
510 Baylor Street
Austin, TX 78703
P: 210.560.7477
matt@wittliffcutter.com

www.wittliffcutter.com

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is subject to the attorney-client privilege, attorney work product doctrine or otherwise exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer.

**From:** Ethan Preston <ep@eplaw.us>
**Sent:** Tuesday, September 26, 2023 3:07 PM
**To:** Matt Gates <matt@wittliffcutter.com>
**Cc:** John Saba Jr. <john@wittliffcutter.com>
**Subject:** Re: Activity in Case 1:23-mc-00974-DII Pinn v. ActiveProspect, Inc. Order on Motion for Extension of Time to File Response/Reply

[EXTERNAL SENDER]

Matt,

I'm sorry, I'm not available this afternoon.

I want to clarify again that I'm not asking for all the certificates. We have narrowed the production of metadata to SMAC TrustedForm certificates generated between January 2022 and April 2023. We can discuss production of a subset of actual certificates after I process the metadata.

Otherwise, I'm not sure how much sense it makes to meet and confer at this juncture. Your email does not suggest the parties have any common ground left which could narrow the remaining disputes without judicial involvement. Nonetheless, I can be available for a call tomorrow between 11am and 2pm CT.

This is the first time ActiveProspect has raised a request for costs and fees. ActiveProspect waived such a request a long time ago: Pinn asked for documentation of costs and fees in the first and second subpoena, and ActiveProspect never produced any responsive documents. I understand your view is that Pinn has not "reasonably cooperate[d]" because she declined to withdraw her motion. If there are any other basis for ActiveProspect's costs and fees, please let me know.

Sincerely,

Ethan


On 9/26/23 2:38 PM, Matt Gates wrote:

> Ethan,
>
> Let us know when you're available to meet and confer today. We have no intention of producing 592,000 certificates, and that was not the agreement. You mentioned on the last meet and confer that you wanted to search database entries and select certain certificates for production. We have also searched the relevant slack channel related to SMAC and provided you with more than adequate information regarding our search efforts. Regardless of your belief in the adequacy of these efforts, I want to confirm that this is the only remaining issue to be addressed with the Court.
>
> We also need to confer about ActiveProspect's intent to seek costs and fees associated with the subpoenas and with your refusal to reasonably cooperate in view of the Court's order that the parties do so.
>
> Let us know what time you're available and we'll circulate a dial-in.
>
> Best,
>
> Matt
>
> Matt Gates
> Wittliff | Cutter PLLC
> 510 Baylor Street
> Austin, TX 78703
> P: 210.560.7477
> matt@wittliffcutter.com
> www.wittliffcutter.com
>
> The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is subject to the attorney-client privilege, attorney work product doctrine or otherwise exempt from disclosure under applicable law. If the reader of this electronic message is not the

Re: Activity in Case 1:23-mc-00974-DII Pinn v. ActiveProspect, Inc. Order on Motion for Extension of Time to File R...

Case 1:23-mc-00974-RP   Document 9-2   Filed 10/09/23   Page 70 of 71

named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer.

**From:** Ethan Preston <ep@eplaw.us>
**Sent:** Tuesday, September 26, 2023 12:10 PM
**To:** Matt Gates <matt@wittliffcutter.com>
**Cc:** John Saba Jr. <john@wittliffcutter.com>
**Subject:** Re: Activity in Case 1:23-mc-00974-DII Pinn v. ActiveProspect, Inc. Order on Motion for Extension of Time to File Response/Reply

[EXTERNAL SENDER]

Matt,

Please confirm my understanding that ActiveProspect will produce metadata from Snowflake for SMAC TrustedForm certificates generated between January 2022 and April 2023 on Friday. I want to confirm that there is no difference between Snowflake and Keen other than the eight fields you've identified. Further, please explain what data is captured in the "created_at," "keen.created_at," and "keen.uniqueness_token" fields. If those fields do not contain important data, I think we can use the Snowflake database. I agree that consumer information contained in the certificates and certificate metadata should not be disclosed publicly, and agree not challenge the confidentiality designation in that respect or to disclose such information publicly. However, I'm not in a position to agree that the certificates and certificate metadata belongs to SMAC.

I understand ActiveProspect contemplates producing copies of the actual certificates as well. As I've indicated previously, I had intended to cull a much smaller production of actual certificates from the metadata, so this seems it might be an overproduction at this point. I'm not going to complain about that, but I do want to note Pinn's position for the record.

With respect to the missing email, I appreciate your representation that AP custodians have searched their own records, that those searches are complete, and that no other records were found. AP has not otherwise provided any explanation for the vast bulk of missing documents, such as AP's internal Slack channel for SMAC and the corresponding linked documents (see 8348643268194860537.playback (1).mp4 at 2:27). As I indicated in my September 14 email, AP's general assurances have not adequately addressed the concerns identified in Pinn's motion. Taking the record as a whole, AP's description of its search does not provide adequate assurance that its search was complete and effective. *Cf. National Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement Agency,* 877 F. Supp. 2d 87, 108 (S.D.N.Y. 2012) ("most custodians cannot be 'trusted' to run effective [] electronic searches in [] discovery"). Pinn's motion seeks relief including adequate information about AP's document search and production: as stated above, that relief is not moot.

Sincerely,


Ethan



On 9/25/23 8:33 PM, Matt Gates wrote:

> Ethan,
>
> We have the results for the Certificates from Jan 2022 through April 2023, which now number roughly 592k certificates for that timeframe. The metadata associated with this volume is simply too great to export into a spreadsheet or similar format. Instead, we can provide the information in a CSV file. As for the specific metadata, it is stored in two databases: Snowflake and Keen. Extracting the information from Snowflake is substantially less time consuming, but will exclude the following fields:
>
> 1. country
> 2. country_code
> 3. created_at
> 4. keen_project_migrated
> 5. keen.created_at
> 6. keen.uniqueness_token
> 7. keen.location.coordinates.1
> 8. keen.location.coordinates.0
>
> Please confirm this is acceptable, as we will not be able to pull data from Keen without substantial dedication of resources and disruption to our systems. Also, we have asked SMAC on several occasions for permission to produce information related to the certificates. Assuming we are permitted to produce it, we plan to do so this Friday. However, the information must be

Re: Activity in Case 1:23-mc-00974-DII Pinn v. ActiveProspect, Inc. Order on Motion for Extension of Time to File R...

Case 1:23-mc-00974-RP   Document 9-2   Filed 10/09/23   Page 71 of 71

designated as Confidential under the protective order given that it belongs to SMAC, not Active Prospect, and contains privacy information, etc. of other third parties. Please confirm you will treat any such information as confidential under the protective order and will not challenge that designation. In the event you refuse to make this commitment, ActiveProspect will not produce it.

As for emails, each of the custodians we identified below were provided with the relevant search terms and instructed to (1) search for and provide all responsive emails to the IT manager and Legal, and (2) confirm that no other responsive information existed.

Finally, without waiving our objections to the relevance, scope and breadth of your requests, we have complied with each of them to avoid burdening the Court, and the relief you requested in your motion is now moot. In view of the foregoing, we once again ask that you confirm by tomorrow that you will withdraw your motion. We cannot and will not wait any longer to prepare ActiveProspect's response.

If you think another meet and confer would be helpful, we're available in the morning to discuss. Please let us know what time works for you.

Best,

Matt

Matt Gates
Wittliff | Cutter PLLC
510 Baylor Street
Austin, TX 78703
P: 210.560.7477
matt@wittliffcutter.com
www.wittliffcutter.com

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is subject to the attorney-client privilege, attorney work product doctrine or otherwise exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer.

**From:** Ethan Preston <ep@eplaw.us>
**Sent:** Sunday, September 24, 2023 6:39 PM
**To:** Matt Gates <matt@wittliffcutter.com>
**Cc:** John Saba Jr. <john@wittliffcutter.com>
**Subject:** Re: Activity in Case 1:23-mc-00974-DII Pinn v. ActiveProspect, Inc. Order on Motion for Extension of Time to File Response/Reply

[EXTERNAL SENDER]

Matt,

I understand ActiveProspect's General Counsel and IT Manager directed and supervised the searches. I apologize that I was not more clear about my underlying question, but can you tell me who actually performed the searches?

I look forward to hearing back from your client regarding SMAC's certificates.

You write about my putative "contention that ActiveProspect's customers can export reports from its database at anytime to view any certificate during a given timeframe," and assert "reporting functionality provided by the ActiveProspect database only dates back ninety days." To be clear, Pinn is seeking all records accessible to ActiveProspect, not merely to ActiveProspect's consumers. Is ActiveProspect's representation that its database only keeps the last 90 days of certificate entries?

I do understand TrustedForm certificates are only available to lead generators for 90 days unless they are "claimed," and ActiveProspect's database may not keep entries for unclaimed certificates after that date. See https://activeprospect.com/blog/how-the-new-extended-claim-window-for-trustedform-works. To be clear, I am only concerned with database entries for certificates that SMAC actually claimed. We can disregard the unclaimed certificates.

Sincerely,

Ethan